**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| REALTIME DATA, LLC d/b/a IXO<br><br>Plaintiff<br><br>v.<br><br>ACTIAN CORPORATION AND PERVASIVE SOFTWARE, INC.<br><br>Defendants | NO. 6:15-cv-463-RWS-JDL<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>ORAL HEARING REQUESTED</u> |

**<u>DEFENDANTS ACTIAN CORPORATION AND PERVASIVE SOFTWARE INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

I. STATEMENT OF ISSUES TO BE DECIDED .......... 2

II. THE ASSERTED CLAIMS OF THE '908 PATENT DO NOT CONTAIN PATENT ELIGIBLE SUBJECT MATTER AND SHOULD BE DISMISSED .......... 2

A. Mayo/Alice Step One: The Asserted Claims Of The '908 Patent Are Directed At An Abstract Idea .......... 3

B. Mayo/Alice Step Two: The Asserted Claims Of The '908 Patent Do Not Contain Any Additional Inventive Concept Sufficient to Transform The Claimed Abstract Idea Into A Patent Eligible Invention .......... 6

III. THE ASSERTED CLAIMS OF THE '530 PATENT DO NOT CONTAIN PATENT ELIGIBLE SUBJECT MATTER AND SHOULD BE DISMISSED .......... 15

A. Mayo/Alice Step One: The Asserted Claims Of The '530 Patent Are Directed At An Abstract Idea .......... 15

B. Mayo/Alice Step Two: The Asserted Claims Of The '530 Patent Do Not Contain Any Additional Inventive Concept Sufficient to Transform The Claimed Abstract Idea Into A Patent Eligible Invention .......... 19

IV. THE MAJORITY OPINION OF THE FEDERAL CIRCUIT IN DDR HOLDINGS LLC V. HOTELS.COM, L.P. .......... 23

CONCLUSION .......... 25

**TABLE OF AUTHORITIES**

**FEDERAL COURT CASES**

*Accenture Global Services GmbH v. Guidewire Software, Inc.*,
728 F.3d 1336 (Fed. Cir. 2013)........................................ 1

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
_ U.S. _, 134 S. Ct. 2347 (2014)........................................ passim

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
788 F.3d 1371 (Fed. Cir. 2015)........................................ 11

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*,
687 F.3d 1266 (Fed. Cir. 2012)........................................ 1, 9

*Bilski v. Kappos*,
561 U.S. 593 (2010)........................................ 8, 9 11, 24

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)........................................ 11, 18, 24

*Cyberfone Systems LLC v. CNN Interactive Group, Inc.*,
558 F. App'x 988 (Fed. Cir. 2014)........................................ 12

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed Cir. 2012)........................................ 3, 12

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
758 F.3d 1344, 1350-51 (Fed. Cir. 2014)........................................ 12

*eDekka LLC v. 3Balls.com, Inc.*,
Case No. 2:15-CV-541-JRG, Dkt. No. 100 at 4 (E.D. Tex. Sept. 21, 2015)........................................ 1, 8

*DDR Holdings LLC v. Hotels.com, LP*,
773 F.3d 1245 (Fed. Cir. 2014)........................................ 23, 24, 25

*Intellectual Ventures I LLC v. Capital One Bank USA*,
792 F.3d 1363 (Fed. Cir. 2015)........................................ 10

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (2015)........................................ passim

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
_ U.S. _, 132 S. Ct. 1289, 1301 (2012)........................................ passim

*O'Reilly v. Morse*,
56 U.S. (15 How.) 62, 112-14 (1854)........................................ 8

*Parker v. Flook*,
437 U.S. 584 (1978)........................................................................................... 11, 24

*Telinit Techs. LLC v. Jive Commc'ns Inc.*,
2:14-cv-00369, Order, Dkt. No. 84 at 32) (Schroeder, J.)
(E.D. Tex. Sept. 21, 2015) .......................................................................... 6, 13, 20, 24

*Ultramercial Inc. v. Hulu LLC*,
772 F3d. 709 (Fed. Cir. 2014)............................................................................... 4, 6

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
793 F.3d 1306 (2015)........................................................................................... 4, 9

**FEDERAL STATUTORY AUTHORITIES**

35 U.S.C. §101.................................................................................................... 1, 45

**FEDERAL RULES AND REGULATIONS**

Fed. R. Civ. P. 12(b)(6).............................................................................................. 1

Fed.R.Civ.P. 5(d) ...................................................................................................... 27

**STATE RULES AND REGULATIONS**

Local Rule CV-5(a).................................................................................................. 27

Local Rule CV-5(a)(3)(A) ........................................................................................ 27

Local Rule CV-5(d) .................................................................................................. 27

## INTRODUCTION AND SUMMARY OF ARGUMENT

On September 14, 2015, plaintiff Realtime Data, LLC ("Realtime") filed a First Amended Complaint ("FAC") against Actian Corporation ("Actian") and Pervasive Software ("Pervasive") in this action asserting in five separate counts, claims for alleged infringement of five separate patents. Dkt. 100.[1] Actian and Pervasive now file the instant motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the FAC. This brief focuses on Realtime's claims of infringement based on U.S. Patent Nos. 9,116,908 (the "'908 Patent") and 7,415,530 (the "'530 Patent") and addresses the fact that none of the asserted claims of those patents claim patent eligible subject matter under Section 101 of the Patent Act 35 U.S.C. §101.[2]

The issue of patentability under Section 101 presents a question of law. *See e.g., Accenture Global Services GmbH v Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). It is proper to consider this issue on a Fed. R. Civ. P. 12(b)(6) motion to dismiss particularly where, as here, the asserted claims appear to have no identifiable claim construction issues which impact the analysis under Section 101 as to any asserted claim. *Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012); *eDekka LLC v. 3Balls.com, Inc.*, Case No. 2:15-CV-541-JRG, Dkt. No. 100 at 4 (E.D. Tex. Sept. 21, 2015) (citing *Bancorp Services* and concluding that "the relevant facts of this case demonstrate that claims construction is unnecessary" to find claims invalid under §101).

---

[1] The filing of the FAC had the effect of mooting the motion to dismiss the original complaint (Dkt. 31) which had not yet in any event been fully briefed or considered by the Court. Dkt. 122.

[2] Actian and Pervasive contend that Realtime's claims in the FAC based on U.S. Patent Nos. 7,378,992 (the "'992 Patent"), 8,643,513 (the "'513 Patent) and 6,597,812 (the '812 Patent) also fail as a matter of law for lack of patent eligible subject matter under Section 101 and should therefore be dismissed as well. Actian and Pervasive understand that other defendants who have also been sued by Realtime for claims based on those patents are moving to dismiss the asserted claims of the '992, '513 and '812 patents on grounds of unpatentable subject matter. In the event those motions are granted and the Court finds that the asserted claims of those patents too fail to claim patent eligible subject matter, the Court should similarly dismiss claims based on those patents in this case. In the event that those motions are not granted, Actian and Pervasive reserve their rights to challenge the patentability of the asserted claims of those three patents at a later stage in this action if necessary.

