**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO, | |
| Plaintiff, | |
| | CASE NO.  6:15-cv-463-RWS-JDL |
| v. | |
| ACTIAN CORPORATION and PERVASIE SOFTWARE, INC., | LEAD CASE |
| Defendants. | |

**DEFENDANTS SAP AMERICA INC., SYBASE, INC.,**
**HEWLETT-PACKARD COMPANY, HP ENTERPRISE SERVICES, LLC,**
**DELL INC., ECHOSTAR CORPORATION, HUGHES NETWORK**
**SYSTEMS, LLC, DROPBOX, INC., AND RIVERBED TECHNOLOGY, INC.'S**
**REPLY BRIEF ON THEIR MOTION TO DISMISS AMENDED COMPLAINTS**

I.      **INTRODUCTION**

Realtime's response does nothing to refute the legally relevant points made in Defendants' Motion—*i.e.*, that each claim of the asserted patents is directed to the same intangible idea, that a human could perform that idea with pencil and paper for the simple examples given in the patents, and that no claim restricts use of this idea to any particular computer or other machine.[1]

Instead of refuting these points, Realtime makes a series of arguments that it couches as fact or claim construction disputes but that in reality are just legally irrelevant assertions.  It argues that the claims are broad enough to encompass complex examples beyond the capacity of a human.  But that is true of many claims that have been declared patent-ineligible and is irrelevant under the law.  It argues that the claims are limited to "digital data" or "digital computer data."  Even if that were true—and it is not—that constitutes, by Realtime's own admission, merely an "environment" or "field of use," which cannot save a claim directed to an abstract idea.  It argues the claims do not preempt all methods in this environment.  But that is true of all patent-ineligible claims and is irrelevant under the law.  And Realtime argues that these patents have many claims of varying breadth.  But that, too, rests on a faulty legal premise. Realtime ignores that there is a "bright-line prohibition" against patenting of an abstract idea no matter how narrow the idea may be.

---

[1] This Reply is filed on behalf of Defendants SAP America Inc., Sybase, Inc., Hewlett-Packard Company, HP Enterprise Services, LLC, Dell Inc., Echostar Corporation, Hughes Network Systems, LLC, Dropbox, Inc., and Riverbed technology, Inc. (hereafter referred to as "Defendants") and in support of their Motion To Dismiss The First Amended Complaint. (Dkt. 128).  Defendants Actian Corporation and Pervasive have stated that they will be filing a separate Reply in support of their separate motion they filed to dismiss the First Amended Complaint filed against them.  Dkt. No. 123.

None of Realtime's arguments is linked to a legally relevant point, and they therefore cannot save the claims from patent-ineligibility.  Rather, the asserted claims clearly trigger *Alice* step 1 and the claims add nothing "significantly more" under *Alice* step 2 to save these otherwise abstract claims from § 101.

## II.    THE PATENT CLAIMS TRIGGER *ALICE* STEP 1 BECAUSE THEY ARE DIRECTED TO AN ABSTRACT CONCEPT

All the patents' claims are directed to the same abstract concept:  using multiple known compression techniques and determining which to use next based on the nature of the data to be compressed.  SAP Motion I at 5-12.[2]  Realtime has no real answer to the point that its claims all embody this concept.  Realtime also does not dispute that this concept is present, and has long been present, in such widely varying activities as telegraph coding, text messaging, and transcription by court reporters, and that in each of these activities, the claimed, abstract idea is performed mentally without reliance on a particular piece of equipment.[3]

Realtime's response on step 1 of *Alice* is instead three-fold:  (1) the claims recite additional words beyond the abstract concept; (2) the claims cover very complex technology that requires computing; and (3) the claims match up with the claims in the only post-*Alice* case from the Federal Circuit that has found claims patent-eligible (out of over a dozen decisions), *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014).  Realtime's arguments each miss the law, the words of the claims, or both.

---

[2] Defendants filed a first motion to dismiss, Dkt. 23 (hereafter SAP Motion I), which was rendered moot by Realtime's amending its complaints to add another patent.  Thus, Defendants filed a second motion to dismiss incorporating the first and showing why the additional patent added no new issues.  Dkt. 128 (hereafter SAP Motion II).

[3] In the case of the court reporter, a stenograph is used.  The compression of spoken language into phonetic "code," however, is done in the mind of the reporter before he or she then types keystrokes on the stenograph.  Likewise, while a teenager texting may use a smartphone, the relevant compression is occurring in the mind of the teenager—not inside the phone.

