**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO, | |
| Plaintiff, | Case No. 6:15-cv-00463-RWS-JDL |
| v. | |
| ACTIAN CORPORATION and PERVASIVE SOFTWARE, INC., | |
| Defendants. | |

**PLAINTIFF REALTIME DATA LLC'S OPPOSITION TO**
**DEFENDANT ACTIAN CORPORATION'S MOTION TO TRANSFER VENUE**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

        A.      Realtime's Connections to this District Date Back to 1999 ....................2

        B.      The Court Has Familiarity with the Patents-in-Suit ...............................3

III.    ACTIAN IS PROPERLY JOINED, AND ITS ATTEMPT TO CUT ITS
        INEXTRICABLE TIES WITH TEXAS-BASED PERVASIVE FAILS .........................4

IV.     REGARDLESS, ACTIAN CANNOT SATISFY ITS BURDEN TO TRANSFER
        THIS ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA .........................6

        A.      The Private Interest Factors Weigh Against Transfer.............................7

                1.      The Sources of Proof are Not "Much More Accessible" from N.D.
                        Cal. ...............................................................................................7

                2.      N.D. Cal. Does Not Possess "More Relevant Subpoena Power" ...............9

                3.      Notwithstanding Actian's Cherry-picking, N.D. Cal. is Not Clearly
                        More Convenient for Most of the Potential Witnesses............................11

                4.      The "Practical Problems" Here Strongly Weigh Against Transfer ..........13

        B.      The Public Interest Factors Also Weigh Against Transfer ...................15

                1.      N.D. Cal. Has No Greater Interest ............................................15

                2.      The Other Public Interests Factors are Neutral........................15

V.      CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Adaptix, Inc. v. Verizon Wireless*
  No. 6:15-cv-00045-RWS-JDL (E.D. Tex. Aug. 12, 2015) ......................................................... 9

*Adrain v. Genetec Inc.*
  2009 U.S. Dist. LEXIS 86855 (E.D. Tex. Sept. 22, 2009) ..................................................... 14

*Content Guard Holdings, Inc. v. Amazon.com, Inc.*
  2015 WL 1263346 (E.D. Tex. Mar. 19, 2015) ........................................................................... 4

*Eolas Techs., Inc. v. Adobe Sys., Inc.*
  2010 WL 3835762 (E.D. Tex. Sept. 28, 2010) ........................................................................... 6

*Eolas Techs., Inc. v. Adobe Sys., Inc.*
  2010 U.S. Dist. LEXIS 104125 (E.D. Tex. Sept. 28, 2010) ................................................... 13

*Geotag, Inc. v. Aromatique, Inc.*
  2013 U.S. Dist. LEXIS 173481 (E.D. Tex. Jan. 14, 2013) ..................................................... 13

*Geotag, Inc. v. OnTargetJobs, Inc.*
  No. 2:13-cv-0064-JRG (E.D. Tex. Mar. 7, 2014) ................................................................. 7, 15

*GeoTag, Inc. v. Starbucks Corp.*
  2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ........................................................................... 14

*In re EMC Corp.*
  501 F. App'x 973 (Fed. Cir. 2013) ............................................................................................. 8

*In re EMC Corp.*
  677 F.3d 1351 (Fed. Cir. 2012) ................................................................................................... 4

*In re Genentech, Inc.*
  566 F.3d 1338 (Fed. Cir. 2009) ........................................................................................... 7, 11

*In re Google Inc.*
  412 Fed. Appx. 295 (Fed. Cir. 2011) ....................................................................................... 13

*In re Hoffmann-La Roche Inc.*
  587 F.3d 1333 (Fed. Cir. 2009) ............................................................................................... 15

*In re Morgan Stanley*
  417 F. App'x 947 (Fed. Cir. 2011) ........................................................................................... 14

*In re TS Tech United States Corp.*
  551 F.3d 1315 (Fed. Cir. 2008) ......................................................................................... 12, 15

*In re Verizon Bus. Network Servs. Inc.*
     635 F.3d 559 (Fed. Cir. 2011) ............................................................... 14

*In re Vistaprint Ltd.*
     628 F.3d 1342 (Fed. Cir. 2010) ......................................................... 2, 13

*In re Volkswagen AG*
     371 F.3d 201 (5th Cir. 2004) ............................................................ 6, 9

*In re Volkswagen of Am., Inc.*
     545 F.3d 304 (5th Cir. 2008) ................................................................ 6

*In re Zimmer Holdings, Inc.*
     609 F.3d 1378 (Fed. Cir. 2010) ........................................................... 14

*Ingeniador, LLC v. Adobe Sys., Inc.*
     2014 U.S. Dist. LEXIS 3308 (E.D. Tex. Jan. 10, 2014) .................... 7, 15

