# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| REALTIME DATA, LLC d/b/a IXO<br><br>Plaintiff<br><br>v.<br><br>ACTIAN CORPORATION AND PERVASIVE SOFTWARE, INC.<br><br>Defendants | NO. 6:15-cv-463-RWS-JDL<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>ORAL HEARING REQUESTED</u> |

**<u>REPLY IN SUPPORT OF DEFENDANTS ACTIAN CORPORATION AND PERVASIVE SOFTWARE INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>**

The Opposition points out that the correct approach for analysis under Section 101 requires that the asserted claims must each be considered independently and their claim elements much be considered both individually and as whole. Dkt. 157 ("Opp.") at 25, 30 and 33. This is exactly what Actian's Motion does in addressing and applying the two part *Mayo/Alice* test to each of the asserted claims of the '908 and '530 patents. Dkt. 123 ("Mo."). In contrast, the Opposition fails to do what it acknowledges is required and instead attempts to avoid focus on the limitations of the asserted claims. Realtime's efforts at obfuscation do not change the result here. When the actual substance of the asserted claims of the '908 and '530 patents are examined under the two part *Mayo/Alice* test, it is clear that they are not patent eligible.

I. **THE MAJORITY OPINION IN *DDR HOLDINGS LLC V. HOTELS.COM, L.P.* NOT ONLY DOES NOT "CONTROL HERE" - IT IS INAPPLICABLE.**

Rather than addressing what is actually set forth in its asserted claims, Realtime places great emphasis on the majority opinion of the Federal Circuit panel decision in *DDR Holdings*, claiming that it "controls here." Opp. at 9. The *DDR Holdings* majority opinion not only does not "control", but is simply not applicable here. The correct and required analysis under § 101 is to apply the Supreme Court's two-step *Mayo/Alice* test to the specific claims asserted here.

As a threshold matter, the three claims that were examined in *DDR Holdings* were entirely different from those asserted here. This is exactly what a subsequent Federal Circuit panel in *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) observed about *DDR Holdings* when it was presented with, as this Court is, analyzing specific claims under Section 101 which were different from those considered in *DDR Holdings*:

> "Finally, Intellectual Ventures argues that the claims are patentable in light of our recent decision in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). The patent at issue in that case dealt with a problem unique to the Internet . . .. The patent claims here do not address problems unique to the Internet, so *DDR* has no applicability." 792 F.3d at 1367 (*emphasis added*).

Likewise here, *DDR Holdings* has "no applicability" since the asserted claims in this case are entirely distinct from those considered in *DDR Holdings* and do not deal with a "problem unique

to the Internet." The fact that the *DDR Holdings* majority found that the three claims before it relating to the generation of a composite web page satisfied *Mayo/Alice* step two because "taken together as an ordered combination, the claims recite an invention that is not merely the routine or conventional use of the Internet" is simply of no bearing here. 773 F.3d at 1259.

Nor did the majority opinion's comment in *DDR Holdings* that "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" somehow change the law and abrogate the Supreme Court's two step *Mayo/Alice* test as Realtime's arguments imply. *Id*. at 1257. Indeed, if so interpreted, *DDR Holdings* would be in direct conflict with the Supreme Court's repeated holdings that "limiting the use of an abstract idea to a particular technological environment" is insufficient to confer patent eligibility (*see Alice Corp. PTY Ltd. v. CLS Banl Int'l* (2014*)*, 134 S. Ct. at 2347, 2360; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.* (2012*)*, 132 S. Ct. 1289, 1294; *Bilski v. Kappos*, 561 U.S. 593, 610 (2010)) and that claims do not become patent eligible simply because they disclose a specific solution to a particular problem. *See Bilski*, 561 U.S. at 599-601 (concluding that claims fell outside section 101 notwithstanding the fact that they disclosed a very specific method of hedging against price increases); *Parker v. Flook,* 437 U.S. 584, 593 (1978), (rejecting the argument "that if a process application implements a principle in some specific fashion, it automatically falls within the patentable subject matter of § 101"). As the Supreme Court stated in *Alice*: "In holding that the process was patent ineligible, we rejected the argument that 'implement[ing] a principle in some specific fashion' will 'automatically fal[l] within the patentable subject matter of § 101.'" 134 S. Ct. At 2358. Thus, "*Flook* stands for the proposition that the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Bilski,* 561 U.S., at 610-611, 130 S. Ct. 3218 (internal quotation marks omitted)."

