# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **REALTIME DATA LLC d/b/a IXO,** § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> **DROPBOX, INC.,** § <br> § <br> *Defendant.* § | CASE NO. 6:15CV463 <br> CONSOLIDATED WITH <br> **CASE NO. 6:15-CV-465-RWS-JDL** <br><br> **JURY TRIAL DEMANDED** |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Dropbox, Inc.'s Motion to Transfer Venue to the United States District Court for the Northern District of California Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 17). Plaintiff Realtime Data LLC filed a response (Doc. No. 24) to which Dropbox filed a reply (Doc. No. 30), and Realtime filed a sur-reply (Doc. No. 32). Having considered the parties' briefing, the Court **GRANTS** Dropbox's Motion to Transfer Venue (Doc. No. 17).

## BACKGROUND

Realtime is a New York limited liability company with its principle place of business located at 116 Croton Lake Road, Katonah, New York 10536. Doc. No. 1 at ¶ 1. It also maintains an office at 1828 E.S.E. Loop 323, Tyler, Texas 75701. *Id.* On May 8, 2015, Realtime filed suit against Dropbox alleging infringement of three patents: U.S. Patent Nos. 7,378,992; 7,415,530; and 8,643,513. The same day, Realtime also filed an additional seven suits in this District asserting the same patents. In four of the seven suits, Realtime asserted a fourth patent: U.S. Patent No. 6,597,812. On July 23, 2015, the actions were consolidated into the lead case, No. 6:15-cv-463, for pretrial issues other than venue. Dropbox filed the instant motion to transfer on

1

August 24, 2015, and on September 14, 2015, Realtime filed an amended complaint against Dropbox, adding additional allegations of infringement of U.S. Patent No. 9,116,908.

Dropbox is a Delaware corporation with its principle place of business located in San Francisco, California. Doc. No. 17-15, Declaration of Sean Li, at ¶ 3 (Li Decl.). Dropbox employs approximately 1,000 people at its headquarters in San Francisco, including the engineering, product, and design teams responsible for the accused service, as well as Dropbox's employees with knowledge of its marketing, sales, and finances. *Id.* ¶¶ 3–4.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the

availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Here, Realtime does not dispute that this case could have been brought in the Northern District of California. Doc. No. 24 at 8, n.1.

**I.     The Private Interest Factors**

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet its burden,

3

Dropbox must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *In re Apple*, 743 F.3d 1377, 1379 (Fed. Cir. 2014); *see also Invitrogen v. Gen. Elec. Co.*, No. 6:08–CV–113, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through its declarations, Dropbox maintains that its employees with relevant knowledge regarding the accused technology are located in the Northern District of California. Li Decl. at ¶ 4. Dropbox states that the engineers, product managers, and designers most knowledgeable about the technical aspects of the accused service, as well as the personnel most knowledgeable about Dropbox's marketing, sales and finances, are located at Dropbox's headquarters in San Francisco. *Id.* Additionally, Dropbox's declarations identify David Euresti, ChenLi Wang, and Brad Silicani as employee witnesses having technical, marketing, and financial knowledge of the accused service and state they also are located in San Francisco. *Id.* Dropbox also asserts that all of its documents relevant to this case, including technical documents, sales and marketing materials, financial statements, and source code for the accused service, are located in San Francisco. *Id.* ¶ 5.

Finally, Dropbox contends that it is likely to rely on a prior art system called the Bay Area Research Network System in presenting its invalidity defense. Doc. No. 17 at 9. Because it was developed at U.C. Berkeley, Dropbox argues that evidence pertaining to the system is likely to be located in the Northern District of California. *Id.* at 14.

Realtime names three witnesses with relevant knowledge, all of whom reside in New York: Stephen McErlain (Vice President of Realtime), Gerald Padian (member of Realtime's

Board of Directors), and James Fallon (inventor of the patents-in-suit). Doc. No. 24-5, Declaration of Reza Mirzaie, at ¶ 4 (Mirzaie Decl.). Realtime asserts that Mr. McErlain and Mr. Padian have knowledge relating to Realtime's claims in this case, licensing and commercialization of the patents-in-suit, and Realtime's financial information. It also states that Mr. Fallon has knowledge regarding the design, development, and prosecution of the asserted patents, efforts to commercialize the patents, and their ownership and assignment. Doc. No. 24 at 14. Additionally, Realtime maintains that its Tyler office houses the patent file histories, licenses, and other documents relating to the patents-in-suit, as well as physical devices and prototypes developed by Realtime, original source code, and demonstration software. Doc. No. 24-3, Declaration of Stephen McErlain, at ¶ 5 (McErlain Decl.).

