IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **REALTIME DATA LLC d/b/a IXO,** § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> **TERADATA OPERATIONS, INC.,** § <br> § <br> *Defendant.* § | CASE NO. 6:15CV463 <br> CONSOLIDATED WITH <br> **CASE NO. 6:15-CV-470-RWS-JDL** <br> <br> **JURY TRIAL DEMANDED** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Teradata Operations, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 25). Plaintiff Realtime Data LLC filed a response (Doc. No. 28) to which Teradata filed a reply (Doc. No. 32), and Realtime filed a sur-reply (Doc. No. 33). Teradata moves the Court for transfer to the Central District of California, or alternatively, to the Northern District of California if consolidated-defendant Dropbox, Inc.'s Motion to Transfer Venue is granted in consolidated Case No. 6:15-cv-465. Having considered the parties' briefing, the Court **GRANTS IN PART** and **DENIES IN PART** Teradata's Motion to Transfer Venue (Doc. No. 25).

## BACKGROUND

Realtime is a New York limited liability company with its principle place of business located at 116 Croton Lake Road, Katonah, New York 10536. Doc. No. 1 at ¶ 1. It also maintains an office at 1828 E.S.E. Loop 323, Tyler, Texas 75701, where Realtime asserts it keeps many of its documents relevant to this case. *Id.*; Doc. No. 28-4, Declaration of Stephen McErlain, at ¶ 5 (McErlain Decl.). On May 8, 2015, Realtime filed suit against Teradata alleging infringement of four patents: U.S. Patent Nos. 7,378,992; 7,415,530; 8,643,513; and 6,597,812. The same day,

1

Realtime also filed an additional seven suits in this District asserting the same patents. On July 23, 2015, the actions were consolidated into the lead case, No. 6:15-cv-463, for pretrial issues other than venue. Teradata filed the instant motion to transfer on August 26, 2015, and on September 14, 2015, Realtime filed an amended complaint against Teradata, adding additional allegations of infringement of U.S. Patent No. 9,116,908.

Teradata is a Delaware corporation with its principle place of business located in Dayton, Ohio. Doc. No. 25-1, Declaration of J. Mark Morris, at ¶ 3 (Morris Decl.). The accused Teradata Database product was primarily designed and developed by employees in Teradata's Los Angeles and San Diego offices, with support from employees in Hyderabad, India. *Id.* ¶ 12. Of its more than 1,400 Data & Analytics engineers, more than half work in Teradata's Los Angeles and San Diego offices. *Id.* ¶ 8. Teradata also asserts that the vast majority of its documents relating to the accused product are located and maintained in those offices. *Id.* ¶ 15.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en

banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Here, Realtime does not dispute that this case could have been brought in either the Central District or the Northern District of California. Doc. No. 28 at 4, n.2, 15.

## I. The Private Interest Factors

*(a) The Relative Ease of Access to Sources of Proof*

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. The Federal Circuit requires the Court to assume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). As a result, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.* (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). To meet its burden, Dropbox must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *In re Apple*, 743 F.3d 1377, 1379 (Fed. Cir. 2014); *see also Invitrogen v. Gen. Elec. Co.*, No. 6:08–CV–113, 2009 WL 331889 at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties").

Through its declarations, Teradata maintains that nearly all of the relevant evidence in this case is located within 100 miles of the Central District of California. *See* Morris Decl. at ¶ 15. Teradata states that because the accused product was designed and developed in its Los Angeles and San Diego offices, the majority of the documents related to the accused product's development are located there. *Id.* Teradata also generates marketing materials from its San Diego office and stores its source code on servers maintained in its San Diego and Los Angeles offices. *Id.* ¶¶ 16, 25.

In response, Realtime asserts that its Tyler office houses the patent file histories, licenses, and other documents relating to the patents-in-suit, as well as physical devices and prototypes developed by Realtime, original source code, and demonstration software. McErlain Decl. at ¶ 5. It also argues that much of Teradata's evidence appears to be located outside of the Central District of California, contending that an unspecified portion of Teradata's source code is located in Hyderabad, India, and that Teradata's financial documents are located in Munich, Germany. *See* Morris Decl. at ¶¶ 16, 27

Although Realtime has shown that its relevant documents are housed in this District, the Court must acknowledge that "the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. And while at least some of Realtime's documents located in this District are likely to further its claims to some extent, the Court notes that Realtime has not explained how its physical devices, prototypes, source code, and demonstration software are relevant to Dropbox's alleged infringement of the asserted patents. Teradata, on the other hand, has indicated that almost all of its relevant documents are located within 100 miles of the Central District of California. Further, Teradata specifically explains that all of the documents related to the design and development of the accused product are located in its San Diego and Los Angeles offices. And the fact that some of Teradata's sources of proof may be located elsewhere does not weigh heavily in the Court's analysis because Teradata's evidence in Hyderabad and Munich will need to be transported regardless of whether the case is transferred or remains in this District. *Id.* at 1346. Accordingly, this factor weighs in favor of transfer to the Central District of California.

For the same reasons, this factor also weighs in favor of transfer to the Northern District of California. If this case were transferred to either of the districts Teradata requests, the burden

5

of transporting documents from Teradata's San Diego and Los Angeles offices would be significantly lighter than it would be if the case were to proceed in this District. *See id.*

*(b) The Availability of Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See Volkswagen II*, 545 F.3d at 316. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning LLC v. Leapfrog Enters., Inc.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D.Tex Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *See also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Teradata identifies one third-party witness, Dr. Douglas L. Whiting, who may be required to testify in support of Teradata's noninfringement and invalidity defenses and who lives in Carlsbad, California.[1] Realtime identifies no third-party witnesses, but argues that Dr. Whiting should be given little weight because this Court has the power to compel Dr. Whiting to attend a deposition within 100 miles of his home or work, which could be videotaped and played at trial, if necessary. While the Court recognizes that Realtime's suggestion might be a viable option under Rule 45, such a suggestion does not address the potential value to be added by having this witness testify in person at trial. For this reason, the Court will not speculate as to whether Dr. Whiting's videotaped testimony would be sufficient if played at trial in his stead. On the other hand, Teradata has not indicated whether it merely intends to depose Dr. Whiting or whether it

---

[1] Carlsbad is within 100 miles of the Southern Division courthouse for the Central District of California, which is located in Santa Ana, California.

intends to call him at trial. Nor has Teradata specifically demonstrated the materiality of Dr. Whiting's testimony by explaining how his knowledge will be central to any of the issues in this case.

This situation underscores why it is incumbent upon the advancing party to demonstrate the likelihood of a third-party witness actually testifying at trial in order for the Court to meaningfully assess the weight that should be attached to the witness. Here, Teradata has not done so. Accordingly, the Court concludes that Dr. Whiting does not weigh heavily in the consideration. Nonetheless, Realtime has not identified any third-party witnesses within this Court's subpoena power. Therefore, this factor slightly favors transfer to the Central District of California.

Dr. Whiting is not, however, within 100 miles of any of the courthouses in the Northern District of California. Therefore, under Rule 45, the Northern District could only compel him to attend a trial in that district if it found that Dr. Whiting would not incur substantial expense. But because Teradata has not put forth any indication that such a finding is likely, this factor is neutral when considering transfer to the Northern District of California.

*(c) The Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

7

Teradata has specifically identified fourteen employees who, it contends, have the most relevant knowledge on various aspects of the accused Teradata Database product. Morris Decl. at ¶¶ 13, 24, 28. Ten of the fourteen witnesses are located in either Los Angeles or San Diego.[2] Because these ten witnesses will be required to travel approximately 1,400 miles to this District for trial, rather than forty to eighty-five miles if this case is transferred to the Southern Division of the Central District of California, Teradata contends that having trial in this District would significantly increase the inconvenience and expense for its witnesses. Doc. No. 25 at 10.

Realtime responds by naming three of its own witnesses with relevant knowledge, all of whom live in New York. Realtime argues that if this case is transferred to the Central District of California, its witnesses will be required to travel nearly twice as far as they would if trial is held in this District. Further, Realtime argues that proceeding here would be more convenient for potential witnesses located in Teradata's Texas offices. Realtime asserts that at least one of these witnesses has "knowledge of the compression encoders and techniques used in [Teradata's] products." Doc. No. 28 at 8.

As a preliminary matter, Realtime has not shown that any employees in Teradata's Texas offices have relevant and material information pertaining to the alleged infringement of the asserted patents. Realtime did not identify these witnesses in its discussion of the sources of proof in this case, and in fact, Teradata counters that its Texas employees have no knowledge that relates to issues of either infringement or damages. *See* Morris Decl. at ¶ 17.

Additionally, the fact that Realtime's witnesses have indicated that proceeding in this District will be more convenient for them is entitled to little weight. Because Realtime's named

---

[2] The remaining four witnesses are located in either India or Germany. Because Teradata recognizes that transfer to either the Central or Northern District of California will not significantly affect the convenience factor for the international witnesses, the Court will focus on Teradata's witnesses in California. *See Genentech*, 566 F.3d at 1344.

8

witnesses reside in New York, they "will be required to travel a significant distance no matter where they testify." *Genentech*, 566 F.3d at 1345. Accordingly, any added inconvenience to Realtime's witnesses of traveling to California, rather than to Texas, should not be overemphasized, especially when considering that Teradata's witnesses who live in or near the Central District of California will be "unnecessarily inconvenienced by having to travel away from home to testify" in this District. *Id.*; *see also PersonalWeb*, 2013 WL 9600333, at *4. Because a substantial number of material witnesses reside in or near the Central District of California and none resides in this District, this factor weighs in favor of transfer to the Central District of California.

The same reasoning also applies to the Northern District of California. Although Teradata's witnesses do not reside in that district, a transfer to the Northern District would still allow them to remain in their home state, thereby "significantly minimiz[ing] the cost, time, and expense of travel to attend trial, which is the very purpose of § 1404(a)." And as explained above, the marginal inconvenience to Realtime's witnesses of traveling to the Northern District of California is minimal given that they would be required to travel a significant distance even if the case remains in this District. Therefore, this factor also favors transfer to the Northern District of California.

*(d) Other Practical Problems*

Although judicial economy is not among the list of the enumerated factors, it can be a consideration when determining whether a transfer is in the interest of justice. *Volkswagen II*, 565 F.2d at 1351. For purposes of judicial economy, the Court recognizes those benefits that were apparent at the time the instant action was filed. *See In re EMC Corp.*, 501 F. App'x. 973, 976 (Fed. Cir. 2013) ("a district court may properly consider any judicial economy benefits

which would have been apparent at the time the suit was filed"). Realtime contends that judicial efficiency weighs against transfer because of this Court's familiarity with two of the four patents-in-suit and because of the substantial overlap in issues between this case and the other consolidated cases in this action.

The Court acknowledges that, based on the experience gained in prior cases involving Realtime, it does have some familiarity with the asserted patents and accused technologies involved in the instant action. Also, at the time of filing, there were at least some benefits to be gained from having a single judge handle related pretrial issues in the consolidated cases. Further, neither of the parties addresses whether the Central District of California has any experience with the patents-in-suit or whether they have been asserted in any pending cases in that district. More importantly, though, given this Court's recent decision to transfer Case No. 6:15-cv-465 between Realtime and consolidated-defendant Dropbox to the Northern District of California, transferring this case to the Central District of California would create a situation in which three different courts would be required to simultaneously address issues common to all of the cases brought by Realtime on these particular patents. Such a situation would impose a significant burden on Realtime, consume scarce judicial resources, and create a risk of inconsistent adjudication, all of which are considerations § 1404(a) was designed to avoid. *See In re Volkswagen of America, Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). And as the Federal Circuit has observed, "the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *Id.* For these reasons, the Court concludes that this factor weighs strongly against transfer to the Central District of California.

Judicial economy concerns would be somewhat mitigated, however, if this case were transferred to the Northern District of California. As stated above, the Northern District will have the opportunity to address many of the issues in this case simply by proceeding with the case involving Dropbox. And certainly issues will arise that are specific to each defendant, but taking the burdens on the federal court system into consideration, those individualized issues do not justify spreading related cases across three judicial districts. Therefore, weighing this Court's experience with two of the patents in suit against the efficiencies to be gained by transferring this case to the Northern District of California, this factor is neutral.

## II. The Public Interest Factors

Other than local interest considerations, the parties agree that the public interest factors are neutral.

*(a) The Local Interest in Having Localized Interests Decided at Home*

Teradata contends that the Central District of California has a local interest in this case because the accused Teradata Database product was designed and developed there, and because many of Teradata's employees who developed the accused technology work and reside in or near that district. Realtime argues that this District has a local interest because it has maintained an office in Tyler, Texas, for over six years, where it conducts business related to the licensing and commercialization of the patents-in-suit. Ultimately, because Teradata has identified several individuals whose work relates to the accused technology and who are located in the Central District of California, the Court finds that the Central District of California has a greater local interest in the outcome of the litigation. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and

who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012). This District also has at least some local interest given that Realtime has an office in this District, but on balance, this factor weighs slightly in favor of transfer to the Central District of California.

The parties do not discuss at length whether the Northern District of California has any localized interest in the resolution of this case. Teradata does mention, tangentially, that it conducts some business in the Northern District, but given that Realtime also conducts business in this District, this factor is neutral when considering transfer to the Northern District of California.

## CONCLUSION

In sum, the location of sources of proof and the cost of attendance for witnesses factors weigh in favor of transfer to the Central District of California, as do the availability of compulsory process and localized interest factors, but only slightly. Judicial economy concerns, however, strongly counsel against transferring this case. All other factors are neutral. Weighing these factors against one another, the Court concludes that Teradata has not shown that proceeding in the Central District of California would be clearly more convenient.

On the other hand, when considering transfer to the Northern District of California, all of the factors are neutral except the location of sources of proof and the cost of attendance for witnesses—both of which weigh in favor of transfer. Because Teradata has shown that proceeding in the Northern District of California would be significantly less burdensome and expensive than proceeding in this District, the Court concludes that Teradata has demonstrated that the Northern District of California is clearly a more convenient venue. Accordingly, the Court **DENIES** Teradata's request to transfer this case to the Central District of California, but

**GRANTS** Teradata's alternative request to transfer this case to the Northern District of California.

**So ORDERED and SIGNED this 19th day of January, 2016.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE