**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO,<br><br>Plaintiff,<br><br>v.<br><br>TERADATA CORPORATION and TERADATA OPERATIONS, INC.<br><br>Defendants. | Case No. 6:15-cv-463-RWS-JDL |

**PLAINTIFF REALTIME DATA LLC'S OPPOSITION TO
DEFENDANT TERADATA OPERATIONS, INC.'S MOTION TO STAY**

I.  **INTRODUCTION**

Defendant Teradata Operations, Inc.'s ("Teradata") Motion to Stay ("Motion," Dkt. No. 261) is a flawed attempt at unnecessary delay. As an initial matter, Teradata's proposed stay is not "brief" at all. Rather, staying the case against Teradata at this stage would force Teradata off the current track of consolidated cases and likely result in a delay of nearly one year so that, as Teradata itself puts it, it could "fall in line" with Realtime's recently filed cases. Regardless, Realtime has an interest in the timely enforcement of its patent rights and would suffer significant prejudice and tactical disadvantages if a stay were granted. On the other hand, Teradata has not—and cannot—point to any meaningful hardship it would suffer if this case proceeds with all other consolidated cases. Significantly, Teradata will spend any resources during the proposed stay regardless of the ultimate venue of Realtime's case against it. Similarly, no judicial resources will go to waste if a stay is denied. Teradata's wholly conclusory argument aside, in light of the other six consolidated cases, this Court will have to decide the claim construction issues that will be before it regardless of Teradata's motion to transfer. And Teradata's own lengthy delay in even making its flawed request for a stay belie its argument of supposed waste of party or judicial resources. If Teradata felt strongly about its arguments, Teradata could have filed a motion to stay six months ago, when it initially filed its transfer motion, or else roughly two months ago, when Realtime properly filed its objections. Teradata, of course, did neither.

Accordingly, this Court should deny Teradata's Motion.

II. **TERADATA CANNOT SATISFY ITS BURDEN OF DEMONSTRATING THAT A STAY IS APPROPRIATE HERE**

A district court has the inherent power to control its own docket, including the authority to determine when a stay is appropriate. *Luv N' Care, Ltd. V. Jackel Int'l*, Case No. 2:14-cv-

855-JRG, 2014 WL 5841501 at *3 (E.D. Tex. Nov. 10, 2014). Where a party moves for a stay, that party "bears a heavy burden to show why a stay should be granted" and that the request is "supported by a genuine necessity." *E.g., Sierra Club v. Fed. Emergency Mgmt. Agency*, 2008 U.S. Dist LEXIS 47405 at *19-20 (S.D. Tex. June 11, 2008).

Teradata falls well short of meeting its burden here. All three factors Teradata sets forth in its motion weigh against its proposed stay. At bottom, Teradata has failed to show there is a good reason for its proposed stay, let alone show a "genuine necessity" for it.

### A. Teradata's Proposed Stay Would Prejudice Realtime

Teradata argues that "a brief stay" in the suit would not prejudice Realtime. Motion at 2. This is demonstrably false.

Significantly, Teradata's proposed stay is not "brief" at all. Rather, staying the case against Teradata at this stage—in which the parties are exchanging P.R. 4-2 and 4-3 contentions on claim construction—would force Teradata off the current track of consolidated cases and likely result in a delay of **nearly one year**, which appears to be exactly what Teradata wants. Teradata itself admits as much when it says that, if its request to transfer to California is denied, "Teradata can certainly fall in line with whatever schedule is adopted for [Realtime's] four new cases." Motion at 2. Those new cases, however, were very recently filed and most Defendants have not even been served. Even if this Court quickly issues a scheduling order by May or June, and Teradata "falls in line" with the cases in that scheduling order, Realtime's case against Teradata likely would be delayed by nearly one year.

Regardless, Teradata' argument fails for several additional reasons. Realtime would suffer prejudice if this case were stayed due to the resulting delay. In *Ambato Media*, this Court noted that a stay of litigation "would unduly prejudice the patentee," who did not commercially

compete with the defendant, because the patentee "has an interest in the timely enforcement of its patent rights." *Ambato Media, LLC v. Clarion Co., Ltd.*, Case No. 2:09-cv-242-JRG, 2012 WL 194172 at *1 (E.D. Tex. Jan. 23, 2012). The same is true here. Further, a stay in this case, while the six related cases proceed, Realtime would be prejudiced by Teradata's tactical disadvantage. For example, if this case were stayed, Realtime would be at a tactical *disadvantage* because Teradata would have the tactical *advantage* of observing motions and related hearings regarding the asserted patent, including any claim-construction proceedings and, later, craft its arguments in a later proceeding, with the benefit of the information it has gained.

Teradata does not address any of the potential sources of prejudice. Instead, it simply assumes there will no prejudice for a one reason: because Realtime agreed to stay its unrelated action against Apple. Motion at 2. That argument fails. The facts here stand in stark contrast with Realtime's pending case against Apple, in which Realtime agreed to a stay. In that case, which involves different Realtime patent families, there is no consolidated action—there is only a single case against a single defendant. And that case is in its very beginning stages. Indeed, an initial scheduling conference has not yet taken place. These differences are meaningful here because the stay in Realtime's case against Apple actually would be "brief" and it would not result, in any case, in a stay that forces Apple off a track that includes consolidated defendants.

Simply put, Teradata has failed to show a lack of prejudice to Realtime. That failure alone is fatal to its motion.

### B. Teradata, On The Other Hand, Will Not Suffer Any Hardship If Its Request For A Stay Is Denied

Teradata's entire argument on the second factor is limited to two conclusory sentences. Moion at 3. Specifically, Teradata contends that it will incur "significant expenses" if this case were not stayed pursuant to its request because it will have to meet several "quickly

3

approaching" claim construction deadlines. *Id*. But those deadlines relate to work **it would have to do anyway**, regardless of the location of the district court in which Realtime's case against Teradata ultimately may be tried. Teradata's argument could have some minimal logic if, for example, Teradata were requesting a stay pending the outcome of a case-dispositive motion. But this is not the case. This only underscores the weakness of Teradata's request for a stay pending the resolution of its transfer motion.

### C. A Stay Would Not Further Judicial Efficiency In Avoiding Duplicative Litigation

Teradata also argues that "a stay will avoid risking waste of valuable judicial economy." Mot. at 3. While judicial economy and resources are no doubt valuable, Teradata's argument on this factor also is flawed and meritless. There would be no "duplicative litigation" or waste of judicial resources if Teradata's request for a stay were denied.

The only argument Teradata presents on this issue is that, if Teradata's motion to transfer were ultimately granted, this Court would have decided unnecessary claim construction issues. Motion at 3. But Teradata's argument fails no matter the outcome of its motion to transfer. Specifically, in light of the other six consolidated cases, this Court will have to decide the claim construction issues that will be before it **regardless** of Teradata's motion to transfer. For its part, Teradata fails to present any unique claim construction issues to support its conclusory argument, which cannot help Teradata meet its burden. *See, e.g., EMG Tech., LLV v. Apple, Inc.*, Case No. 6:09-cv-367, Dkt. 270 at 6 (E.D. Tex. Nov. 15, 2010) ("Staying the case based solely on the speculation of what might possibly happen . . . would be inefficient.) In any event, per the Court's docket control, all parties are coordinating to present this Court with claim construction

issues. These facts alone distinguish this case from the forty-six year old *McDonnell Douglas Corp. v. Polin* case on which Teradata wrongly relies.[1]

If anything, the parties and judicial economy here would be served from denying Teradata's motion to stay because any discovery or development of the parties' respective merits would not go to waste even if this case were transferred. Teradata's flawed arguments aside, this fact is true with respect to both claim construction and any fact discovery.

Teradata's own actions belie its argument of supposed waste of party or judicial resources. If Teradata felt strongly about its arguments, Teradata could have filed a motion to stay six months ago, when it initially filed its motion to transfer. It also could have filed a motion to stay roughly two months ago, when Realtime properly filed its objections on the transfer issue. Teradata did neither. Instead, Teradata opted to wait until last Friday to file its request for a stay.

In short, the third factor also weighs against a stay.

Finally, Teradata wrongly suggests that a stay is appropriate here because "the Federal Circuit [has] explained that it 'fully expect[s]' the moving defendant to file 'a motion to stay proceedings pending disposition of the transfer motion." Motion at 3-4. If this were true, then a stay would be appropriate based on the simple filing a transfer motion in any case. It is not.

The *In re Fusion-IO* case Teradata cites does not support its argument. *In re Fusion-IO, Inc.*, 489 F. App'x 465, 466 (Fed. Cir. 2012). In *In re Fusio-IO*, the petitioner sought mandamus relief to direct the court to rule on its motion to transfer. *Id*. The Federal Circuit—many months

---

[1] *McDonnell Douglas* is inapposite for other reasons as well. In that case, the Third Circuit merely stated the unremarkable point that a district court should decide a transfer motion before discovery is complete and before deciding the merits of the action. *McDonnell Douglas*, 429 F.2d 30 (3d Cir. 1970).

5

after the filing date for the original complaint—refused to do so. *Id*. Then, and only in passing, the Federal Circuit stated that, on remand, it "expected" Fusion-IO to re-file its motion to transfer along with a motion to stay proceedings pending disposition of that motion. *Id*. Even this dicta does not suggest that the district court should grant the motion to stay in that case, let alone suggest that such a motion is even appropriate in this, different case. And the mere fact that the Federal Circuit "expected" Fusion-IO to make a motion in that case did not relieve it of its burden of demonstrating the necessity of a stay. *In re Fusio-IO* is inapposite.[2]

### III. CONCLUSION

For the foregoing reasons, Teradata's Motion to stay pending this Court's decision on its motion to transfer to N.D. Cal. Or C.D. Cal. should be denied.

Dated:  March 23, 2016                                                           Respectfully submitted,


By: /s/ Reza Mirzaie by permission Claire A. Henry
Marc A. Fenster (CA SBN 181067) Lead Attorney
Email: mfenster@raklaw.com
Paul A. Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
Jeffrey Z.Y. Liao (CA SBN 288994)
Email: jliao@raklaw.com
Email: C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com
Adam S. Hoffman (CA SBN 218740)

---

[2] *Nexus Display Technologies, LLC v. Dell, Inc*., 2015 WL 5043069, at *5 (E.D. Tex. Aug. 25 2015), also does not support Teradata's argument.  Motion at 4.  In that case, **after denying** a motion to transfer, this Court merely stated that the movant did not need to file an unwarranted Petition for Writ of Mandamus for a supposed failure to quickly rule on the pending transfer motion.  *Id.* at n. 4. Instead, the movant could have asked the Court for a stay, if it felt so strongly about any potential prejudice or waste in that case.  *Id.*

Email: ahoffman@raklaw.com
John K. Woo (CA SBN 281132)
Email: jwoo@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile 310/826-6991

T. John Ward, Jr. (TX SBN 00794818)
E-mail: jw@wsfirm.com
Claire Abernathy Henry (TX SBN 24053063)
E-mail: claire@wsfirm.com
WARD, SMITH & HILL, PLLC
1127 Judson Road, Suite 220
Longview, Texas 75601
Tele: 903/757-6400
Facsimile 903/757-2323

**Attorneys for Plaintiff**
**REALTIME DATA LLC d/b/a IXO**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on this the 23rd day of March, 2016.

/s/ Claire Abernathy Henry