**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**

**TYLER DIVISION**

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO,<br><br>        Plaintiff,<br><br>        v.<br><br>ACTIAN CORPORATION, et al.,<br><br>        Defendants. | **Case No. 6:15-cv-463-RWS-JDL** |

**Plaintiff Realtime Data LLC's Motion to Strike the
Supplemental Expert Report of Dr. John Villasenor**

i

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................................................... 1

II.    RELEVANT FACTS ............................................................................................. 1

III.    ARGUMENT ......................................................................................................... 2

    A.    Dr. Villasenor's supplemental report should be stricken as untimely. ......................... 2

    B.    Dr. Villasenor's supplemental report is legally erroneous and should be excluded under FRE 702. ...................................................................................... 4

IV.    CONCLUSION ...................................................................................................... 6

I.     INTRODUCTION

Plaintiff Realtime Data LLC ("Realtime") moves to (1) strike the supplemental report of Defendant Riverbed Technology, Inc.'s ("Riverbed") infringement expert, Dr. John Villasenor, as untimely under FRCP 26 and the Court's Docket Control Order ("DCO") and (2) preclude Dr. Villasenor from offering any opinions at trial contained in the supplemental report.

Dr. Villasenor's supplemental report was served on February 15, 2017—almost three months after opening reports were due, two months after rebuttal reports were due, and only two days before the deadline for dispositive motions and *Dauberts*. The report is untimely and should be stricken under Rule 26 and this Court's DCO. Realtime is obviously prejudiced by such a late disclosure. Riverbed's purported justification for the belated disclosure of this report is also insufficient. Riverbed may claim it could not serve the report earlier because it addresses the opinions of Realtime's validity expert, Gabe Robins. But the DCO specifically provides timing for rebuttal reports and makes no provision for "reply" reports. Thus, Riverbed is essentially seeking to obtain an unauthorized and unjustified supplement—to Realtime's prejudice.

Further, the opinions expressed in the supplemental report are legally erroneous, will confuse the jury, and should independently be excluded under FRE 702. In the report, Dr. Villasenor does not compare the accused products to the claims. Indeed, his supplemental report does not address the asserted claims or the Court's constructions at all. Instead, he compares the accused products to a prior art reference and argues that, because Realtime's validity expert states this reference does not disclose limitations of the asserted patents, then the accused products do not infringe. This argument amounts to nothing more than a "practicing the prior art" argument which has been routinely rejected by the Federal Circuit.

II.    RELEVANT FACTS

Pursuant to the DCO, on November 23, 2016, Riverbed served a report by Dr. Clifford Reader offering opinions that the asserted patents are invalidated by several prior art references including the Williams '810 patent ("Williams").[1] Also pursuant to the DCO, on December 23,

---

[1] This reference is also the subject of a concurrently filed motion to exclude certain opinions of Defendant's invalidity and marking expert, Dr. Reader.

2016, Riverbed served the report of Dr. John Villasenor regarding non-infringement of the asserted patents. This report did not mention the Williams '810 patent.

On December 23, 2016, Realtime served the expert report of Dr. Gabriel Robins offering opinions on validity to rebut Dr. Reader's report. Portions of Dr. Robin's report discuss Williams, including his opinion that it does not include two methods of compression as required by the asserted claims. Dr. Robins was deposed on January 17, 2017.

On February 15, 2017—almost three months after opening expert reports were due, two months after rebuttal reports were served, and weeks after Dr. Robins's deposition, Riverbed served a supplemental report of Dr. John Villasenor. Ex. 1 (Supplemental Report). Even though Dr. Villasenor previously offered opinions on non-infringement only, the Supplemental Report focuses exclusively on Williams and Dr. Robins's opinions on that patent.

Specifically, in the supplemental report, Dr. Villasenor asserts that Williams describes a "deduplication scheme." *Id.* ¶ 12. He asserts that Williams "parallels the description I provided in the Villasenor December 2016 Report with respect to the accused Riverbed Products." *Id.* ¶ 13. Dr. Villasenor then asserts that Williams does not describe compression and that "Realtime's expert Dr. Robins shares my view that the subblock scheme in Williams is not compression." *Id.* ¶¶ 13–19. He concludes that because Riverbed's accused products operate similarly to Williams, "SDR [deduplication] in the Riverbed products is not compression." *Id.* ¶ 26.

## III.   ARGUMENT

### A.   Dr. Villasenor's supplemental report should be stricken as untimely.

"Rule 26(a) requires the expert's initial report to include 'a complete statement of all opinions the witness will express and the basis and reasons for them.'" *Culter v. Louisville Ladder, Inc.*, No. 4:10-4684, 2012 WL 2994271, at *5 (S.D. Tex. July 20, 2012) (quoting Fed. R. Civ. P. 26(a)(2)(B)(i)) (emphasis in original). Rule 26 further requires that a party must disclose the opinions of its experts "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A party who fails to timely disclose bears the burden of proving that such failure is

harmless. *Heidtman v. County of El Paso,* 171 F.3d 1038, 1040 (5th Cir. Tex. 1999). The Court

considers four factors to determine whether a Rule 26 violation is harmless: "(1) [the party's]

explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the

potential prejudice to [the opposing party] in allowing the evidence, and (4) the availability of a

continuance." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009).

  Purported "supplemental" reports offered not because of newly learned information or to

correct an error in the initial report, but rather to bolster the original report, are routinely stricken.

*Culter*, 2012 WL 2994271 at *5. "Courts distinguish 'true supplementation' (e.g. correcting

inadvertent errors or omissions) from gamesmanship," and thus have repeatedly rejected

attempts to supplement by serving a "new and improved" expert report. *Gallagher v. S. Source

Packaging, L.L.C.*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008)).

  The DCO in this action (as amended) required all opening expert reports to be served on

November 23, 2016. There is no dispute that the supplemental report was untimely served almost

*three months after this deadline*, without leave of Court and without prior notice to Realtime's

counsel. Because Riverbed cannot meet its burden of showing its violation of Rule 26 and this

Court's DCO was justified or harmless, the supplemental report should be stricken.

  *First,* Riverbed's explanation for the failure to earlier disclose the evidence—that it did

not learn of Dr. Robins's opinion until his deposition—is meritless. The DCO does not permit

reply expert reports. Thus, even if an opposing expert may have taken a new position in

deposition (which is not the case here), this is not a proper basis for "supplementing" an expert

report. Such a justification would allow parties to constantly supplement their expert reports and

wreak havoc in every case.

  Further, Riverbed's claim that it needed to wait for Dr. Robins's deposition is false. The

supplemental report relies primarily on the opinions expressed in Dr. Robins's report, which was

served on December 23, 2016. *See* Ex. 1 (Supplemental Report) ¶¶ 19–22. Indeed, the

supplemental report devotes a single paragraph to paragraph to Dr. Robins's deposition (*see id.* ¶

23 (citing Robins Deposition at 272:6–274:14)), but seventeen paragraphs (the vast majority of

the report) to the Williams reference itself and Dr. Robins's report. *See id.* ¶¶ 6–22. In any event, Dr. Robins's deposition occurred on January 26, 2017, and Riverbed cannot explain why it waited three weeks to serve an 11-page report.

*Second*, the supplemental report's opinions are not important to Riverbed's case as they ancillary to the core issue of infringement. The opinions expressed do not compare the accused products to the construed claims (as is required for an infringement analysis), but instead opine that there is no infringement because the accused products are purportedly similar to the prior art. For this reason, the opinions are also legally erroneous as explained in greater detail below.

*Third*, as ancillary and legally improper opinions, Riverbed would face no harm if the report were stricken. In contrast, because the opinions create the risk for jury confusion, Realtime would be prejudiced if the report were not stricken. This is in addition to Realtime's obvious prejudice stemming from the supplemental report being served two days before the deadline for dispositive and *Daubert* motions. Thus, Realtime had only two days to analyze the report and prepare this motion—which it was required to file without the benefit of Dr. Villasenor's deposition testimony.[2]

*Fourth*, a continuance would not remedy Realtime's harm. The case schedule is compressed and trial only a few months away. Further, as legally impermissible opinions, the untimely supplemental report should be stricken regardless of a possible continuance.

### B.  Dr. Villasenor's supplemental report is legally erroneous and should be excluded under FRE 702.

Dr. Villasenor's non-infringement opinions in the supplemental report are based not on Court's constructions (as is required), but on his apparent interpretation of Realtime's invalidity theories. *See, e.g., SSL Servs., LLC v. Citrix Sys.,* 940 F. Supp. 2d 480, 491 (E.D. Tex. 2013) (proper expert opinion on infringement must compare the claims as construed by the Court to the

---

[2] Due to scheduling conflicts, Dr. Villasenor's deposition was postponed until February 27, 2017. Realtime agreed to this date because it did not deem anything in Dr. Villasenor's initial report to warrant a *Daubert* motion. Realtime would not have agreed to delay the deposition if it had been timely served with the supplemental report's improper opinions.

accused devices). Such opinions are legally erroneous and should independently be excluded.

An accused infringer "may not compare an accused product to the prior art for purposes of establishing non-infringement or invalidity," and "may not attempt to affirmatively prove invalidity [or infringement] by arguing [the plaintiff's] infringement theories read on or encompass the prior art." *Core Wireless Licensing S.A.R.L. v. LG Elecs.*, Inc., No. 2:14-CV-911-JRG-RSP, 2016 WL 4718963, at *3 (E.D. Tex. July 12, 2016), report and rec. adopted sub nom., 2016 WL 4719791 (E.D. Tex. Sept. 8, 2016). This approach serves two important purposes. "First, it avoids jury confusion by focusing the inquiry on the claims." *Id.* "Second, this approach comports with Fed. R. Evid. 702, which requires the proponent of expert testimony to show the testimony is both relevant and reliable." *Id.*

Dr. Villasenor makes this error and also the same error courts have routinely rejected in the invalidity context. For invalidity, "[a]n expert must 'compare the construed claims to the prior art.'" *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1311 (Fed. Cir. 2008). The Federal Circuit has made clear that a defendant may *not* prove invalidity by arguing that the accused product is allegedly similar to the prior art. *See, e.g., Zenith Elecs. Corp. v. PDI Commun. Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008) (rejecting as legally insufficient the argument that "to the extent the [accused product] is considered to practice" particular claim limitations, then so did a particular prior art reference).

For this reason, invalidity opinions that are based on the infringement theories of the patentee are properly excluded. *TiVo*, 516 F.3d at 1311 (affirming district court decision prohibiting defendant's expert from testifying about how the prior art related to the plaintiff's expert's "view of the claims"). Dr. Villasenor makes the same error in reverse—presenting infringement opinions based on the patentee's invalidity theories—and his opinions are

excludable under the same reasoning.

Indeed, the opinions obtained in Dr. Villasenor's supplemental report amount to nothing more than "practicing the prior art" arguments presented under the guise of non-infringement opinions. The supplemental report asserts that because the accused products' use of data deduplication allegedly operates similarly to Williams, and Dr. Robins opines that Williams '810 is not a compression patent, then Riverbed does not infringe because its deduplication method is not compression. But in doing so, Dr. Villasenor fails to compare the accused products to the claims as construed by the Court—neither the claim language of any asserted patent nor *any* of the Court's constructions are even referenced in the report. Instead, he compares the accused products to Williams and uses a dispute about the scope of this prior art reference as the basis of his non-infringement opinions. This is legally erroneous.

## IV.    CONCLUSION

To maintain control of its docket, the Court should strike Dr. Villasenor's supplemental report served almost three months after opening reports, two months after rebuttal reports, and two days before dispositive motions. To allow the report would encourage parties to constantly supplement their expert reports and wreak havoc in every case.

Dated: February 17, 2017

Respectfully submitted,

By: /s/ Philip X. Wang
Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Paul Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com

Philip X. Wang (CA SBN 262239)
Email: pwang@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile 310/826-6991

T. John Ward, Jr. (TX SBN 00794818)
E-mail: jw@wsfirm.com
Claire Abernathy Henry (TX SBN 24053063)
E-mail: claire@wsfirm.com
WARD, SMITH & HILL, PLLC
P. O. Box 1231
Longview, Texas 75606
Tele: 903/757-6400
Facsimile 903/757-2323

**Attorneys for Plaintiff**
**REALTIME DATA LLC d/b/a IXO**

## CERTIFICATE OF CONFERENCE

Counsel for parties met and conferred on February 16, 2017 and the parties were unable to reach an agreement for the dispute regarding Realtime's motion to strike the supplemental expert report of Dr. Villasenor. Discussions conclusively ended in an impasse, leaving an open issue for resolution by the Court.

/s/ Philip X. Wang

## CERTIFICATE OF SERVICE

I certify that the counsel of record who are deemed to have consented to electronic service are being served on February 17, 2017, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Philip X. Wang