The Supreme Court has set forth a two-part test for distinguishing software-based patent claims which are patent eligible under Section 101 from those that are not. *See e.g.*, *Alice Corp. Pty. Ltd. v CLS Bank Int'l*, _ U.S. _, 134 S. Ct. 2347, 2354 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, _ U.S. _, 132 S. Ct. 1289, 1293, 1301 (2012) (referred to herein for convenience as the "*Mayo/Alice*" test). First, the Court determines whether the claims are directed to an underlying abstract idea. *Alice*, 134 S. Ct. at 2355. Second, the Court determines whether the claims "contain[] an '"inventive concept" sufficient to "transform" the claimed abstract idea into a patent-eligible application.'" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298).

Here, applying the *Mayo/Alice* test to the asserted claims[3] of the '908 and '530 Patents results in the determination that they are directed at unpatentable abstract ideas and none contain an "inventive concept" sufficient to "transform" the claimed abstract idea into a patent-eligible claim under Section 101. Accordingly, they should be dismissed as a matter of law.

## I. STATEMENT OF ISSUES TO BE DECIDED.

1. Whether the assertions of infringement based on claims 1, 2, 4-6, 9, 11, 21-22, 24 and 25 of U.S. Patent No. 9,116,908 fail as a matter of law because those claims lack of patent eligible subject matter under Section 101 of the Patent Act and should therefore be dismissed.

2. Whether the assertions of infringement based on claims 1, 4, 8-14 and 24 of U.S. Patent No. 7,415,530 fail as a matter of law because they lack patent eligible subject matter under Section 101 of the Patent Act and should therefore be dismissed.

## II. THE ASSERTED CLAIMS OF THE '908 PATENT DO NOT CONTAIN PATENT ELIGIBLE SUBJECT MATTER AND SHOULD BE DISMISSED.

Application of the two-part *Mayo/Alice* test to the asserted claims of the '908 Patent (*i.e.*, claims 1, 2, 4-6, 9, 11, 21-22, 24 and 25) results in the determination that they are not patent eligible

[3] Realtime served its Patent Local Rule 3-1 infringement contentions directed at Actian and Pervasive on the same day it filed the FAC stating that it was only asserting claims 1, 2, 4-6, 9, 11, 21-22, 24 and 25 of '908 Patent and claims 1, 4, 8-14 and 24 of the '530 Patent.

under Section 101. As such, Realtime's claims in the FAC based on the '908 Patent should be dismissed as a matter of law.

### A. *Mayo/Alice* Step One: The Asserted Claims Of The '908 Patent Are Directed At An Abstract Idea.

The first step of the *Mayo/Alice* test applied to patent claims such as these is to determine whether the asserted claims are directed at a patent-ineligible abstract idea. *Alice*, 134 S. Ct. at 2355. Here they are. The basic concept of the asserted claims of the '908 Patent in their simplest form[4] are directed at the abstract idea of using multiple different compression techniques to compress and store digital data. Independent claim 1 of the '908 Patent states:

> *1. A system comprising:*
>
> *a memory device; and*
>
> *a data accelerator configured to compress: (i) a first data block with a first compression technique to provide a first compressed data block; and (ii) a second data block with a second compression technique, different from the first compression technique, to provide a second compressed data block;*
>
> *wherein the compressed first and second data blocks are stored on the memory device, and the compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form.*

Independent claim 21 of the '908 Patent claims essentially the same thing as claim 1 only in method claim form. Claim 21 of the '908 Patent states:

> *21. A method for accelerating data storage of data, comprising:*
>
> *compressing a first data block with a first data compression technique to provide a first compressed data block; and*
>
> *compressing a second data block with a second data compression technique to provide a second compressed data block, wherein the first data compression technique and the second data compression technique are different;*

[4] *See e.g., Dealertrack, Inc. v Huber*, 674 F.3d 1315, 1333 (Fed Cir. 2012) (examining claims in their "simplest form" to identify the "basic concept" at issue) (quoting *Bilski*, 130 S. Ct. at 3231); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (2015) (starting point for analysis under section 101 is "analyzing the basic character of the subject matter").

> *storing the first and second data compressed blocks on a memory device wherein the compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form.*

As reflected by the claim language as a whole, independent claims 1 and 21 claim a system and method for "compressing a first data block" using a "first data compression technique" and "compressing a second data block" using a "second data compression technique" which is a "different" compression technique than the first and the "storing" of the compressed data on a "memory device." The only other aspect included in the claim language is that the "compression and storage occurs faster that the first and second data blocks are able to be stored on the memory device in uncompressed form."

There is simply nothing more set forth in these claims. For example, no specific method, mechanism or technique with respect to the compression of data is disclosed other than to use one compression technique on one data block and another different technique on a second data block. Rather the basic concept set forth in the claim language reflects simply the idea of using two different compression techniques to compress and store digital data. This concept is an abstraction - "an idea, having no particular concrete or tangible form." *Ultramercial v Hulu, LLC*, 772 F.3d 709, 715-16 (Fed. Cir. 2014) ("The claims of the '545 patent, however, are not tied to any particular novel machine or apparatus, only a general purpose computer."); *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333 (2015) (holding claims directed at abstract idea with "no particular concrete or tangible form or application" unpatentable under Section 101).

The inclusion of the language in claims 1 and 21 stating that the "compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form" is no more than an expression of the desired result or effect of applying the abstract idea of using multiple different compression techniques to compress and store digital data. Importantly the claims do not state or disclose any method or mechanism by which this goal or effect is to be accomplished. They don't even expressly state that this will be

achieved by the use of the abstract idea of using multiple different compression techniques to compress and store digital data. *See Internet Patents*, 790 F.3d at 1348 (claims held unpatentable where "The mechanism for maintaining the state is not described, although this is stated to be the essential innovation."). Moreover, as the '908 Patent states, it was already "well known within the current art" that data compression offers the benefit to "reduce the time to transmit data." '908 Patent, 2:13-17 ("It is well known within the current art that data compression provides several unique benefits. First, data compression can reduce the time to transmit data by more efficiently utilizing low bandwidth data links.").

Indeed, Realtime claims that the entire point of the '908 Patent is to achieve "accelerated storage and retrieval of data" *See e.g.,* '908 Patent, titled "System and methods for ***accelerated data storage and retrieval***." (*emphasis added*); 2:56-62 ("SUMMARY OF THE INVENTION" "The present invention is directed to systems and methods for providing ***accelerated data storage and retrieval*** by utilizing lossless data compression and decompression. The present invention provides ***an effective increase of the data storage and retrieval bandwidth of a memory storage device***.). Nevertheless, the ***only*** possible method or mechanism disclosed in the claims of the '908 Patent as to how this "accelerated data storage " or "effective increase of the data storage and retrieval bandwidth" might possibly be achieved is the abstract idea of using multiple different compression techniques to compress and store digital data. Expressing the desired result (*i.e.*, of being able to compress and store data faster than merely storing it in uncompressed form) of using the abstract idea (*i.e.*, using multiple different compression techniques to compress and store digital data) in the claim language does not create patent eligible subject matter. *Internet Patents*,790 F.3d at 1348 (holding claim unpatentable under section 101 directed to "the effect or result" of the invention dissociated from any method or mechanism by which it "is accomplished").

Indeed, though Realtime contends that the claims of the '908 Patent claim reflect patentable subject matter because they supposedly provide a "technical solution," the language in

claims 1 and 21 do not set forth any type of "technical solution." Rather the only method or technique that these claims disclose to address the problem identified in the patent specification of the physical limitation of bandwidth and disk access rates of 17.1 MB/sec for storing digital data ('908 Patent, 2:20-25) is not a "technical solution" at all. Instead the claims offer only a pure abstraction – using multiple different compression techniques to compress and store the data. Moreover, as discussed below in connection with the second inquiry of the *Mayo/Alice* test, the content of the asserted dependent claims of the '908 Patent (Nos. 2, 4-6, 9, 11, 22 and 24) as well as the third independent claim, claim 25, offer nothing beyond the abstract concept of independent claims 1 and 21. *See Telinit Techs. LLC v. Jive Commc'ns Inc.*, 2:14-cv-00369, Order, Dkt. No. 84 at 32) (Schroeder, J.) (E.D. Tex. Sept. 21, 2015) ("Claim 1 does not contain any specific structural components—beyond a generic "processor" and generic "networks"—that remove it from the realm of an abstract idea.")

As such, the claim language of the asserted claims of the '908 Patent demonstrates that the first inquiry of the *Mayo/Alice* test is met. The basic concept of the asserted claims in their simplest form is directed at an abstract concept - using multiple different compression techniques to compress and store digital data.

### B. *Mayo/Alice* Step Two: The Asserted Claims Of The '908 Patent Do Not Contain Any Additional Inventive Concept Sufficient to Transform The Claimed Abstract Idea Into A Patent Eligible Invention.

In order to be determined to be patent eligible under the second part of the *Mayo/Alice* test, the asserted claims of the '908 Patent must contain an "inventive concept" sufficient to transform the claimed abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2357, 2360. As the Federal Circuit observed in *Ultramercial Inc. v Hulu LLC*, 772 F3d. 709 (Fed. Cir. 2014):

> The transformation of an abstract idea into patent-eligible subject matter "requires more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* (quoting Mayo, 132 S. Ct. at 1294) (alterations in original). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'"

> *Id.* (quoting *Mayo*, 132 S. Ct. at 1297) (alterations in original). Those "additional features" must be more than "well-understood, routine, conventional activity." *Mayo*, 132 S. Ct. at 1298.

772 F3d at 715 (quoting *Alice*, 134 S. Ct. at 2357).

For example in *Ultramercial*, the Federal Circuit concluded that the limitations of the claims at issue in that case did "not transform the abstract idea that they recited into patent-eligible subject matter because the claims simply instructed the practitioner to implement the abstract idea with routine, conventional activity." 772 F3d. at 715.

Here the asserted claims of the '908 Patent fail to include any inventive concepts or additional features sufficient to transform the abstract concept of using multiple compression techniques to compress and store data into patent eligible subject matter. They disclose only the abstract concept of using two different compression techniques out of the many well known available compression techniques. For example, the asserted claims of the '908 Patent do not disclose or offer anything innovative with respect to any new type of compression technique, encoder or algorithm. *See e.g.*, '908 Patent, 11:31-36 ("It is to be understood that any conventional compression/decompression system and method (which comply with the above mentioned constraints) may be employed in the data storage accelerator 10 and data retrieval accelerator 80 for providing accelerated data storage and retrieval in accordance with the present invention."). Indeed, as the specification of the '908 Patent itself acknowledges, the existence of multiple compression techniques was already "well known within the current art" as was the knowledge that different compression techniques are more effective than others in effectively encoding "different types of input data." [5] The asserted claims fail to offer anything new or

---

[5] *See* '908 Patent, 1:51-56 ("Data compression is widely used to reduce the amount of data required to process, transmit or store a given quantity of information. In general, there are two types of data compression techniques that may be utilized either separately or jointly to encode/decode data: lossy and lossless data compression."); 7:55-59 ( "It is well known within the current art that certain data compression techniques including, but not limited to, dictionary compression, run length encoding, null suppression and arithmetic compression are capable of encoding data when received." and 11:67-12:7 ("The encoder set E1, E2, E3 . . . En may include any number "n" (where n may=1) of those lossless encoding techniques currently well known within the art such as run length, Huffman, Lempel-Ziv Dictionary Compression, arithmetic

innovative with respect to which of the many already known compression techniques to use or how to make the determination of which of them to use. They are simply silent on these subjects, offering nothing more than the idea itself of using two different compression techniques to compress and store different data blocks. *See, eDekka LLC v. 3Balls.com, Inc.*, Case No. 2:15-cv-541-JRG, Dkt. No. 100 at 6-7 (E.D. Tex. Sept 21, 2015) (finding claims that "'amount to nothing significantly more than an instruction to apply the abstract idea of [storing, labeling, and retrieving information] using some unspecified, generic computer'" ineligible under Section 101 (quoting *Alice*, 134 S. Ct. at 2360)).

To fall within the scope of Section 101 claims reciting an abstract idea must include additional features or meaningful limits to ensure that the claim is more than a drafting effort designed to monopolize an abstract idea. *Alice,* 134 S. Ct. at 2354; *Bilski v. Kappos,* 561 U.S. 593, 610-11 (2010); *O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 112-14 (1854). The asserted claims of the '908 Patent do not – rather they do no more to simply instruct the practitioner to "implement the abstract idea." *Alice*, 134 S. Ct. at 2359. Neither the additional features in the independent claims 1 and 21, nor any of the other asserted claims of the '908 Patent reflect any "innovative concept" sufficient to transform the claimed abstract idea into patent eligible subject matter. To the contrary, every other additional feature in the asserted claims reflects nothing more than "well-understood, routine, conventional activity." *Mayo*, 132 S. Ct. at 1298.

*The Feature Of Storing Compressed Data On A Memory Device Is Not Innovative As It Reflects Well Understood Conventional Activity*

The feature included in claims 1 and 21 of "storing" the compressed data on a "memory device" does not offer anything innovative or transformative. Storing compressed data on a memory device is "well-understood, routine, conventional activity." As the '908 Patent itself concedes, the storage of compressed data on memory devices and the benefit of this was well

---

coding, data compaction, and data null suppression. It is to be understood that the encoding techniques are selected based upon their ability to effectively encode different types of input data.").

understood. '908 Patent, 2:17-19 (discussing that it is "well known within the current art" that one of the benefits of data compression is that it "economizes on data storage and allows more information to be stored for a fixed memory size by representing information more efficiently.").

Nor is there anything new or unique offered by the claims in terms of the nature of the "memory device" to be used. As the '908 Patent states, the "memory device" in the claims references "all forms and manners of memory devices."[6] Simply implementing an abstract concept on a generic computer or through use of a generic computer component is insufficient to create patent eligibility. *Alice*, 134 S. Ct. at 2358 ("[M]ere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."); *Bilski*, 561 U.S. at 611-12. Generic "storage" cannot satisfy the second step of *Alice*. *Versata*, 793 F.3d at 1335 ("storing" is "conventional, routine, and well-known" and involves "the normal, basic functions of a computer"); *Bancorp*, 687 F.3d at 1277-78 ("digital storage" insufficient to transform abstract claim into a patentable one).

*The Inclusion Of A Requirement That The Compression And Storage Occurs Faster Than Storage Would Occur If The Data Were Not Compressed Does Not Transform The Abstract Idea Into Patent Eligible Subject Matter*

The inclusion of the language in the independent claims that "the compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form" also does not reflect any "innovative concept" sufficient to transform the claimed abstract idea into a patent-eligible invention. As discussed above, this language reflects nothing more than an expression of the desired result or effect of applying the

[6] '908 Patent, 5:39-51 ("It is to be appreciated that the data storage device 45 may be any form of memory device including all forms of sequential, pseudo-random, and random access storage devices. The memory storage device 45 may be volatile or non-volatile in nature, or any combination thereof. Storage devices as known within the current art include all forms of random access memory, magnetic and optical tape, magnetic and optical disks, along with various other forms of solid-state mass storage devices. Thus it should be noted that the current invention applies to all forms and manners of memory devices including, but not limited to, storage devices utilizing magnetic, optical, and chemical techniques, or any combination thereof.'); *see also* 13:29-50.

abstract idea of using multiple different compression techniques to compress and store digital data. The asserted claims simply fail to disclose or offer any method or mechanism as to how this "faster" or "accelerated data storage" is to be achieved. No specific method, mechanism or technique at all is stated or offered in the claims – they are limited to the abstract idea of using multiple different compression techniques to compress and store digital data.[7] Moreover, as noted, the '908 Patent itself acknowledges that it was already "well known within the current art" that one of the benefits of data compression was to "reduce the time to transmit data by more efficiently utilizing low bandwidth data links." '908 Patent, 2:13-19.

As the Federal Circuit recently made clear in *Internet Patents Corp. v. Active Network, Inc.*,790 F.3d at 1348, an expression of the desired result or effect of applying the abstract idea does not create patent eligible subject matter where the "the effect or result" is dissociated from any method or mechanism by which it "is accomplished." Similarly, as the Federal Circuit held in *Intellectual Ventures I LLC v. Capital One Bank USA:* "A simple instruction to apply an abstract idea on a computer is not enough. . . . Nor, in addressing the second step of *Alice*, does claiming ***the improved speed or efficiency*** inherent with applying the abstract idea on a computer provide a sufficient inventive concept." *792 F.3d 1363, 1367* (Fed. Cir. 2015) (emphasis added).

*Realtime's Argument That the '908 And '530 Patents Focus On The Realm Of Digital Data Compression Is Unavailing*

Realtime is also wrong in its attempt to claim patent eligibility based on the argument that the claims of the '908 Patent focus on a particular technological environment – the compression of digital data. As the Supreme Court has repeatedly made clear, "limiting the use of an abstract idea '"to a particular technological environment"'" is not enough for patent

[7] *See e.g.*, '908 Patent, 11:31-36 ("It is to be understood that any conventional compression/decompression system and method (which comply with the above mentioned constraints) may be employed in the data storage accelerator 10 and data retrieval accelerator 80 for providing accelerated data storage and retrieval in accordance with the present invention.")

eligibility. *Alice*, 134 S. Ct. at 2358; *Mayo*, 132 S. Ct. at 1294; *Bilski*, 561 U.S. at 610-11; *See Parker v. Flook*, 437 U.S. 584, 595-96 (1978). *See also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014). Moreover, the use of compression for digital data was a "well-understood, routine, conventional activity." *See Mayo*, 132 S. Ct. at 1298. For example, the '908 Patent expressly states: "One outcome of digital data representation is the continuing need for increased capacity in data processing, storage, and transmittal. This is especially true for diffuse data where increases in fidelity and resolution create exponentially greater quantities of data. Data compression is widely used to reduce the amount of data required to process, transmit, or store a given quantity of information." '908 Patent, 1:47-53. Accordingly Realtime's argument that the asserted claims of the '908 Patent are patentable simply because they are directed at systems and methods of "digital data compression" is unavailing – this simply does not bring the claims within patentable subject matter. *Content Extraction*, 776 F.3d at 1347 (*citing Alice*, 134 S. Ct. at 2358) (claims may be abstract even if they contemplate use of "a computer that processe[s] streams of bits."). *See also*, *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility.").

*The Feature Of A Data Descriptor In Dependent Claims 2 And 22 Of The '908 Patent Does Not Offer Any Transformative Innovative Concept*

Dependent claims 2 and 22 of the '908 Patent add the additional limitation of "storing on the memory device, a data descriptor indicative of the first compression technique" which is "capable of being utilized to decompress the first compressed data block." The addition of the "data descriptor" limitation in these dependent claims does not save them from patent ineligibility. These dependent claims do no more than include, through the use of generic computer functionality, the feature of retaining the information (or "indicator") of which compression technique was used to compress the data block for possible later use in decompression. As the '908 Patent states: "A data compression type descriptor is defined as any

recognizable data token or descriptor that indicates which data encoding technique has been applied to the data." '908 Patent, 12:64-67. Retaining the information of which compression technique was used is itself non-inventive because it is no more than a clerical feature for implementing the abstract idea of using more than one compression technique. This is insufficient. *Alice*, 134 S. Ct. at 2358; *see also Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1347-48, 1350-51 (Fed. Cir. 2014) (patent-ineligible "abstract idea . . . of organizing data through mathematical correlations"—even though the idea was broken into the steps); *Dealertrack*, 674 F.3d at 1333 (clearinghouse concept was abstract despite being broken into a series of common-sense steps for "receiving data from one source," "selectively forwarding the data," and "forwarding reply data to the first source.").

Moreover, these dependent claims do no more than to state that the information should be stored using conventional, generic computer functionality (storing "any recognizable data token or descriptor" on the generic "memory device"). This does not add the requisite "'"inventive concept" sufficient to "transform" the claimed abstract idea into patent-eligible subject matter.'" *See e.g., Alice*, 134 S. Ct. at 2357 (simply instructing the practitioner to implement the abstract idea on a generic computer is insufficient); *see id.* at 2360 (rejecting claims requiring a "data processing system" with a "communications controller" and a "data storage unit" as "purely functional and generic"). This does no more than provide an obvious feature to implement the abstract idea. Appending inconsequential conventional features or steps specified at a high level of generality to the abstract idea does not make it patentable. *Alice*, at 2357. Inclusion of the feature of a "data descriptor" is precisely the type of generic computer limitation that *Alice* and its progeny have held does not confer patent eligibility on a patent claim. *See Cyberfone Systems LLC v. CNN Interactive Group, Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) ("Here, the well known concept of categorical data storage, *i.e.*, the idea of collecting information in classified

form, then separating and transmitting that information according to its classification, is an abstract idea that is not patent-eligible.").[8]

There is simply no innovative concept sufficient to transform the claimed abstract idea into a patent eligible invention provided by the "data descriptor" feature in the dependent claims.

*The Feature Of Retrieving The Data Descriptor And Compressed Data And Decompressing The Data In Dependent Claims 4, 5 And 6 Of The '908 Patent Reflects Routine Activity And Does Not Offer Any Innovative Concept*

Similarly, the addition in dependent claims 4, 5 and 6 of the '908 Patent of the features of retrieving the data descriptor and compressed data and of decompressing the data also are insufficient. As the '908 Patent itself acknowledges, the functions of retrieving the indicator of which compression technique was used and the compressed data and then decompressing the data are all certainly activities that fall within the "conventional, routine, and well-known" processes of digital data compression.[9] As the Supreme Court has admonished, allowing

---

[8] *See Telinit Techs. LLC v. Jive Commc'ns Inc.*, Case No. 2:14-cv-00369, Order, Dkt. No. 84 at 33) (Schroeder, J.) (E.D. Tex. Sept. 21, 2015) ("The primary structures identified by Telinit result in nothing more than generic computer and Internet based elements—"processor" and "networks." Moreover, claim 1 does not direct the generic elements to a specific application beyond "receiving," "identifying," "signaling," "monitoring," or "providing" information. Consequently, claim 1 does not contain any transformative elements, either alone or in combination, that transforms its abstract idea into patentable subject matter.")

[9] For example, the specification of the '908 Patent states: "A descriptor extraction module 60 receives the buffered (or unbuffered) input data block and then parses, lexically, syntactically, or otherwise analyzes the input data block using methods known by those skilled in the art to extract the data compression type descriptor associated with the data block." (14:32-37); "It is to be understood that any conventional compression/decompression system and method (which comply with the above mentioned constraints) may be employed in the data storage accelerator 10 and data retrieval accelerator 80 for providing accelerated data storage and retrieval in accordance with the present invention." (11:31-36); and "It is well known within the current art that certain data decompression techniques including, but not limited to, dictionary compression, run length encoding, null suppression and arithmetic compression are capable of decoding data when received." (8:65-9:2); "The decoders D1 . . . Dn may include those lossless encoding techniques currently well known within the art, including: run length, Huffman, Lempel-Ziv Dictionary Compression, arithmetic coding, data compaction, and data null suppression. Decoding techniques are selected based upon their ability to effectively decode the various different types of encoded input data generated by the data compression systems described above or originating from any other desired source." (14:45-53).

patentability to turn on the addition of "well-understood," "routine," and "conventional" features would elevate form over function and reward the deftness of the draftsman, not the ingenuity of invention. *Mayo,* 132 S. Ct. at 1294, 1298; *Alice,* 134 S. Ct. at 2359-60.

*The Specific Reference To Using The Known Compression Techniques of Dictionary And LZ Compression Techniques In Dependent Claims 9, 11 and 24 Of The '908 Patent Does Not Offer Any Innovative Concept*

Nor does the addition in dependent claims 9, 11 and 24 of the '908 Patent of limitations requiring that the compression techniques used by forms of "dictionary compression" and/or "Lempel-Ziv compression" create patent eligibility. As the patent itself clearly states, these forms of data compression were well known with the current art at the time. '908 Patent, 7:55-59 ( "It is well known within the current art that certain data compression techniques including, but not limited to, dictionary compression, run length encoding, null suppression and arithmetic compression are capable of encoding data when received." and 11:67-12:7 ("The encoder set E1, E2, E3 . . . En may include any number "n" (where n may=1) of those lossless encoding techniques currently well known within the art such as run length, Huffman, Lempel-Ziv Dictionary Compression, arithmetic coding, data compaction, and data null suppression. It is to be understood that the encoding techniques are selected based upon their ability to effectively encode different types of input data."). As noted, patentability is not created by the addition of such "well-understood," "routine," and "conventional" features.

*The Singular Additional Limitation In Independent Claim 25 Of The '908 Patent Of "Over A Communications Channel" Does Not Offer Any Innovative Concept*

Claim 25, which is the third asserted independent claim of the '908 Patent, is identical to independent claim 21 except that it adds the limitation of "receiving a first and a second data block over a communications channel." This limitation too fails to reflect any innovative concept sufficient to transform the claimed abstract idea into patent eligible subject matter. The patent itself offers nothing innovative about receiving the data blocks over a "communications channel." This too is well within the realm of well-understood," "routine," and "conventional"

features. For the same reasons that the use of a generic "memory device" cannot create patent eligibility, the addition of the statement that the method is performed over a "communications channel" in claim 25 does not satisfy Section 101. *Alice*, 134 S. Ct. 2360; *Internet Patents*, 790 F.3d at 1348-48 ("The statement that the method is performed by a computer does not satisfy the 'inventive concept.'")

As demonstrated, based on application of the *Mayo/Alice* two-part test for distinguishing software-based patent claims which are patent eligible under Section 101 from those that are not none of the asserted claims of the '908 Patent are patent eligible. As such, Realtime's claims based on the '908 Patent in the FAC should be dismissed.

## III. THE ASSERTED CLAIMS OF THE '530 PATENT DO NOT CONTAIN PATENT ELIGIBLE SUBJECT MATTER AND SHOULD BE DISMISSED.

Application of the Supreme Court's two-part test to the asserted claims of the '530 Patent (*i.e.*, claims 1, 4, 8-14 and 24) also results in the determination that these claims are directed at a patent ineligible abstract idea beyond the scope of Section 101 such that plaintiff's claims in this action based on them should be dismissed.

### A. *Mayo/Alice* Step One: The Asserted Claims Of The '530 Patent Are Directed At An Abstract Idea.

The asserted claims of the '530 Patent are quite similar to those of the '908 Patent discussed above.[10] Independent Claim 1 of the '530 Patent provides as follows:

*1. A system comprising:*

*a memory device; and*

*a data accelerator,*

*wherein said data accelerator is coupled to said memory device,*

*a data stream is received by said data accelerator in received form, said data stream includes a first data block and a second data block,*

[10] Realtime is asserting claims 1, 4, 8-14 and 24 of the '530 Patent in this case. Claims 1 and 24 of the '530 Patent are independent claims – each of the other asserted claims of the '530 Patent are dependent claims.

> *said data stream is compressed by said data accelerator to provide a compressed data stream by compressing said first data block with a first compression technique and said second data block with a second compression technique,*
>
> *said first and second compression techniques are different,*
>
> *said compressed data stream is stored on said memory device,*
>
> *said compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form,*
>
> *a first data descriptor is stored on said memory device indicative of said first compression technique, and*
>
> *said first descriptor is utilized to decompress the portion of said compressed data stream associated with said first data block.*

As reflected by the claim language, the basic concept of claim 1 of the '530 Patent is, in its simplest form, directed at an abstract idea - using multiple compression techniques to compress and store data blocks in a data stream.

Most of the above analysis applying the two part *Mayo/Alice* test to the asserted claims of the related '908 Patent is the same for the asserted claims of the '530 Patent and will thus not be repeated.[11] Indeed, for purposes of determining what the basic concept of the asserted claims of the '530 Patent are under the *Mayo/Alice* test, the only significant difference from the '908 Patent is that the literal language in claim 1 of the '530 Patent includes the limitations that "a data stream is received by said data accelerator," that the "data stream includes a first data block and a second data block" and that what is compressed is the "data stream." However, whether multiple compression techniques are used to compress and store individual data blocks in a data stream or not, the "basic concept" of claim 1 of the '530 Patent is certainly an abstract idea. Claim 1 fails to disclose or include any specific method, mechanism or technique with respect to the compression of data blocks in a data stream other than to use more than one different compression technique to compress the data stream. The basic concept of the claim thus

[11] Both the '530 and '908 Patents originate from continuations of the same application (No. 10/628,795) which was itself a continuation of application No. 09/266,394. *See* '530 Patent (Dkt. No. 100, Ex. B) and '908 Patent (Dkt. No. 11, Ex. E).

certainly reflects an abstraction, "an idea, having no particular concrete or tangible form," which is using multiple compression techniques to compress and store data blocks in a data stream.

The only other differences between claim 1 of the '530 Patent and claim 1 of the '908 Patent are that: (1) claim 1 of the '530 Patent includes the "data descriptor' limitation found in dependent claims 2 and 22 of the '908 Patent; and (2) claim 1 of the '530 Patent requires that the "data accelerator" be coupled to the "memory device" which is not expressly included in the language of claim 1 of the '908 Patent. Neither of these differences are significant under the first step in the *Mayo/Alice* test. As discussed above, the inclusion of the "data descriptor" limitation in independent claim 1 of the '530 Patent reflects nothing more than to include, through the use generic computer functionality, the feature of retaining the information of which compression technique was used for the data block (by storing a generic "indicator") for utilization to later decompress the data. Retaining the information of which compression technique was used by storing it on a generic memory device is no more than an obvious routine and conventional feature to implement the abstract idea of using more than one compression technique. (*See* discussion *supra* with respect to "data descriptor" limitations in dependent claims 2 and 22 of the '908 Patent). Moreover, even if the idea of retaining the information of which compression technique was used is incorporated into a statement of the basic concept of claim 1 of the '530 Patent, the basic concept is still an abstract idea under the first part of the *Mayo/Alice* test – that of using multiple compression techniques to compress and store data blocks in a data stream and retaining the information as to which technique was used to compress each data block.

Similarly, the inclusion of an express limitation in claim 1 of the '530 Patent that the "data accelerator" be coupled to the "memory device" doesn't change the analysis. This is nothing more than an express statement of a generic conventional computer function.

Otherwise the analysis discussed above with respect to application of the first part of the *Mayo/Alice* test for the asserted claims of the '908 Patent applies with equal force to the asserted claims of the '530 Patent. Like the asserted claims of the '908 Patent, those of the '530 Patent

offer no specific method, mechanism or technique with respect to the compression of data blocks in a data stream other than the abstract concept of using multiple compression techniques and retaining the information as to which technique was used to compress each data block. *See Content Extraction*, 776 F.3d at 1347-48 (Fed. Cir. 2014) ("Applying *Mayo/Alice* step one, we agree with the district court that the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory. The concept of data collection, recognition, and storage is undisputedly well-known.")

While claim 1 of the '530 Patent, like the asserted claims of the '908 Patent, includes the statement that the "compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form," as previously discussed this is no more than an expression of the desired result or effect of applying the abstract idea. Like the asserted claims of the '908 Patent, claim 1 of the '530 Patent also does not include any method or mechanism by which this goal is to be accomplished and doesn't even expressly state this will be achieved by use of the abstract idea of using multiple compression techniques and retaining the information as to which technique was used to compress each data block. As the Federal Circuit has made clear, merely expressing the desired result of using the abstract idea in the claim language does not create patent eligible subject matter. *Internet Patents*, 790 F.3d at 1348 (holding claim unpatentable under section 101 directed to "the effect or result" of the invention dissociated from any method or mechanism by which it "is accomplished").

Like the '908 Patent, Realtime also claims that the point of the '530 Patent is to achieve "accelerated storage and retrieval of data" *See e.g.,* '530 Patent, 2:56-60 and that it provides a "technical solution." However the language in claim 1 of the '530 Patent simply does not provide any "technical solution." Rather the ***only*** method or mechanism disclosed as to how this "accelerated data storage " or "effective increase of the data storage and retrieval bandwidth" might possibly be achieved is the application of the abstract idea using multiple different

compression techniques to compress and store a data stream and retaining the information as to which technique was used to compress each data block. This is not a "technical solution" at all, but rather an abstract idea. The first inquiry in the two-part *Mayo/Alice* test is met here.

### B. *Mayo/Alice* Step Two: The Asserted Claims Of The '530 Patent Do Not Contain Any Additional Inventive Concept Sufficient to Transform The Claimed Abstract Idea Into A Patent Eligible Invention.

Application of the second part of the *Mayo/Alice* test to the asserted claims of the '530 Patent demonstrates that, like the asserted claims of the '908 Patent, none contain any inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention.

Like the situation with the asserted claims of the '908 Patent, the asserted claims of the '530 Patent disclose nothing new or innovative with respect to compression techniques or a new compression algorithm, instead relying on "any conventional compression/decompression system" and compression techniques that were already "well-known within the art." '530 Patent, 11:5-10; 11:41-48; 7:27-32; 13:16-22. The asserted claims offer only the abstract idea of using multiple compression techniques to compress and store data blocks in a data stream and retaining the information as to which technique was used to compress each data block.

Nor are there any other additional features or meaningful limits in the asserted claims which reflect an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2357. Rather they either do no more to simply instruct the practitioner to "implement the abstract idea" (*Alice*, 134 S. Ct. at 2359) or reflect just "well-understood, routine, conventional activity." (*Mayo*, 132 S. Ct. at 1298).

For example, as discussed above with reference to the asserted claims of the '908 Patent, the feature of "storing" the compressed data on a generic "coupled" "memory device" is "well-understood, routine, conventional activity."[12] *Alice*, 134 S. Ct. at 2358 ("the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible

[12] The specification of the '530 Patent, like that of the '908 Patent, also states, the "memory device" references "all forms and manners of memory devices." '530 Patent, 5:12-24; 13:3-15.

invention."). The relevant question, as the Supreme Court has explained, "is whether the claims here do more than simply instruct the practitioner to implement the abstract idea … on a generic computer." *Id.* at 2359. Here the asserted claims of the '530 do no more.

For the same reasons discussed above with respect to the asserted claims of the '908 Patent, the inclusion of the language in the asserted claims of the '530 Patent of "said compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form" does not create patent eligibility. As with the '908 Patent, the '530 Patent asserted claims also offer nothing as to how one would actually achieve the compression and storage of the data stream by using multiple compression techniques faster than simply storing the data in its "received" form – they simply are drafted to include that desired result as a limitation. A limitation which merely recites the desired result or purpose of the abstract idea does not render the claim patent-eligible. *Internet Patents*, 790 F.3d at 1340 (holding claim unpatentable under section 101 which sought to claim "the effect or result" of the invention dissociated from any method or mechanism by which "it is accomplished").

In addition, Realtime's argument that the asserted claims of the '530 Patent contain patent eligible subject matter simply because they are directed at systems and methods of "digital data compression" fails for the same reasons discussed above with respect to the '908 Patent.

Similarly, for the same reasons discussed above with respect to dependent claims 2 and 22 of the '908 Patent, the inclusion of the "data descriptor" limitation in independent claim 1 of the '530 Patent does not create patent eligibility under Section 101.

Moreover, as discussed below, there are no features or meaningful limitations in any of the asserted dependent claims or of the remaining independent claim 24 of the '530 Patent which create patent eligibility for any of those claims. *See Telinit Techs. LLC v. Jive Commc'ns Inc.*, Case No. 2:14-cv-00369, Order, Dkt. No. 84 at 35-36) (Schroeder, J.) (E.D. Tex Sept. 21, 2015) (finding dependent claims "add no meaningful limitations" and merely add basic components

and functions of a general purpose computer or network device to effectuate carrying out the abstract steps of the claims which did not render the claims patent-eligible).

*The Features In Dependent Claims 4 and 8 Of The '530 Patent Reflect Nothing But Known, Conventional Functions*

Dependent claim 4 of the '530 Patent adds only the limitation of the retrieval of the compressed data stream. As the patent itself acknowledges, retrieval and decompression of compressed data was well known within the art. '530 Patent, 8:38-43. Nothing innovative or new is offered by dependent claim 4 other than the additional of a generic conventional known function.

Similarly, dependent claim 8, which adds nothing more than the coupling of the data accelerator and memory device is "via a serial storage architecture" also does no more than add a specific type of interface which the patent specification acknowledges was already "known to those skilled in the art." '530 Patent, 12:63-13:1 (referencing "SSA (Serial Storage Architecture)" which is "known to those skilled in the art"). Dependent claim 8 does not create patent eligibility.

*The Limitations In Dependent Claims 9-12 Of The '530 Patent Reflect Only Known, Conventional Memory Devices*

The same is true for dependent claims 9-12 of the '530 Patent which merely add limitations that the generic "memory device" in the independent claim are to be one of several known specific species of memory devices (*i.e.*, "magnetic" "optical" "random access memory" and "solid-state storage mass storage device"). Here again, the '530 Patent itself acknowledges that each of these specific species of memory were well known in the art. '530 Patent, 5:17-20 ("Storage devices as known within the current art include all forms of random access memory, magnetic and optical tape, magnetic and optical disks, along with various other forms of solid-state mass storage devices.); 2:47-51(" Typically mass storage devices include magnetic and optical tape, magnetic and optical disks, and various solid-state mass storage devices."). Dependent claims 9-12 thus reflect nothing more than limiting the application of the abstract idea

to particular "well-understood" type of memory – simply "routine, conventional activity" which is insufficient to confer patent eligibility.

*The Limitations In Dependent Claims 13 And 14 Of The '530 Patent Reflect Nothing But Known, Conventional Compression Methods*

Similarly, dependent claims 13-14 of the '530 Patent which do no more than add the limitations that the "first compression techniques" include compressing with two specific well known compression techniques (*i.e.*, "Huffman encoding" and "Lempel-Ziv encoding") fail to add any innovative concept sufficient to transform the claimed abstract idea into a patent-eligible invention. The '530 Patent itself clearly states that both of these forms of data compression were well known with the current art at the time. '530 Patent, 11:41-46 ("The encoder set E1, E2, E3 . . . En may include any number "n" (where n may=1) of those lossless encoding techniques currently well known within the art such as run length, Huffman, Lempel-Ziv Dictionary Compression, arithmetic coding, data compaction, and data null suppression."). Dependent claims 13 and 14 thus add nothing innovative at all and merely reflect a draft person's limitations directed at well known, conventional and routine particular types of compression techniques.

*The Additional Limitations Added To Independent Claim 25 Of The '530 Patent Do Not Offer Any Innovative Concept Sufficient To Transform The Abstract Idea*

Realtime also asserts independent claim 24 of the '530 Patent which is identical to independent claim 1 discussed above except that it adds limitations of "wherein a bandwidth of the received data stream is determined" and "wherein a data rate of the compressed data stream is adjusted, by modifying a system parameter, to make a bandwidth of the compressed data stream compatible with a bandwidth of the memory device." These limitations too fail to reflect any innovative concept sufficient to transform the claimed abstract idea into patent eligible subject matter through claim 25. In the first instance, claim 25 offers nothing innovative about determining the bandwidth of the data stream being received. Instead, it simply instructs that this is to be done. As discussed above, "additional features" must be more than "well-understood, routine, conventional activity." *Mayo*, 132 S. Ct. at 1298. Merely instructing that a

determination be made as to the bandwidth of the data stream being received certainly falls within this category. *Ultramercial*, 772 F3d. at 715. Similarly, the inclusion in claim 25 of the feature of adjusting the data rate of the compressed data stream by modifying a system parameter to make its bandwidth compatible with the bandwidth of the memory device fails to add an inventive concept sufficient to transform the claimed abstract idea into patent eligible subject matter. These limitations in claim 25 too reflect nothing more than the application of known, conventional methods to make such bandwidth adjustments. ‘530 Patent, 9:41-67. As the Supreme Court has repeatedly stated, patentability does not turn on the addition of “well-understood” “routine,” and “conventional” limitations such as these which would elevate form over function and reward the deftness of the draftsman, not the ingenuity of invention. *Mayo,* 132 S. Ct. at 1294, 1298; *Alice,* 134 S. Ct. at 2359-60.

Viewed as a whole, application of the Supreme Court’s two-part test to the asserted claims of the ‘530 Patent demonstrates that they are not patent eligible. As such, the asserted claims based on the ‘530 Patent in the FAC should be dismissed.

## IV. THE MAJORITY OPINION OF THE FEDERAL CIRCUIT IN *DDR HOLDINGS LLC V. HOTELS.COM, L.P.* IS NOT CONTROLLING HERE.

The majority opinion by the Federal Circuit in *DDR Holdings LLC v Hotels.com, LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014), including the singular sentence in that opinion commenting on claims “rooted in computer technology,” is not, as Realtime may argue, controlling here. In *DDR Holdings* the majority opinion examined the claims before it relating to the generation of a composite web page and found that the “claims satisfy *Mayo/Alice* step two” because “taken together as an ordered combination the claims recite an invention that is not merely the routine or conventional use of the Internet.” 773 F.3d at 1257-59. At the same time, the majority opinion expressly cautioned that not all claims “rooted in computer technology” or the internet are patent eligible. (“We caution, however, that not all claims purporting to address Internet-centric challenges are eligible for patent.”). *Id.* at 1258. *See Mirror Worlds Techs. LLC v Apple, Inc.*,

Case No. 6:13-cv-419, Order, Dkt. No. 346 at 20 (E.D. Tex. July 7, 2015) (Schroeder, J.) (discussing *DDR Holdings* and acknowledging that the defendant's concern "is a valid one" of overbroad preemption "even if a claim is rooted in computer technology and overcomes a problem specifically arising in the realm of computers"); *Telinit Techs. LLC v. Jive Commc'nss Inc.*, Case No. 2:14-cv-00369, Order, Dkt. No. 84 at 31-32 ) (Schroeder, J.) (E.D. Tex. Sept. 21, 2015) (distinguishing *DDR Holdings* and holding that "[T]aking an otherwise abstract idea and applying it to the Internet does not transform the claim into patentable subjection matter").

Thus, to the extent Realtime suggests that the majority opinion in *DDR Holdings* supports the proposition that any claims "necessarily rooted in computer technology" directed at trying to "overcome a problem specifically arising in the realm of computer networks" are patent eligible, this argument misses the mark. Indeed, such a proposition would be in direct conflict with the repeated statements from the Supreme Court that "limiting the use of an abstract idea to a particular technological environment" is insufficient to confer patent eligibility (*see Alice*, 134 S. Ct. at 2360; *Mayo*, 132 S. Ct. at 1294; *Bilski*, 561 U.S. at 610) and that claims do not become patent eligible simply because they disclose a specific solution to a particular problem. *See Bilski*, 561 U.S. at 599-601 (concluding that claims fell outside section 101 notwithstanding the fact that they disclosed a very specific method of hedging against price increases); *Parker v. Flook*, 437 U.S. at 593, (rejecting the argument "that if a process application implements a principle in some specific fashion, it automatically falls within the patentable subject matter of § 101"). Quite to the contrary, as the majority opinion in *DDR Holdings* itself stated in contrasting its holding with that of the Federal Circuit decision in *Ultramercial*, even where claims are directed to a "specific method" which "was previously unknown and never employed" before does not "alone" render the claims patent eligible. *DDR Holdings*, 773 Fd. 3d at 1258 ("But this alone could not render its claims patent-eligible."). *See also Content Extraction*, 776 F.3d at 1347 (computer implemented invention must involve more than performance of well-

understood, routine and conventional activities previously known to industry and attempt to limit abstract ideas to a particular technological environment is insufficient).

Moreover, the asserted claims of the ‘908 and ‘530 patents are simply not like the claims relating to the generation of a composite web page before the court in *DDR Holdings v. Hotels.com* which the majority found as patentable based on application of the second part of the *Mayo/Alice* test. Here, as discussed and analyzed above, application of the second part of the *Mayo/Alice* test to the elements of each of the asserted claims of the ‘908 and ‘530 Patents as a whole demonstrates that they simply fail to contain any inventive concept sufficient to transform the claimed abstract ideas into a patent-eligible invention.

## CONCLUSION

For the reasons set forth above, the asserted claims of the ’908 patent, as well as those of the ‘530 Patent, fail as a matter of law for lack of patent-eligible subject matter under §101 of the Patent Act. The Court should therefore grant this motion and dismiss Realtime’s claims based on those patents in Realtime’s First Amended Complaint.

Dated: September 29, 2015

Respectfully submitted,

*/s/ James W. Morando*

Deron R. Dacus
Texas Bar No. 00790553
E-mail: ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: 903-705-1117
Fax: 903-581-2543

James W. Morando (Lead Attorney)
(California Bar No. 87890)
E-mail: jmorando@fbm.com

Dan Callaway (California Bar No. 262675)
E-mail: dcallaway@fbm.com
*Pro Hac Vice Pending*
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Fax: (415) 954-4480

Attorneys for Defendants Actian Corporation and
Pervasive Software

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(d), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail this 29th day of September, 2015.

*/s/ James W. Morando*
James W. Morando