First, Realtime is not saved by characterizing its claims as involving "digital-data compression utilizing content-dependent and content-independent encoders to compress data blocks based on an analysis of the content or type of the data being encoded" or "utilizing a plurality of different encoders for accelerated storage and retrieval." Opp. at 16. That is nothing more than the concept identified by Defendants in their motion, dressed up with some generic computer terminology. Indeed, in almost every case in which claims have been invalidated under § 101, the claims had many more words than the abstract concept.[4]

Likewise, Realtime's identification of some claims directed to slightly narrower examples of the concept—such as the 812 patent's reciting of two long-familiar compression techniques (run-length encoding and dictionary encoding) or the 908 and 530 patents' use of a "descriptor" that indicates which compression technique was used—cannot save those claims. Narrowing an abstract idea to familiar examples does not automatically make it any less abstract. *buySAFE v. Google, Inc.*, 765 F.3d 1350, 1351-52 (Fed. Cir. 2014) ("[The] dependent claims' narrowing to particular types of such relationships, themselves familiar, does not change the analysis. This kind of narrowing of such long-familiar commercial transactions does not make the idea non-abstract for section 101 purposes."). Realtime does not dispute Defendants' showing that the 812 patent's two recited compression techniques and the 530/908 patents'

---

[4] *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (finding that six steps in claims merely recited the abstract concept of offering media content in exchange for viewing an advertisement); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338-39 (Fed. Cir. 2013) (finding long, detailed system claim invalid because all elements were part of the abstract concept of "generating tasks [based on] rules ... to be completed upon the occurrence of an event").

concept of a descriptor were familiar examples in the compression field.[5] Thus, these additional

features cannot "make the idea non-abstract." *buySAFE*, 765 F.3d at 1351-52.[6]

    <u>Second</u>, Realtime is not helped by its claims potentially covering complex computer-

implemented compression techniques, because the claims *also* cover very simple techniques that

a person can perform mentally.  Indeed, those very simple examples in Defendants' motion are

the ones the patents themselves actually use.  SAP Motion I at 3-12.

    Realtime does not deny that the claims require compression of no more than two data

blocks, each of which the patents indicate can be a single character (such as "a").  SAP Motion I

at 3-12.  Defendants walk through the claims and explain in detail exactly how a human could

perform each and every element of Realtime's claimed compression of a few data blocks.  SAP

Motion at 8-11.  Realtime's opposition does not and cannot point to anything in those pages of

element-by-element analysis that is inaccurate.  Instead, Realtime glosses over the analyses,

calling them "far-fetched illustrations."  Opp. at 8.  But those illustrations are not at all far-

fetched—they come directly from the examples in Realtime's own patents.  SAP Motion I at 8-

11 (quoting from simple compression example provided by the 812 patent).

---

  [5] Realtime does not dispute that the two specific compression techniques recited in the 812 claims were well known before the patent.  Opp. at 30-33.  Also not disputed is that descriptors were long familiar in some compression fields, including telegraphy's use of a special code to identify a switch to a different compression codebook (*see* SAP Motion I at 16).  Opp. at 30-33.

  [6] Realtime's suggestion that multiple patents cannot all be held ineligible for claiming the same abstract idea (Opp. at 1, 16) ignores the numerous cases when the Supreme Court and Federal Circuit have done just that.  *See, e.g., Alice*, 134 S. Ct. at 2352, 2360 (finding claims in four patents ineligible because directed to same abstract idea); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1006-07 (Fed. Cir. 2014) (non-precedential) (finding claims in two patents directed to same abstract idea); *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. Appx. 950, 951 (Fed. Cir. 2014) (nonprecedential) (same); *Bancorp*, 687 F.3d at 1270-71, 1274-75 (same).

The Federal Circuit has made clear that the focus of a § 101 analysis must be on the *minimum* a claim requires, not some complex example at the high end of what the claims covers. *Planet Bingo*, 576 Fed. Appx. at 1008 ("Planet Bingo argues that 'in real world use, literally thousands, if not millions of preselected Bingo numbers are handled by the claimed computer program,' making it impossible for the invention to be carried out manually. But the claimed inventions do not require as much. At most, the claims require 'two sets of Bingo numbers,' 'a player,' and 'a manager.'") (citation omitted).[7]  Realtime declares that the process of the claims "obviously" cannot be performed by a human and that Defendants' argument that a human can implement the claims "does not pass the straight-face test."  Opp. at 8.  However, Realtime does not dispute that the claims require compression of no more than two data blocks, each of which can be a single character, nor does Realtime recognize that the "far-fetched illustrations" (Opp. at 8) in Defendants' Motion come directly from the examples in Realtime's own patents.  Because the claims encompass compression of as few as two or three characters—something Realtime does not refute—the claims are drawn to ineligible mental processes.

Further, a long-standing line of cases holds that patents drawn to a process that could be performed mentally or on paper are abstract and, thus, ineligible.  The Supreme Court has pronounced that "mental processes" are "not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1293 (2012) ("[p]henomena of nature ..., mental processes, and abstract intellectual concepts are not patentable") (quoting *Benson*, 409 U.S. at

---

[7] *See also Versata Dev. Group v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015) (rejecting argument that feature rendered the claim eligible because "these supposed benefits are not recited in the claims at issue"); *Blue Spike, LLC v. Google Inc.*, No. 14-cv-1650-YGR, 2015 WL 5260506, at *6 (N.D. Calif. Sept. 8, 2015) ("The mere fact that the claims may cover a computer implementation that surpasses in scope or complexity what a human mind is capable of accomplishing is irrelevant where the claims are not limited to such complex activities, but also encompass more basic approaches.").

67). This is true even if some claims contain conventional computer terminology. *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) ("the budgeting calculations at issue here are unpatentable because they 'could still be made using a pencil and paper' with a simple notification device, even in real time as expenditures were being made.").[8]

Third, Realtime is simply wrong that its claims are like those in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014), the single post-*Alice* Federal Circuit decision to find patent-eligible subject matter. The *DDR* patents involved creating a "composite web page" that combined the visual elements of a host website with the content of a third-party. *Id*. at 1248. The *DDR* patents claimed a solution to a problem that arose solely because of the unique workings of the Internet, namely how to "retain[] website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink." *Id*. at 1257. The Court explained that *DDR* case "stands apart" from the legion of other post-*Alice* cases because the "claimed solution is *necessarily rooted in computer technology* in order to overcome a problem *specifically arising in the realm of computer networks*." *Id*. (emphasis added). In other words, the problem existed only in a field of computer technology, and the solution was also one found only in that field.

---

[8] *See also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375-76 (Fed. Cir. 2011) (applying *Benson* to find ineligible claims directed to "a computer readable medium containing program instructions for detecting fraud in a credit card transaction" because the claims encompassed a process "that can be done mentally"); *SmartGene*, 555 Fed. Appx. at 954 ("section 101 [does] not embrace a process defined simply as using a computer to perform a series of mental steps that people, aware of each step, can and regularly do perform in their heads") (citations omitted). Realtime cites a few district court cases allegedly viewing the mental process exclusion under § 101 as "unhelpful." Opp. at 19. The Supreme Court and Federal Circuit, however, have clearly held that mental processes are ineligible. That is the law.

Far different from *DDR*, the claims of the Realtime patents do not claim solutions rooted in computer technology, nor do they overcome a problem specifically arising in computer technology.  As Realtime itself admits, the claims can be practiced outside a computer system. Dkt. 76, at 18 ("The asserted patents' claims address improved, particularized systems and methods of compressing digital data, with multiple encoders, which can be used within a computer system *or other systems* using digital data.") (emphasis added).  Indeed, as Defendants explained in the Motion, compression of information is a ubiquitous concept that pre-dates computers and continues to exist as a human-directed, manual process.  As common knowledge indicates (illustrated by the examples of telegraph codebooks, texting, and court reporters discussed in Defendants' motion), the concept of abbreviating information to make it cheaper or faster to transmit or store is *not* a computer-only solution to a computer-only problem.  SAP Motion I at 15-17.  Court reporters have long needed to abbreviate in order to record a transcript more quickly than if transcribed without abbreviation (and the arrival of computer stenography did not change that), just as telegraph customers long ago needed to abbreviate to save time and money in transmission.  And with today's texting, even though a computer can be used to transmit the compressed information, the actual compression is done mentally before entering "LOL" into the phone or computer.  Likewise, the asserted patents' concept of using multiple different techniques, depending on the nature of the data to be compressed, certainly has use in computers today, but it also is a solution that has been and is still used in other fields such as telegraphy, court reporting, and texting.  SAP Motion I at 15-17.

The patent claims confirm the inapplicability of *DDR*.  For example, nearly every method claim fails to recite a single computer term—not even a generic or conventional one.  In contrast, in *DDR*, *all* of the claims contained an array of claim terms that established the computer-rooted

problem and solution, such as requirements that the system contain "data for web pages,"

provide "web pages [that] displays [sic] at least one active link associated with a commerce

object associated with a buying opportunity of a selected one of a plurality of merchants," and

"receive from the web browser of a computer user a signal indicating activation of one of the

links displayed by one of the first web pages," just to name a few.  *DDR*, 773 F.3d at 1249-50.

Likewise, only a single Realtime patent claim recites "digital data" (530 patent claim 23),

showing that "digital data" can hardly be called a focus of the claims as Realtime wrongly

contends.[9]  In sum, even if Realtime's expansive interpretation of the *DDR Holdings* opinion

were accepted, nothing in the Realtime patents' claims indicate that they are necessarily

solutions rooted in computer technology in order to overcome a problem specifically arising in

the realm of computer technology, and, thus, they cannot fall within Realtime's view of *DDR*.

## III.   THE CLAIMS FAIL ALICE STEP 2 BECAUSE THEY ADD NOTHING SIGNIFICANT TO THE ABSTRACT CONCEPT

### A.   The inclusion of conventional computer terms in some claims does not save the claims under § 101.

The Supreme Court made clear in *Alice* that claims reciting merely generic or

conventional computer elements (as some of Realtime's claims do, at most) are insufficient to

---

[9] Realtime tries to play up an alleged factual dispute among various defendants on whether the patents' abstract idea includes data generally or digital data.  Of course, whether a patent is directed to patent-eligible subject matter (and, thus, whether the claims address an abstract idea) is an issue of law not one of fact.  *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013).  However, even if all the claims did recite "digital data" (in fact, only one claim does), the claims are still not solutions "necessarily rooted in computer technology."  Realtime argues that "digital data" is different from other data (such as text messages) because it is not human-readable and not easily recognizable by a human.  Opp. at 10-11, 19-20.  Not so.  "Digital" data merely means data such as letters and numbers that can be expressed discretely, as opposed to a continuous, analog form.  Indeed, the patents explain that "discrete information such as text and numbers are easily represented in digital data," (992 1:29-30), and the examples in the patents use letters and numbers for compression, undercutting Realtime's suggestion that the patents are only about data that is unreadable by a human.

transform an abstract concept into a patentable invention.

Many of Realtime's claims recite no computer terminology at all.  For those method and system claims that do recite some computer terminology, the elements are nothing but pieces of a conventional computer, such as "memory device," "machine," "software module," and "circuit." Case after case since *Alice* (and some before, as well) have rejected the notion that such conventional computer components impart patent eligibility.  *See* SAP Motion at 24 & n. 16.

Those cases also dispose of Realtime's related argument that the recited computer elements are not generic because generic computers, on their own, cannot perform the steps in the claims, such as compressing data. Opp. at 32-33.  *Alice* and its progeny established that programming conventional computers to implement abstract concepts does not make the computerized abstract concepts patent-eligible.  Realtime's argument cannot be reconciled with Supreme Court and Federal Circuit cases in which claims required computers to be programmed to do specific things like mitigating settlement risk (*Alice*, 134 S. Ct. at 2352), guaranteeing a party's performance of its online transaction (*buySAFE*, 765 F.3d at 1351), and determining prices (*Versata*, 793 F.3d at 1333-35).

**B.      Even if the claimed abstract idea were novel (which it is not), the claims would be ineligible.**

Realtime also tries to pass *Alice* step 2 by arguing that the claimed subject matter is novel.  Opp. at 5-9, 30-32.  Even if that were true, however, novelty of an abstract idea cannot save a claim under § 101.

The claimed idea in *Flook* was noted to be novel, but, nonetheless, the claim was unpatentable under § 101.  *See* 437 U.S. at 587.  Likewise, in *Ultramercial*, the Federal Circuit rejected the argument "that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete."  *Ultramercial, Inc. v.*

*Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).  Thus, it makes no difference for § 101 whether or not the Realtime claims include additional details that would make the claims novel or non-obvious.[10]

      **C.**      **Realtime misdescribes the role of preemption in § 101 analysis.**

Realtime misdescribes the role of preemption under § 101.  According to Realtime, its claims must be eligible if they do not preempt all implementations of digital data compression. Opp. at 21.  The preemption concern of § 101, however, is far broader than presented by Realtime, and it has been applied to hold claims to be patent-ineligible even when those claims are limited to a particular field of use, technological environment, or narrow abstract idea:  "An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet."  *Intellectual Ventures*, 792 F.3d at 366; *see also Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility."); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("that the claims do not preempt all price optimization or may be limited to price optimization in the e-commerce setting do not make them any less abstract").  In short, the preemption argument fails to save Realtime's abstract claims.

**IV.**      **CONCLUSION**

For the reasons stated above and in Defendants' motion, the Court should dismiss Realtime's actions for failure to state a claim due to patent ineligibility of the claims under § 101.

---

[10] While immaterial to patent eligibility, Defendants note that the claims are not in fact novel.

Dated:  Oct. 30, 2015                       Respectfully submitted,


By:      */s/ J. Christopher Carraway*
         Thomas M. Melsheimer (Lead Attorney)
         Texas Bar No. 13922550
         Email:  melsheimer@fr.com
         FISH & RICHARDSON P.C.
         1717 Main Street, Suite 5000
         Dallas, TX 75201
         Telephone:  214-747-5070
         Facsimile:  214-747-2091

         J. Christopher Carraway (OR Bar No. 961723)
         Email:  chris.carraway@klarquist.com
         John D. Vandenberg (OR Bar No. 893755)
         Email:  john.vandenberg@klarquist.com
         KLARQUIST SPARKMAN, LLP
         121 SW Salmon Street, Suite 1600
         Portland, OR  97204
         Telephone:  503-595-5300
         Facsimile:  503-595-5301

         Counsel for Defendants
         SAP AMERICA INC. and SYBASE, INC.


By:      /s/ Olivia M. Kim *(with permission)*
         Edward G. Poplawski
         CA STATE BAR NO. 113590
         epoplawski@wsgr.com
         Olivia M. Kim
         CA STATE BAR NO. 228382
         okim@wsgr.com
         WILSON SONSINI GOODRICH & ROSATI
         Professional Corporation
         633 West Fifth Street, Suite 1550
         Los Angeles, CA 90071
         Telephone:  (323) 210-2900
         Facsimile:   (866) 974-7329

         Counsel for Defendants
         HEWLETT-PACKARD COMPANY and HP
         ENTERPRISE SERVICES, LLC

By:    */s/ Deron R. Dacus (with permission)*
Deron R. Dacus
Texas Bar No. 00790553
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
(903) 705-7232
ddacus@DacusFirm.com

Thomas M. Dunham
D.C. Bar No. 448407
J. Michael Woods
D.C. Bar No. 975433
Corrine Saylor Davis (pro hac vice)
D.C. Bar No. 997638

Winston & Strawn LLP
1700 K Street, N.W.
Washington, DC 20006
Telephone:  (202) 282-5000
Fax:  (202) 282-5100
TDunham@winston.com
MWoods@winston.com
CSaylor@winston.com

Attorneys for Defendant,
DELL INC.


By:    */s/ Timothy W. Riffe (with permission)*

Timothy W. Riffe (DC Bar No. 482810)
Email:  riffe@fr.com
FISH & RICHARDSON P.C.
1425 K Street N.W., 11th floor
Washington, DC 20005-3500
Telephone:  202-783-5070
Fax:  202-783-2331

Counsel for Defendants
ECHOSTAR CORPORATION and HUGHES
NETWORK SYSTEMS, LLC

By:      */s/ Ryan Kent (with permission)*
        Ryan Kent
        CA Bar No. 220441
        DURIE TANGRI LLP
        217 Leidesdorff Street
        San Francisco, CA 94111
        T 415-362-6666; F 415-236-6300
        rkent@durietangri.com

        Counsel for Defendant
        DROPBOX, INC.


By:      */s/ John R. Emerson (with permission)*
        John R. Emerson
        Texas State Bar No. 24002053
        russ.emerson@haynesboone.com
        Matthew P. Chiarizio
        Texas State Bar No. 24087294
        matthew.chiarizio@haynesboone.com
        HAYNES AND BOONE, LLP
        2323 Victory Avenue, Suite 700
        Dallas, Texas 75219
        Tel.: 214.651.5000
        Fax: 214.651.5940

        Attorneys for Defendant
        RIVERBED TECHNOLOGY, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 30, 2015, a true and correct copy of the

above and foregoing document has been served on all counsel of record who are deemed to have

consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ J. Christopher Carraway*