*Mondis Tech. Ltd. v. Top Victory Elecs. (Taiwan) Co.*
     2009 U.S. Dist. LEXIS 103394 (E.D. Tex. Oct. 23, 2009) .................... 14

*Nexus Display Techs., v. Lenovo, Inc.*
     No. 2:14-cv-763 (E.D. Tex. Aug. 25, 2015) ................................... 10, 13

*Omega Patents, LLC v. Skypatrol, LLC*
     2012 WL 2339320 (S.D. Fla. June 19, 2012) .................................... 5, 6

*Plant Equip. Inc. v. Intrado Inc.*
     2010 U.S. Dist. LEXIS 59517 (E.D. Tex. June 15, 2010) ....................... 7

*Rockstar Consortium US LP v. Google Inc.*
     2014 WL 4748692 (E.D. Tex. Sept. 23, 2014) ...................................... 9

*Tex. Data Co., L.L.C. v. Target Brands, Inc.*
     771 F. Supp. 2d 630 (E.D. Tex. 2011) .................................................. 6

*United Mine Workers of Am. v. Gibbs*
     383 U.S. 715 (1966) ............................................................................. 4

*Vertical Computer Sys., Inc. v. LG Electronics MobileComm U.S.A., Inc.*
     2013 WL 2241947 (E.D. Tex. May 21, 2013) ........................................ 8

*Virtualagility, Inc. v. Salesforce.com, Inc.*
     2014 U.S. Dist. LEXIS 12015 (E.D. Tex. Jan. 31, 2014) ...................... 11

*Volkswagen II*
     545 F.3d at 315 ................................................................................... 6

**Statutes**

35 U.S.C. § 101 ................................................................................................................ 14

## I.      INTRODUCTION

Defendant Actian Corporation ("Actian") requests that the Court sever Realtime Data LLC's ("Realtime") claims against it with respect to the accused Matrix product, and transfer those claims to the Northern District of California ("N.D. Cal."). As an initial matter, Actian has not satisfied the threshold issue of showing that Realtime's claims against Actian should be severed from Realtime's overlapping claims against its Texas-based subsidiary, Pervasive Software, Inc. ("Pervasive"). Actian merely relegates this argument to the final two pages of its motion, and for good reason. The record shows, beyond dispute, that: (1) Realtime's claims against Actian and Pervasive arise out of the "same transaction, occurrence, or series of transactions or occurrences," namely, their infringing activities relating to the PSQL product; and (2) there is a "question of law or fact common to all defendants." And if severance is improper—and it is here—then the issue of transfer is moot, as there are no claims to transfer.

Actian also cannot satisfy its significant burden to show that the N.D. Cal. is "clearly more convenient" than this District. Each of the relevant private and public interest factors either weigh against transfer, or are neutral at best. For instance, Actian has failed to demonstrate that it would be inconvenienced by having to produce documents in this District. Nor has Actian identified any third party witnesses with relevant, material knowledge whose testimony would be necessary for trial. Actian improperly inflated the number of California witnesses by identifying multiple of its employees and former employees with duplicative knowledge, while at the same time ignoring at least one key witness, its Chief Technology Officer, who works in Texas. In any event, any inconvenience to Actian's witnesses is more than offset by the significant inconvenience to Realtime's witnesses that would occur if this case is transferred to N.D. Cal., a fact that Actian wholly ignores.

The final private interest factor, which focuses on judicial economy and is a "paramount consideration" in the transfer analysis, strongly disfavors transfer. This Court's familiarity with the two of the patents-in-suit from prior litigation (the '992 and '530 patents), coupled with the fact that there are seven other co-pending consolidated cases before the Court involving the same

patents, "provides a substantial justification for maintaining suit in the Eastern District of Texas." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). Notably, eleven of the consolidated defendants have not sought transfer and will thus remain in this District. Transferring this case to a court unfamiliar with the patents-in-suit would consume unnecessary judicial (and party) resources and create a significant risk of inconsistent rulings.

As to the public interest factors, Actian has not and cannot demonstrate that N.D. Cal. has any more of an interest in adjudicating this case than this District given that the accused products are marketed and sold to customers nationwide. Additionally, Actian's efforts to mischaracterize Realtime's presence in this District as an artifact of litigation are unsubstantiated. Realtime has maintained an office in Tyler for over six years, where it conducts business related to the development of its patent portfolio, and where it stores relevant documents and physical prototypes. Actian admits that the remaining public interest factors are neutral.

Because Actian has failed to demonstrate that a single factor favors transfer, let alone that N.D. Cal. is clearly more convenient, Actian's motion should be denied.

## II.    BACKGROUND

Actian and each of the other defendants in the eight consolidated cases are accused of infringing the U.S. Patent Nos. 7,378,992, 7,415,530, 8,643,513, and 9,116,908. Actian and four other defendants are also accused of infringing U.S. Patent No. 6,597,812. Dkt. No. 100. Realtime has been developing this patented technology for the past seventeen years, and its ties to Texas exist from the earliest stages of that development.

### A.    Realtime's Connections to this District Date Back to 1999

While Realtime is a New York company, Realtime and its intellectual property portfolio have a rather long history and presence in this District. In 1999, Realtime conducted a series of meetings in Dallas, Stafford, and Houston with its top potential technology development partners, Texas Instruments and Compaq. Tashjian Depo. Tr. (Ex. 5[1]) at 67:9-69:13 & Exs. 7-8.

---

[1] The exhibits cited herein ("Ex. __") refer to exhibits attached to the declaration of Reza Mirzaie ("Mirzaie Decl.").

Later, in October 2009, Realtime opened an office in Tyler for the purpose of promoting its licensing efforts relating to its digital-data compression patent portfolio. Declaration of Stephen McErlain ("McErlain Decl.") at ¶ 4. Realtime opened this office in part to further its licensing efforts and to stage many of its physical prototypes and documents for its trial in the *Packeteer* action (Case No. 6:08-cv-00144). *Id.* At the time, this Court had construed the terms of the asserted patents in the *Packeteer* action, which involved the '992 Patent and several patents related to the asserted patents. *See* Case No. 6:08-cv-00144, Dkt. No. 371.

Since October 2009, Realtime has maintained its presence in this District. Shortly after opening the office, substantially all of Realtime's documents were either physically located at Realtime's Tyler office or exist electronically and will be collected from Realtime's Tyler office. McErlain Decl. at ¶ 5. These include Realtime's patent file histories, licenses, and other documents relating to the patents-in-suit. *Id.* Realtime's Tyler office also includes physical devices and prototypes developed by Realtime, which are available for inspection at the Tyler office. *Id.* The devices include original X3 PCI accelerator cards, X3 Network Attached Storage Servers, X3 Web Servers, X3 Compaqtor, X3 Snap Servers, Realtime WAN Accelerators, Realtime T1 point-to-point bandwidth multipliers, and Realtime Market Data Accelerators, including data feed simulators, monitors and compression engines. *Id.* The Tyler office also houses original source code and demonstration software. *Id.* Moreover, over the past six years, Realtime has conducted meetings and communications with and between various members of its Board of Directors in its Tyler office. *Id.* at ¶ 6. This year, Realtime opened yet another office in this District, this time in Plano. *Id.* at ¶ 7. Realtime plans to expand its patent licensing and development activities through the Plano office and recently hired an electrical engineer in furtherance of these plans. *Id.*

### B.     The Court Is Familar with the Patents-in-Suit

Realtime's increased presence in this District has coincided with this Court's increase in familiarity with the patents-in-suit. In addition to ruling on claim construction and summary judgment motions in the *Packeteer* action, this Court and the parties involved in that case filed

3

over 850 other orders, motions, and other pleadings. For example, since the *Packeteer* action, Realtime also brought the *MetroPCS* action (Case No. 6:10-cv-00493-LED-JDL), which also involved patents that are asserted here, including the '530 patent, as well as numerous other patents that are related to the '992, '513, and '908 Patents. And like *Packeteer*, *MetroPCS* involved numerous claim construction hearings and rulings involving many terms used in the patents-in-suit. Case No. 6:10-cv-00493-LED-JDL, Dkt. Nos. 287, 328, 438. In total, this Court and the parties involved in that case filed over 680 orders, motions, and other pleadings.

## III. ACTIAN IS PROPERLY JOINED, AND ITS ATTEMPT TO CUT ITS INEXTRICABLE TIES WITH TEXAS-BASED PERVASIVE FAILS

Under Rule 20, joinder is proper where: (1) the claims against the defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012). "Under the Rules, the impulse is toward entertaining ***the broadest possible scope of action*** consistent with fairness to the parties; ***joinder of claims, parties and remedies is strongly encouraged***." *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112-JRG, 2015 WL 1263346, at *1 (E.D. Tex. Mar. 19, 2015) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966)) (emphasis added).

Actian's argument that the "joinder of the claims against Actian based on Matrix and against Pervasive based on PSQL is not proper" incorrectly focuses on the alleged distinctions between the accused products, Matrix and PSQL (both of which are big-data compression products), and completely ignores Actian's relationship with its Texas-based subsidiary, Pervasive. *See* Mot. at 13. According to Actian, Matrix and PSQL are "distinct and different products," and therefore Realtime's claims against Matrix and PSQL do not arise out of the same or occurrence. *Id.* at 13-14. These assertions, however, are all red herrings. The proper inquiry is whether the claims against the *defendants* arise out of the same transaction or occurrence. *EMC Corp.*, 677 F.3d at 135. That is certainly the case here, as Realtime's infringement claims against Actian and Pervasive involve a common product: PQSL.

4

As correctly alleged in the complaint, "**both Actian and Pervasive** market the **PSQL** product,**"** and both Actian and Pervasive have used, offered for sale, sold and/or imported into the United States the accused PSQL product. *See* Dkt. No. 100 at ¶¶ 4, 11, 17-21, 31-36, 45-49, 66-71.[2] Actian does not dispute these facts, nor can it, as its own website confirms that it not only markets PSQL but also provides infringing support services for PSQL. Ex. 6-10. Therefore, Actian cannot legitimately dispute that the infringement claims against Actian and Pervasive, which involve the same product, arise out of the same series of transactions or occurrences. *See Omega Patents, LLC v. Skypatrol, LLC*, No. 1:11-cv-24201-KMM, 2012 WL 2339320, at *2 & n.3 (S.D. Fla. June 19, 2012) (holding infringement claims satisfy the joinder requirements where defendants' alleged infringement stemmed from their manufacture and distribution of the *same product*, which unlike the services offered by the defendants in *EMC,* "did not result by chance or coincidence but rather through an established relationship between Defendants").

Actian likewise cannot argue that the claims do not have common questions or fact or law. This is obvious, as each Defendant is charged with infringing the same set of patents based on the same activities (i.e., make, use, sale, and offer for sale) relating to the PSQL product. Dkt. No. 100 at ¶¶ 4, 11, 17-21, 31-36, 45-49, 66-71. Therefore, questions of claim construction, infringement, validity, and other defenses overlap between Actian and its Texas-based subsidiary. *See Omega Patents*, 2012 WL 2339320, at *2. But the ties—and common facts—do not end there. Actian's website suggests that the two affiliates also share office space in Austin. Exs. 11, 16. And Actian's CTO, Mike Hoskins, has direct knowledge of the technical underpinnings and business strategies of each Defendant with respect to PSQL. Exs. 7-10.

Faced with these insurmountable factual hurdles, Actian alternatively argues that "considerations of fairness or convenience justify … severance of the claims against Matrix from those against PSQL." Mot. at 14. This argument is unsupported and, to be sure, nonsensical. If

---

[2] The fact that the parties were previously involved in negotiations to dismiss claims against Pervasive is irrelevant to the severance analysis. In any event, the parties did not agree to any stipulation of dismissal.

the Court were to grant Actian's request, there would be two pending cases involving the **same patents and same defendants**: one against Actian involving Matrix, and one against both Actian and Pervasive involving PSQL. Clearly both cases would involve substantial overlap in issues of fact and law. Therefore, severance would run directly contrary to the interests of judicial economy. *Omega Patents*, 2012 WL 2339320, at *2 ("Severing Plaintiff's infringement claims would not promote judicial economy or reduce expenses but instead would create two separate but similar infringement actions with the potential for inconsistent outcomes."); *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 WL 3835762, at *2 (E.D. Tex. Sept. 28, 2010) ("For multiple courts to simultaneously address these identical issues would be a waste of the courts' and parties' resources and could potentially lead to inconsistent results.").

## IV.   REGARDLESS, ACTIAN CANNOT SATISFY ITS BURDEN TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF CALIFORNIA

Even if Realtime's claims against Actian were severed, Actian still cannot demonstrate that the severed case against it should be transferred to N.D. Cal. To prevail on a motion brought under 1404(a), Actian bears "a significant burden … to show good cause" to support its motion to transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) ("*Volkswagen II*"); *see also Tex. Data Co., L.L.C. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 638-39 (E.D. Tex. 2011) ("the Court … recognizes the significance of the burden and does not take it lightly"). To satisfy this significant burden, Actian must demonstrate that N.D. Cal. is a "clearly" more convenient forum than this District. *Volkswagen II*, 545 F.3d at 315.

When deciding whether another forum is clearly more convenient, courts balance the private interests of the parties and the public interests in the fair and efficient administration of justice.[3] *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Though no single factor is dispositive, the creation of parallel lawsuits in different jurisdictions is a "paramount consideration" weighing against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d

---

[3] The threshold inquiry when analyzing a case's eligibility for transfer is whether the suit could have been brought in the proposed transferee district. *Volkswagen II*, 545 F.3d at 312. Realtime does not dispute that this case could have been brought in N.D. Cal.

1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*").

As explained below, Actian cannot satisfy its burden here.

### A.     The Private Interest Factors Weigh Against Transfer

Each of the private interest factors either weigh against transfer, or are neutral at best. Actian has failed to demonstrate that it would be inconvenienced by having to produce documents in this District, and, on balance, this District would be equally if not more convenient for the identified party and third party witnesses. Additionally, judicial economy interests heavily weigh against transfer in light of this Court's familiarity with the patents-in-suit and the seven other active consolidated cases involving the same patents.

### 1.     The Sources of Proof are Not "Much More Accessible" from N.D. Cal.

The fact that Actian's relevant documents and evidence are located in N.D. Cal. does not by itself warrant transfer. Actian must show that absent transfer, production would impose a "significant and unnecessary burden." *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009); *see also Plant Equip. Inc. v. Intrado Inc.*, Case No. 2:09-cv-395-TJW, 2010 U.S. Dist. LEXIS 59517, at *8 (E.D. Tex. June 15, 2010) (failure to show that transporting evidence would pose a "significant additional inconvenience" weighs against transfer). Actian has failed to do so.

For example, Actian does not contend that its documents are incapable of being produced electronically, presumably because they can be produced electronically, which would minimize if not completely eliminate any purported inconvenience to Actian. *See J2 Global Communs. Inc. v. Protus IP Solutions, Inc.*, No. 6:08-cv-00262-LED-JDL, 2009 U.S. Dist. LEXIS 13210, at *8 (E.D. Tex. Feb. 19, 2009) ("identifying the location of electronic sources of proof will typically not tip this factor in favor of transfer"). Because "the bulk of evidence in patent suits is today produced by electronic means and is easily produced to remote locations, the Court [should] not overweigh the significance of this factor." *Geotag, Inc. v. OnTargetJobs, Inc.*, No. 2:13-cv-0064-JRG, slip op. at 3 (E.D. Tex. Mar. 7, 2014) (attached as Ex. 1); *see also Ingeniador, LLC v. Adobe Sys., Inc.*, No. 2:12-cv-00805-JRG, 2014 U.S. Dist. LEXIS 3308, at *5 (E.D. Tex. Jan. 10, 2014) ("in the modern era the inconvenience of making documents available some distance from

7

their source is minimal"). Moreover, any minimal inconvenience to Actian from having to produce its documents in this District is offset by the fact that Realtime's documents and physical evidence are located in this District. Specifically, Realtime's Tyler office houses the patent file histories, licenses, and other documents relating to the patents-in-suit, as well as physical prototypes developed by Realtime, original source code, and demonstration software. McErlain Decl. at ¶ 5.

In an attempt to downplay these facts, Actian asserts that Realtime's contacts to this District are "recent, ephemeral, and an artifact of litigation." Mot. at 2. This is unsupported and, in fact, contradicted by the record. Realtime opened its Tyler office in **October 2009** – six years ago, and well *after* first initiating litigation in Texas – in order to, *inter alia*, further promote its licensing efforts. McErlain Decl. at ¶ 4. Realtime has conducted business in and housed its relevant documents and physical products in Tyler ever since. *Id.* at ¶¶ 5-6. And to be sure, Realtime's 2009 Tyler-office opening was not Realtime's first development and licensing activity in Texas. As Realtime's representative Mr. Tashjian testified, Realtime's Texas ties date **back to 1999**, when it conducted a series of meetings in Dallas, Stafford, and Houston with its top potential technology development partners, Texas Instruments and Compaq. Tashjian Depo. Tr. (Ex. 5) at 67:9-69:13 & Exs. 7-8.

Actian's reliance on the fact that prior to the opening of its Tyler office, some of Realtime's documents and evidence were located in New York, is misplaced. "Motions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013); *see also Vertical Computer Sys., Inc. v. LG Electronics MobileComm U.S.A., Inc.*, No. 2:10-cv-490-JRG, 2013 WL 2241947, at *3 (E.D. Tex. May 21, 2013) (finding that the fact that certain relevant evidence changed locations irrelevant; "[m]otions to transfer venue are not decided on a series of changing facts, but instead should be evaluated based on the situation which existed when suit was filed"). At the time this suit was filed, the bulk of Realtime's relevant evidence was, and still is, located in Tyler. McErlain Decl. at ¶ 5.

Because Actian has failed to show it would be inconvenienced by producing documents and evidence in this District, and in light of Realtime's own documents and evidence located in this District, this factor is neutral at best.

### 2.       N.D. Cal. Does Not Possess "More Relevant Subpoena Power"

The third-party witnesses identified by Actian should be given little if any weight under this factor. As an initial matter, Actian identified the same witnesses in its discussion of the "cost of attendance for *willing* witnesses factor." *See* Mot. at 7-8; *Volkswagen I*, 371 F.3d at 203. If Actian's third-party witnesses are in fact willing witnesses, then the issue of whether compulsory process is available to secure the testimony of these witnesses is moot. Actian should not be able to rely on the same witnesses for both factors.

Moreover, Actian has failed to show that the witnesses have relevant, material knowledge or that they would be necessary for trial. Three of Actian's identified third-party witnesses are prior art witnesses that were identified by Dropbox, Inc. ("Dropbox") in support of its motion to transfer filed in related Case No. 6:15-cv-465-RWS-JDL, Dkt. No. 17-2. *See* Mot. at 7 (citing declaration filed in Dropbox case). However, as discussed in Realtime's opposition to the Dropbox motion (Dkt. No. 24), is it apparent that these prior art witnesses were identified because they happen to live in or near N.D. Cal., and Actian (and Dropbox) conveniently fail to mention any other prior art system not developed in N.D. Cal. This kind of cherry-picking is insufficient to satisfy Actian's burden. *Rockstar Consortium US LP v. Google Inc.*, No. 2:13-CV-893-JRG-RSP, 2014 WL 4748692, at *5 (E.D. Tex. Sept. 23, 2014)  (defendant failed to meet its burden where defendant "selectively identified possible prior art witnesses in the Northern District of California and omitted possible witnesses in other states").

Furthermore, as this Court has previously noted, "inventors of prior art rarely, if ever, actually testify at trial." *Adaptix, Inc. v. Verizon Wireless*, No. 6:15-cv-00045-RWS-JDL, slip op. at 8 (E.D. Tex. Aug. 12, 2015) (attached as Ex. 2). Accordingly, this Court has rejected arguments just like Actian's argument here because, "without even indicating on a good faith basis that a party intends to call a prior art witness to trial, it allows litigants to cherry-pick third

parties who happen to have an invention in the relevant art and are located in the litigant's preferred district in order to sway the convenience analysis." *Id*. If this Court were to give weight to such immaterial witnesses, Realtime could just as easily point to Texas-based inventors of other patents asserted as "prior art" in previous litigation. *See, e.g.*, Ex. 4 (named inventors for U.S. Patent No. 7,190,284).

All of the remaining third party witnesses identified by Actian are former employees of Actian. However, it appears that **none** of these employees have relevant, material information that could not be obtained from Actian's current employees. For example, the declaration of Mark Milani identifies Sanjay Dixit, Actian's former Director of Engineering, as a third party witness who "has knowledge about the way that Matrix uses data compression." Dkt. No. 118-2 at ¶ 7. But Mr. Milani also identifies Actian's *current* Direct of Engineering, Bobby DeSantis, as a party witness who likewise "has knowledge regarding the compression technology used in Matrix." *Id.* at ¶ 6. The declaration of Steve Springsteel identifies two former employees who are knowledgeable about "the sales of the accused Matrix product," and two former employees who are knowledgeable about "the marketing and promotion of Matrix." Dkt. No. 118-3 at ¶ 9. At the same time, Mr. Springsteel identifies **seven** party witnesses who are also knowledgeable about these **same exact** topics. *See id.* at ¶¶ 4, 8. It is thus apparent that *none* of Actian's former employee witnesses are actually necessary for this case, let alone trial. Actian should not be permitted to inflate the number of its third-party witnesses by pointing to former employees with duplicative knowledge in order to have this case transferred.

Moreover, even assuming the testimony of Actian's third parties is necessary, Actian's argument would still be foreclosed by Fifth Circuit law. As this Court has held, both "the E.D. Tex. and the N.D. Cal. [] may instruct these witnesses to attend and subject them to being deposed [and the] Fifth Circuit observed that a videotape deposition would serve as an acceptable substitute for live testimony." *Nexus Display Techs., v. Lenovo, Inc.*, No. 2:14-cv-763, slip op. at 7 (E.D. Tex. Aug. 25, 2015) (attached as Ex. 3) (citations omitted). And because "[Actian] will know beforehand that their depositions will be used at trial, any inconvenience of

10

not having the witnesses appear live is even reduced further." *Virtualagility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 U.S. Dist. LEXIS 12015, at *17-19 (E.D. Tex. Jan. 31, 2014). Actian's brief fails to even recognize the possibility of presenting the testimony by videotaped deposition, let alone explain why it would be inconvenienced by doing so. The potential minor inconvenience of offering video testimony from its third party witnesses, assuming they are even necessary, does not support transfer. This factor is neutral.

### 3.     Notwithstanding Actian's Cherry-picking, N.D. Cal. is Not Clearly More Convenient for Most of the Potential Witnesses

As an initial matter, Actian's motion fails also to allege with any specificity what type of relevant knowledge is or may be held by its witnesses, or why they would be necessary for trial. Actian merely provided vague, generalized categories of information (*e.g.*, "knowledge regarding the compression technology used in Matrix," "knowledge regarding the sales of the accused Matrix product," "knowledge regarding the marketing and promotion of Matrix"). Dkt. No. 118-2 at ¶ 6; Dkt. No. 118-3 at ¶ 8. This is insufficient. *See Genentech*, 566 F.3d at 1343.

Second, taking Actian's generalized topics on their face, Actian's high number of potential party witnesses is inflated.[4]  Though Actian identified fourteen California employees, the vast majority of these witnesses clearly have overlapping, if not identical, knowledge. Mot at 9. For example, *six* of its party witnesses are identified as having knowledge about "sales of the accused Matrix product." Dkt. No. 118-3 at ¶¶ 4, 8. And another *seven* are identified as having knowledge about "the compression technology used in Matrix." Dkt. No. 118-2 at ¶¶ 3, 6. It is thus highly unlikely that all fourteen witnesses will be required to testify at trial (even assuming it was possible to present fourteen witnesses at trial). *See Geotag* (Ex. 1), slip op. at 4 (identification of witnesses "unlikely to be required at trial" does not support transfer). Presumably, Actian could not and would not parade so many witnesses at trial to present wholly

---

[4] Actian's motion erroneously indicates that Mr. Springsteel's declaration identifies ten relevant witnesses. Mot. at 5. Mr. Springsteel's declaration only identifies seven party witnesses, including himself. *See* Dkt. No. 118-3 at ¶ 8. Mr. Milani's declaration also identifies seven party witnesses, including himself, making a total of fourteen party witnesses.

duplicative live testimony. For the same reasons, it should not be able to rely on all these duplicative witnesses for the purposes of transferring this case.

Third, Actian conveniently fails to identify at least one key employee witness who lives in Texas, its Chief Technology Officer Mike Hoskins. *See* Ex. 13. Mr. Hoskins plays a key role in Actian's public marketing of the accused advanced compression features, and his testimony will thus be highly relevant to Realtime's damages claims. *See* Ex. 12-15. Indeed, Realtime only recently discovered this information and intends to amend its initial disclosures to add Mr. Hoskins as a potential trial witness for all infringing products. There can be no dispute that this District would be far more convenient for Mr. Hoskins than N.D. Cal.

Fourth, the weight of this factor is even further reduced in light of the fact that all of Realtime's witnesses would be significantly inconvenienced if required to travel to N.D. Cal. James Fallon, inventor of the patents-in-suit, is a resident of Armonk, New York. Fallon Decl. at ¶ 3. He possesses material knowledge regarding, *inter alia*, conception and reduction to practice of the inventions disclosed in the patents-in-suit, the design and development of the patents-in-suit, commercialization efforts relating to the patents-in-suit, ownership and assignment of the patents-in-suit, as well as the prosecution of the patents-in-suit. Jerry Padian and Steve McErlain also reside in New York, and have material knowledge regarding, among other things, Realtime's claims and defendants' defenses and counterclaims, ownership of the patents-in-suit, prior litigation concerning the patents-in-suit, licensing of and other attempts to commercialize the patents-in-suit, Realtime's patent licensing policies, and Realtime's financial information. Padian Decl. at ¶¶ 2-3; McErlain Decl. at ¶ 2. The distance from New York to N.D. Cal. is nearly twice the distance between New York and this District. Mirzaie Decl. at ¶ 5. And each witness would still need to travel to this District for the other consolidated cases **on top of** having to travel over 2,500 miles to N.D. Cal. in the event this case is transferred.

On balance, this factor is neutral at best, and Actian cannot meet its burden of showing that N.D. Cal. is clearly more convenient. *See In re TS Tech United States Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (under the Fifth Circuit's "100-mile" rule, "the factor of inconvenience to

witnesses increases in direct relationship to the additional distance to be traveled"). And as discussed further below, any additional costs or inconvenience associated with Actian's witnesses having to travel to this District will be more than offset by the judicial economy gains from having this case adjudicated by this Court. *Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-570, 2013 U.S. Dist. LEXIS 173481, at *34 (E.D. Tex. Jan. 14, 2013) ("Consideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'"). Thus, this factor weighs against transfer.

### 4.      The "Practical Problems" Here Strongly Weigh Against Transfer

"Practical problems include those that are rationally based on judicial economy." *Eolas Techs.*, 2010 WL 3835762, at *6. In particular, "the existence of multiple suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Id.* Indeed, it is a "paramount consideration when determining whether a transfer is in the interest of justice." *Volkswagen III*, 566 F.3d at 1351; *see also In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) ("having one trial court decide all the[] claims clearly furthers" the "orderly, effective administration of justice"). For example, in *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010), the Federal Circuit held that the district court's experience with the patent-in-suit from prior litigation, coupled with the fact that there were other co-pending cases before the court involving the same patent, provided a "substantial justification for maintaining suit in the Eastern District of Texas." *See also Nexus Display* (Ex. 3), slip op. at 9. The existence of a related action pending before the Court "strongly disfavors transfer." *Id.*

As in *Vistaprint*, this Court has substantial experience with at least two of the patents-in-suit from prior litigation. In the *Packeteer* and *MetroPCS* Actions, which involved the '992 and '530 patents, respectively, the Court held hearings and issued orders on several substantive issues and motions, including claim construction and summary judgment. Mirzaie Decl. at ¶¶ 2-3. The *Packeteer* cases settled just before trial after the parties submitted their proposed jury instructions and trial exhibit lists, and in fact *MetroPCS* was resolved just last year. Additionally,

the eight active related cases, all of which have been consolidated for pre-trial purposes, undeniably involve substantial overlap in issues of fact and law. Indeed, this Court specifically found that because the cases "involve a common question of law or fact, consolidation of the cases would promote efficient case management." Dkt. No. 16. And the Court has also gained at least some additional familiarity with parties' claims and defenses as several defendants in the consolidated cases, including Actian, filed motions to dismiss under 35 U.S.C. § 101, which are nearly fully briefed. *See* Dkt. Nos. 123, 128, 157, 165.

Far from promoting the interest of justice, transferring this case "will only consume unnecessary additional judicial resources" by requiring another court to address overlapping issues, and would create a risk of inconsistent rulings. *Mondis Tech. Ltd. v. Top Victory Elecs. (Taiwan) Co.*, No. 2:08-cv-478-TJW, 2009 U.S. Dist. LEXIS 103394, at *14 (E.D. Tex. Oct. 23, 2009); *see also Adrain v. Genetec Inc.*, No. 2:08-cv-423, 2009 U.S. Dist. LEXIS 86855, at *9-10 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal court system. In addition … multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication.").

The cases cited by Actian in an attempt to undermine the significance of this factor (Mot. at 10-11) merely stand for the proposition that, where the other transfer factors **clearly** favor of transfer, the existence of co-pending litigation, **by itself**, should not preclude transfer. *See, e.g.*, *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (noting the "stark contrast" between the convenience of the venues); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (the existence of a co-pending suit with a "limited relationship" to the case at bar did not warrant transfer "where the other convenience factors *clearly* favor [transfer]"); *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011) ("[t]he proper administration of justice *may* be to transfer to the *far more convenient* venue even when the trial court has some familiarity with a matter from prior litigation") (emphasis added); *GeoTag, Inc. v. Starbucks Corp.,* No. 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) (granting transfer

14

motion where Court had no material prior familiarity with the patent and there were no "common issues" between defendants). In contrast, here, **no factor** clearly favor of transfer, and, in addition to the co-pending litigation, this Court is already familiar with two of the patents-in-suit.

**B.  The Public Interest Factors Also Weigh Against Transfer**

      **1.**      **N.D. Cal. Has No Greater Interest**

Actian argues that N.D. Cal. has a "far greater interest" in this case because "Actian has been headquartered and doing business in the Bay Area since 2005." Mot. at 12. This Court has expressly rejected such arguments, "as they amount to arguments that the Court should transfer the case because jurors in the transferee district will be more sympathetic to a particular party." *Geotag* (Ex. 1), slip op. at 6; *see also Ingeniador*, 2014 U.S. Dist. LEXIS 3308, at *10-11. Actian's mere presence in N.D. Cal. does not support transfer.

This factor weighs in favor of transfer only "if there are significant connections between a particular venue and the events that gave rise to a suit." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). This is certainly not the case here, as the accused instrumentalities are marketed and sold to customers nationwide. Actian, of course, does not deny that the accused instrumentalities are marketed and sold to customers in Texas and in this District. Moreover, Realtime has maintained an office in Tyler for over six years, where it conducts business related to the licensing and commercialization of the patents-in-suit. McErlain Decl. at ¶ 4. Therefore, N.D. Cal. has "no more or less of a meaningful connection to this case than [this or any other District]." *TS Tech*, 551 F.3d at 1321.

      **2.**      **The Other Public Interests Factors are Neutral**

Realtime does not dispute that the remaining public factors (time to trial, familiarity with the governing law, and conflicts of law) are neutral.

**V.  CONCLUSION**

For the foregoing reasons, Actian's motion to sever and transfer should be denied.

Dated: November 5, 2015

RUSS AUGUST & KABAT

/s/ *Reza Mirzaie*
Reza Mirzaie (CA SBN 246953
Marc A. Fenster (CA SBN 181067)
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991
mfenster@raklaw.com
rmirzaie@raklaw.com

*Attorneys for Plaintiff Realtime Data LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile, and/or first class mail on this date.

/s/ *Reza Mirzaie*
Reza Mirzaie