Indeed, multiple recent decisions in this District have acknowledged that whether the claims at issue are or are not "rooted in computer technology" is simply not the test for patentability under Section 101. *See Mirror Worlds Techs. LLC v Apple, Inc.*, Case No. 6:13-cv-

419, Dkt. No. 346 at 20, 2015 WL 6750306 at *10 (E.D. Tex. July 7, 2015) (Schroeder, J.) (discussing *DDR Holdings* and acknowledging that the defendant's concern "is a valid one" of overbroad preemption "even if a claim is rooted in computer technology and overcomes a problem specifically arising in the realm of computers")[1]; *Telinit Techs. LLC v. Alteva, Inc.*, Case No. 2:14-cv-00369 at 31-32, 2015 WL 5578604 at 16) (Schroeder, J.) (E.D. Tex. Sept. 21, 2015) (distinguishing *DDR Holdings* and holding that "[T]aking an otherwise abstract idea and applying it to the Internet does not transform the claim into patentable subjection matter").

To the contrary, the two part *Mayo/Alice* test is to be applied to the asserted claims in this case regardless of whether they relate to or are "rooted in" computer technology or whether they are directed to solving what Realtime tries so hard to characterize as a "technological problem." As demonstrated in the Motion and as further discussed below, when the two part *Mayo/Alice* test is applied to the asserted claims of the '908 and '530 Patents and what they actually claim, it is clear that they are not patent eligible.

II. **REALTIME'S ARGUMENT THAT THE '908 AND '530 PATENTS FOCUS ON THE REALM OF DIGITAL DATA COMPRESSION IS UNAVAILING.**

The Opposition places great emphasis on its contention that the asserted claims are restricted to the field of "digital data compression." According to Realtime "this is reason enough to bring the patented claims into the realm of patent eligibility." Opp. at 17.

This is simply not the law. As the Supreme Court has repeatedly made clear, "limit[ing] the use of [an abstract idea] to a particular technological environment" is not enough for patent eligibility. *Alice,* 134 S. Ct. at 2358. It is well settled that claiming an abstract idea, even if limited to one field of application, is still patent ineligible. *Bilski*, 561 U.S. at 610-11. *Internet Patents Corp. v. Active Network, Inc.*,790 F.3d at 1343, 1348 Fed Cir. 2015) ("The additional

---

[1] Actian's citation to and discussion of Judge Schroeder's decision in *Mirror Worlds* is not "misleading" or "taken out of necessary context." Opp. at 14. In *Mirror Worlds*, Judge Schroeder was certainly observing that simply because claims are "rooted in computer technology" and may be directed to overcome "a problem specifically arising in the realm of computers" does not by itself mean that they are patent eligible. As the *Mirror World* decision acknowledges, it is the *Mayo/Alice* test that is to be applied to determine patent eligibility.

limitations of these dependent claims do not add an inventive concept, for they represent merely generic data collection steps *or siting the ineligible concept in a particular technological environment.*") (emphasis added); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) ) (attempt to limit abstract idea to a particular technological environment is insufficient). Nor does a patent have to preempt an entire field in order to be ineligible. *Mayo* 132 S.Ct. at 1294; *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("…absence of complete preemption does not demonstrate patent eligibility.").

### III. ACTIAN HAS NOT "OVERSIMPLIFIED" OR FAILED TO ADDRESS ANY OF THE ASSERTED CLAIMS OF THE '908 AND '530 PATENTS OR THEIR ELEMENTS.

As a threshold matter, Realtime accuses Actian of "oversimplifying" and of failing to address all of the claims and claim elements of the '908 and '530 patents in its Motion. Opp. at 15-18. This is not accurate.[2] Actian's Motion specifically analyzed the substance of what is claimed in each and every asserted independent and dependent claim in both the '908 and '530 patents, including each element/limitation of each asserted claim, both individually and as a whole. Motion at pgs 2-14 ('908 patent) and 15-23 ('530 patent). Nor did the Motion ignore that fact that the claims of the '530 Patent differ in certain respects from those of the '908 patent. *Id.* pp. 16-23. Rather the Motion separately examined each of the asserted claims of the '530 patent and each of their limitations, demonstrating that they are patent ineligible.

### IV. *MAYO/ALICE* STEP ONE: THE BASIC CONCEPT OF THE ASSERTED CLAIMS OF THE '908 AND '530 PATENTS ARE DIRECTED AT AN ABSTRACT IDEA.

Examining the claim language, the Motion demonstrated that: (1) the basic concept of the

---

[2] This accusation is rather audacious in that the Opposition consists largely of an effort at obfuscation. To minimize focus on the asserted claims of the '908 and '530 Patents, the Opposition presents a lengthy, combined opposition brief repeatedly mixing arguments as to the three other patents in the case and the briefing filed by other defendants and attempting to direct the Court's focus to consideration of factually distinguishable cases. Nowhere does the Opposition directly address the actual substance of what is set forth in each of the asserted claims of the '908 and '530 Patents or the detailed analysis presented in the Motion applying the two part *Mayo/Alice* test to them which demonstrates that they are not patent eligible.

asserted claims of the '908 patent is the abstract idea of using multiple compression techniques to compress and store digital data (Motion at 3-6); and (2) the basic concept of the asserted claims of the '530 patent is similarly the abstract idea of using multiple compression techniques to compress and store data blocks in a data stream (*Id.* pp. 15-18). Realtime does not seriously challenge this. Indeed to the extent it addresses the issue, the Opposition says, *in apparent agreement with Actian's position*, that the '908 and '530 claims are at their "core form" directed to systems and methods "of digital-data compression utilizing a plurality of different encoders for accelerated storage and retrieval of data blocks." Opp. at 16.

While Realtime suggests that Actian's statement of the basic concept of the asserted claims somehow "do not include other core concepts of the '530 and '908 Patents, such as data acceleration and retrieval" (Opp. at 17), this is simply not accurate. As to the concept of "retrieval", Actian's statement of the core concept of the claims expressly includes the concept of retrieval ("using multiple compression techniques to compress **and store** …"). As to the concept of "data acceleration", the Opposition simply ignores what is actually stated in the asserted claims. As demonstrated in the Motion, the only concept of "data acceleration" included in the asserted claims of the '908 and '530 patents is the limitation that the "compression and storage occurs faster than the first and second data blocks are [said data stream is] able to be stored on the memory device in uncompressed form." Mo. at 4-5, 9-10. This does not reflect the basic concept of the claimed invention.[3] Rather it is simply a limitation requiring that the desired result of using the abstract idea be achieved. Nowhere do the asserted claims of the '908 and '530 patents include or disclose any technique, mechanism or method as to **how** the required "faster than" result is to be achieved (other than the implication that this may be the result if multiple different compression techniques are used). Since this "faster than" limitation reflects nothing more than a statement of the required result, it can hardly be said to be part of

---

[3] Nor, as discussed in the Motion and further below at Section *V.B*, does it reflect an inventive concept sufficient to transform the abstract concept of the asserted claims into patent eligible subject matter under the second step of the *Mayo/Alice* test.

the basic concept of the asserted claims.[4]

The Opposition otherwise does not contest Actian's statement of the basic concept of the asserted claims of the '908 and '530 patents. Nor could it as the asserted claims offer no specific method, mechanism or technique with respect to the compression of data other than the abstract concept of using multiple compression techniques. As Actian demonstrated in the Motion, all of the remaining limitations in the asserted claims, including the dependent claims, are identifiable and divisible from the basic concept of using multiple compression techniques to compress and store digital data. As Judge Schroeder recently observed in *Mirror Worlds Techs. LLC v. Apple, Inc.*, *supra*, in applying the first part of the *Mayo/Alice* test:

> "Mirror Worlds likewise errs by pointing to claim limitations peripheral to the core idea of organizing data units to argue that the invention is not directed to an abstract idea. Mirror Worlds' identified limitations, "using a persistent main stream and substreams," limit how the invention organizes the data units. These limitations, along with chronological organization, are "plainly identifiable and divisible" from the remaining abstract idea of data unit organization. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (describing scenarios where the generic computer limitations are plainly identifiable and divisible from the abstract idea embodied in the claim). After removing these plainly identifiable and divisible limitations, the Court finds that claim 13 is directed to the abstract idea of organizing data units on a computer."

*Mirror Worlds*, 2015 WL 6750306 at *8. The first inquiry of the *Mayo/Alice* test is met here. The asserted claims in their simplest form are directed at an abstract concept.

V. **MAYO/ALICE STEP TWO: THE ASSERTED CLAIMS DO NOT CONTAIN ANY ADDITIONAL INVENTIVE CONCEPT SUFFICIENT TO TRANSFORM THE CLAIMED ABSTRACT IDEA INTO A PATENT ELIGIBLE INVENTION.**

As demonstrated in the Motion, the asserted claims of the '908 and '530 patents fail to contain any inventive concept or additional features sufficient to transform the abstract concept

---

[4] Nor would this make any difference here under the first step of the *Mayo/Alice* test in any event. If one said the basic concept was "using multiple compression techniques to compress and store digital data where the compression and storage occurs faster than storage would occur in uncompressed form" this would still reflect a pure abstraction. The concept of using multiple different compression techniques to compress and store the data when this was faster than not doing so is still a pure abstraction.

of using multiple compression techniques to compress and store data into patent eligible subject matter.[5] There are simply no additional features or meaningful limits in any of the asserted claims which reflect an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2357.[6]

      A.    **The Asserted Claims Of The '908 And '530 Patents Do Not Reflect Any "Specific" Or "Particularized" Method Of Data Compression Which Constitutes A Sufficient "Inventive Concept."**

The Opposition suggests that the asserted claims of the '908 and '530 patents are patent eligible because they somehow constitute a "specific" or "particularized" invention or "functional and palpable" application. However the Opposition does not actually identify any such invention or application, and none is actually set forth in the asserted claims. As they say, there is "no there there." The asserted claims do not set forth or include any specific manner, or mechanism or technique, nor any "palpable" application other than the abstract idea of using more than one of the many existing and known different compression techniques in connection with the otherwise conventional use of a computer to compress digital data.[7]

---

[5] The Opposition presents an inaccurate articulation and analysis of the second step of the *Mayo/Alice* test. Opp. at 26-28. The test is not whether the additional elements of the claims beyond the abstract idea do "not" comprise well-understood, routine, conventional activity. The test is whether the claims contain additional features which constitute an inventive concept sufficient to transform the abstract concept into patent eligible subject matter. *Alice*, 134 S. Ct. at 2357.

[6] Moreover, as demonstrated in the Motion, there is nothing in the content of any of the asserted dependent claims or additional independent claims of the '908 and '530 patents sufficient to create patent eligibility. Mo. at 11-15, 21-23. *See Telinit Techs. LLC v. Jive Commc'ns Inc.*, 2:14-cv-00369, Order, Dkt. No. 84 at 32) (Schroeder, J.) (E.D. Tex. Sept. 21, 2015) ("Claim 1 does not contain any specific structural components—beyond a generic "processor" and generic "networks"—that remove it from the realm of an abstract idea.").

[7] As such, there is nothing "controlling" about the factually distinguishable holdings in *Diamond v. Diehr*, 450 U.S. 175 (1981) or, 627 f.3d 859, 869 (Fed. Cir. 2010). Opp. at 24. The claims at issue in *Diamond v Diehr*, unlike the asserted claims in this case, reflected a detailed step by step specific process for molding precision synthetic rubber products and the focus of the Supreme Court's analysis was with respect to the inclusion of a well-known mathematical equation "in conjunction with all of the other steps in their claimed process. 450 U.S. at 188-189 ("Industrial processes such as this are the types which have historically been eligible to receive the protection of our patent laws."). Similarly, the claims in *Research Corp.* were directed at rendering halftone images of a digital image involving manipulation of specific data structures. 627 F.3d at 868. The claims in *Research Corp.* are nothing like the asserted claims in this case which

Similarly, Realtime's assertion that the use of the abstract idea is directed at attempting to overcome a "technical problem" of a limitation on transmission bandwidth is unavailing. Even if that were true, the asserted claims offer no specific or particularized solution, method, improvement or application to improve transmission speed other than a pure abstraction – using multiple different compression techniques rather than just one to compress and store data. *See e.g., eDekka LLC v. 3Balls.com, Inc.*, Case No. 2:15-cv-541-JRG at **6-7, 2015 WL 5579840 at *4 (E.D. Tex. Sept. 21, 2015) (finding claims that "'amount to nothing significantly more than an instruction to apply the abstract idea of [storing, labeling, and retrieving information] using some unspecified, generic computer'" ineligible under Section 101 (quoting *Alice*, 134 S. Ct. at 2360)). Patent eligibility does not arise from the use of the abstract idea to improve the functioning of a computer. The test is for an inventive concept or additional features beyond the use of the abstract idea sufficient to transform its use into patent eligible subject matter. Here there is none.

B. **The Inclusion Of The "Faster Than" Limitation Does Not Transform The Abstract Idea Into Patent Eligible Subject Matter.**

As demonstrated in the Motion, the inclusion of the language in the independent claims that "the compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form" also does not reflect any "innovative concept" sufficient to transform the claimed abstract idea into a patent-eligible invention. Mo. at 4-5. 9-10. This merely sets forth as a limitation the desired result of applying the abstract idea. The Opposition does not and cannot show that this limitation reflects any "innovative concept" or "improved technological process."[8] To the contrary, as noted above, the asserted claims do not disclose or offer any new specific technique, method, algorithm or mechanism as to *how* this "faster than" limitation is to be achieved. The *only* possible means disclosed as to how this

---

offer no specific technique, process or application and are instead directed at nothing more than the abstract idea of using more than one of the many different compression techniques that the patents acknowledge were existing and known.

[8] Indeed, as the patent specifications themselves acknowledge, it was already "well known within the current art" that one of the benefits of data compression was to "reduce the time to transmit data by more efficiently utilizing low bandwidth data links." '908 Patent, 2:13-19; '530 Patent, 2:12-15.

"faster than" or "accelerated data storage" might possibly be achieved is the abstract idea of using multiple different compression techniques to compress and store digital data. The asserted claims simply are drafted to include that desired result as a limitation. Realtime does not seriously contest this, instead resorting only to obfuscation. Opp at 13.

Nor is Realtime correct that the Motion "misinterprets" the holdings in *Intellectual Ventures* and *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed Cir. 2015). Opp. at 13. In *Intellectual Ventures* the Court made clear that limitations claiming **the improved speed or efficiency** inherent with applying the abstract idea on a computer are insufficient:

> "Turning to the second step of *Alice*, here there is no inventive concept that would support patent eligibility. ***As discussed above, our precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea***."
>
> \* \* \*
>
> "Moreover, ***the fact that the web site returns the pre-designed ad more quickly than a newspaper could send the user a location-specific advertisement insert does not confer patent eligibility***."
> *792 F.3d 1363, 1367* (Fed. Cir. 2015) (emphasis added).

As the Court held in *Intellectual Ventures*, the "faster than" limitation in the asserted claims fails to supply the required "inventive concept" to satisfy the second step of the *Mayo/Alice* test.

Similarly, *Internet Patents v. Active Network*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) held that a limitation which merely recites the desired result or purpose of the abstract idea dissociated from any method or mechanism by which "it is accomplished" does not render the claim patent-eligible. After determining that the "character of the claimed invention is an abstract idea," the Federal Circuit considered whether there was a sufficient "inventive concept" confer patent eligibility and found that it did not because the "mechanism" for what was described in the specification as the "most important aspect" claimed to be the "innovation over the prior art" was "not described" in the claim or specification. 790 F.3d at 1348. Therefore the second *Mayo/Alice* step was not satisfied because the critical "maintaining state" claim term only "describes the effect or result dissociated from any method by which maintaining the state is accomplished." *Id.* at 1348. The same is true with the "faster than" limitation in the asserted

claims of the '908 and '530 patents – as discussed above this limitation claims an effect or result which is "disassociated from any method" by which it is to be accomplished.[9]

### VI. DEFENDANTS' MOTION IS NOT PREMATURE.

It is not premature as the Opposition suggests for this Court to address patent eligibility at this point. While on the one hand the Opposition suggests that the Court should defer consideration of these issues until after claim construction, on the other hand ***it fails to identify a single asserted claim in the '908 and '530 patents as to which claims construction would have any impact on the Section 101 analysis.*** Nor does the Opposition identify any disputed material factual issue which would have any impact. Indeed, in this case as demonstrated in the Motion, the specifications of the '908 and '530 patents themselves demonstrate that there are no "innovative concept" to satisfy the second *Mayo/Alice* step reflected in the asserted claims beyond the abstract idea.[10] In such circumstances, it is well accepted that Courts may determine patent eligibility under Section 101 prior to claims construction. *See e.g.*, *eDekka LLC v. 3Balls.com, Inc.*, Case No. 2:15-CV-541-JRG, 2015 WL 5579840 at *4 (E.D. Tex. Sept. 21, 2015) (citing *Bancorp Services* and concluding that "the relevant facts of this case demonstrate that claims construction is unnecessary" to find claims invalid under §101).

---

[9] The Opposition does not even attempt to refute, nor could it, that the Motion demonstrated that the inclusion of the "data descriptor" limitation does not constitute the required additional "inventive concept" under the second step of the *Mayo/Alice* test. Mo. at 11-12, 17. *See e.g., Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("interactive interface" limitation held to an insufficient generic computer element); *Telinit Techs. LLC v. Jive Commc'ns Inc.*, Case No. 2:14-cv-00369, Order, Dkt. No. 84 at 33) (Schroeder, J.) (E.D. Tex. Sept. 21, 2015) (dependent claims adding basic components to carry out the abstract steps of the claims which did not render the claims patent-eligible).

[10] The Opposition erroneously argues that the asserted claims satisfy the second step of the *Mayo/Alice* test because "hundreds of prior art documents" were submitted to the PTO and are included in the file histories, going so far as to request the Court to take judicial notice of selected portions of the file histories of the '908 and '530 patents. Opp. at 31-32. These arguments and the portions of the file histories submitted have no bearing here. As the Opposition itself correctly notes: "Indeed, establishing that claimed features constitute an "inventive concept" for purposes of *Alice* step 2 does not entail an analysis of whether the features were novel and non-obvious over the prior art." (citing *Bilski*, 561 U.S. at 602). Opp. at 30. *See also, Diamond v Dieher*, 450 U.S. 175, 189 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance …").

Dated: November 6, 2015 Respectfully submitted,

*/s/ James W. Morando*

Deron R. Dacus
Texas Bar No. 00790553
E-mail: ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: 903-705-1117
Fax: 903-581-2543

James W. Morando (Lead Attorney)
(California Bar No. 87890)
E-mail: jmorando@fbm.com
Daniel C. Callaway (California Bar No. 262675)
E-mail: dcallaway@fbm.com
*Pro Hac Vice*
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Fax: (415) 954-4480

Attorneys for Defendants Actian Corporation and Pervasive Software

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(d), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail this 6th day of November, 2015.

                                                            */s/ James W. Morando*
                                                              James W. Morando