Dropbox contends, however, that Realtime's documentary evidence was transferred to this District in anticipation of litigation, and thus, is entitled to no weight in the venue transfer analysis. Doc. No. 17 at 13–14 (citing *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). Realtime counters that all or substantially all of its documents have been kept at or accessed from its Tyler office since 2009. McErlain Decl. at ¶ 5. The Court disagrees that Realtime's documentary evidence is entitled to no weight. Realtime's declarations make clear that it housed relevant documents in its Tyler office well in advance of this litigation. Additionally, Realtime states that it uses these documents to conduct business activities related to licensing and commercialization of its patents. For these reasons, the Court finds that the accessibility of Realtime's documents is an appropriate consideration in weighing this factor and will give them some weight based on their presence in this District.

Nonetheless, the Court must acknowledge that "the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Dropbox has specifically

5

identified three employees with relevant knowledge who reside in the Northern District of California and has indicated that all of its relevant documents, as well as some documents within the control of third parties, are also located there. Conversely, none of Realtime's witnesses reside in this District, and although at least some of Realtime's documents located in this District are likely to further its claims to some extent, the Court notes that Realtime has not explained how its physical devices, prototypes, source code, and demonstration software are relevant to Dropbox's alleged infringement of the asserted patents. Accordingly, this factor weighs in favor of transfer.

*(b) The Availability of Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See Volkswagen II*, 545 F.3d at 316. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning LLC v. Leapfrog Enters., Inc.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D.Tex Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *See also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Dropbox identifies three third-party inventors of prior art who live in the Northern District of California and claims they possess information relevant to Dropbox's invalidity defense. And although Dropbox argues that "[t]he whole point of this factor is to permit the use of live witnesses at trial," it has not indicated whether it intends to depose some or all of these witnesses, or whether they are expected to be called to trial. Doc. No. 30 at 4; *see also* Doc. No.

17 at 17. While the convenience to third-party witnesses does often weigh more heavily than the convenience of party witnesses, it is true that "inventors of prior art rarely, if ever, actually testify at trial." *PersonalWeb Techs. LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *8 n.13 (E.D. Tex. Mar. 21, 2013). In order for the Court to meaningfully assess the weight that should be attached to a third-party witness, it is incumbent upon the advancing party to demonstrate the likelihood of that witness actually testifying at trial. Here, Dropbox has not done so. Accordingly, the Court concludes that Dropbox's named third-party prior art inventors do not weigh heavily in the consideration.

Realtime, however, has not identified any third-party witnesses. Therefore, this factor slightly favors transfer.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

As discussed, Dropbox has specifically identified three employees as willing witnesses with relevant knowledge of the accused products who are located in the Northern District of California. Li Decl. at ¶ 4. Because these witnesses will be required to travel approximately 1,850 miles to this District for trial, rather than approximately two miles if this case is transferred to the San Francisco Division of the Northern District of California, Dropbox contends that

7

having trial in this District would significantly increase the inconvenience and expense for its witnesses. Doc. No. 17 at 15.

Realtime responds that if this case is transferred to San Francisco, its three willing witnesses living in New York will be required to travel nearly twice as far as they would if trial is held in this District. Further, Realtime argues that proceeding here would be more convenient for potential witnesses located in Dropbox's office in Austin, Texas. Realtime asserts that three of these witnesses "are likely to have relevant information regarding the marketing, sales, and technical aspects of the infringing products." Doc. No. 24 at 14.

As a preliminary matter, Realtime has not shown that any employees in Dropbox's Austin office have relevant and material information pertaining to the alleged infringement of the asserted patents. Realtime did not identify these witnesses in its discussion of the sources of proof in this case, and in fact, Dropbox counters that its Austin-based employees have no knowledge that relates to issues of either infringement or damages.

Additionally, the fact that Realtime's witnesses have indicated that proceeding in this District will be more convenient for them is entitled to little weight. Because Realtime's named witnesses reside in New York, they "will be required to travel a significant distance no matter where they testify." *Genentech*, 566 F.3d at 1345. Accordingly, the added inconvenience to Realtime's witnesses of traveling to California, rather than to Texas, should not be overemphasized, especially when considering that Dropbox's witnesses who live in the Northern District of California will be "unnecessarily inconvenienced by having to travel away from home to testify" in this District. *Id.*; *see also PersonalWeb*, 2013 WL 9600333, at *4. Because a substantial number of material witnesses reside in the Northern District of California and none resides in this District, this factor weighs in favor of transfer.

8

*(d) Other Practical Problems*

Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice. *Volkswagen II*, 565 F.2d at 1351. For purposes of judicial economy, the Court recognizes those benefits that were apparent at the time the instant action was filed. *See In re EMC Corp.*, 501 F. App'x. 973, 976 (Fed. Cir. 2013) ("a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed"). Realtime contends that judicial efficiency weighs against transfer because of this Court's familiarity with two of the four patents-in-suit and because of the substantial overlap in issues between this case and the other consolidated cases in this action.

The Court acknowledges that, based on the experience gained in prior cases involving Realtime, it does have some familiarity with the asserted patents and accused technologies involved in the instant action. Also, at the time of filing, there were at least some benefits to be gained from having a single judge handle related pretrial issues in the consolidated cases. Further, neither of the parties address whether the Northern District of California has any experience with the patents-in-suit or whether they have been asserted in any pending cases in that district. Accordingly, the Court concludes that this factor weighs slightly against transfer.

## II. The Public Interest Factors

Other than local interest considerations, the parties agree that the public interest factors are neutral.

*(a) The Local Interest in Having Localized Interests Decided at Home*

Dropbox contends that the Northern District of California has a local interest in this case because Dropbox has maintained its headquarters there for over eight years and employs

approximately 1,000 people in that District. Li Decl. at ¶ 3. Realtime argues that this District has a local interest because it has maintained an office in Tyler, Texas, for over six years, where it conducts business related to the licensing and commercialization of the patents-in-suit. Ultimately, because Dropbox has identified several individuals whose work relates to the accused technology and who are located in the Northern District of California, the Court finds that the Northern District of California has a greater local interest in the outcome of the litigation. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012). This District also has at least some local interest given that Realtime has an office in this District, but on balance, this factor weighs in favor of transfer.

## CONCLUSION

For the aforementioned reasons, the Court finds that the Northern District of California is clearly a more convenient forum. Here, the location of sources of proof, the availability of compulsory process to secure the attendance of witnesses, the convenience of willing witnesses, and local interest considerations weigh in favor of transfer, while considerations of judicial economy weigh slightly against transfer. All other factors are neutral. While the Court acknowledges that the strongest factor against transfer on the facts before it is judicial economy, that factor alone cannot dictate the transfer analysis. In this situation, where Dropbox has made a strong showing in favor of transfer on factors such as the location of sources of proof and the convenience of witnesses, the benefits of judicial economy do not outweigh Dropbox's showing

that the Northern District of California is clearly more convenient. Simply put, because Dropbox has shown the Northern District of California is a clearly more convenient forum, the considerations of judicial economy involving this Court's prior experience with two of the four patents-in-suit do not override that showing such that a denial of transfer is warranted. *See In re Verizon*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("To interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)."); *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011) ("[T]he proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation."); *In re Apple*, 581 F. App'x 886, 889 ("[J]udicial economy is just one relevant consideration in determining how administration of the court system would best be served in deciding a transfer motion."). Indeed, in *In re Morgan Stanley*, Realtime made the very same argument asserted here; the Court's prior experience with certain patents should compel denial of a motion to transfer. *Id.* at 949. The Federal Circuit rejected that argument noting that the court had "twice recently considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue." *Id.* Accordingly, the Court **GRANTS** Dropbox's Motion to Transfer Venue (Doc. No. 17).

**So ORDERED and SIGNED this 12th day of January, 2016.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE