## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO,<br>Plaintiff,<br>v.<br>ACTIAN CORPORATION et al.,<br>Defendants. | **LEAD Case No. 6:15-cv-463-RWS-JDL** |
| REALTIME DATA LLC d/b/a IXO,<br>Plaintiff,<br>v.<br>RIVERBED TECHNOLOGY, INC.,<br>Defendant. | **Case No. 6:15-cv-468-RWS-JDL** |

### PROPOSED JOINT PRETRIAL ORDER

Pursuant to the Amended Docket Control Order (Dkt. No. 462) and Rule 16 of the Federal Rules of Civil Procedure, Plaintiff Realtime Data LLC d/b/a/ IXO ("Realtime") and Defendant Riverbed Technology, Inc., ("Riverbed") submit this Proposed Joint Pretrial Order. Subject to the other rulings made at the May 4, 2017 Pretrial Conference in Tyler, Texas, the Court enters this Order.

## I.    COUNSEL FOR THE PARTIES

Attorneys for Plaintiff Realtime:

Marc A. Fenster (LEAD ATTORNEY)
Reza Mirzaie
Adam S. Hoffman
Brian D. Ledahl
C. Jay Chung
James N. Pickens
Jeffrey Zhi Yang Liao
Paul Anthony Kroeger
Philip X. Wang

RUSS AUGUST & KABAT
12424 Wilshire Boulevard
Suite 1200

Los Angeles, CA 90025
310/826-7474
Fax: 310/826-6991
Email: mfenster@raklaw.com
Email: rmirzaie@raklaw.com
Email: ahoffman@raklaw.com
Email: bledahl@raklaw.com
Email: jchung@raklaw.com
Email: jpickens@raklaw.com
Email: jliao@raklaw.com
Email: pkroeger@raklaw.com
Email: pwang@raklaw.com


Andrea Leigh Fair
Thomas John Ward, Jr.
Claire Abernathy Henry
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
903-757-6400
Fax: 903-757-2323
Email: andrea@wsfirm.com
Email: jw@wsfirm.com
Email: claire@wsfirm.com

Attorneys for Defendant Riverbed:

John R. Emerson
Texas Bar No. 24002053
russ.emerson@haynesboone.com
Debra J. McComas
Texas Bar No. 00794261
debbie.mccomas@haynesboone.com
Charles M. Jones II
Texas Bar No. 24054941
charlie.jones@haynesboone.com
Matthew P. Chiarizio
Texas Bar No. 24087294
matthew.chiarizio@haynesboone.com


Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000 (telephone)
(214) 200-0615 (fax)

## II.     STATEMENT OF JURISDICTION

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 1 *et seq.* Subject-matter jurisdiction, personal jurisdiction, and venue are not disputed in this case.

## III.    NATURE OF THE ACTION

### A.     Realtime's Statement Regarding Description of the Case.

In this patent-infringement action, Realtime alleges that Riverbed has infringed and continues to infringe certain claims of U.S. Patent Nos. 8,643,513 ("'513 Patent"), 7,415,530 ("'530 Patent"), and 9,116,908 ("'908 Patent") (collectively, the "Patents-in-Suit"). Realtime contends that Riverbed's infringement is willful. Realtime has asserted the following claims of the Patents-in-Suit (collectively, the "Asserted Claims"):

'513 Patent claims 1, 2, 6, 12;

'530 Patent claims 1, 2, 14, 19; and

'908 Patent claims 1, 2, 9, 21.

The accused products in this case are SteelHead models 520, 1020, 2020, 1520, 3020, 3520, 5520, 6020, 1050, 2050, 250, 550, 5050, 6050, 7050, CX555, 755, 1555, EX560, 760, 1160, 1260, CX5055, 7055, C255, EX1360, VCX255, VCX555, CX555, CX570, CX770, EX1360, CX3070, 5070, 7070, Steelhead Mobile, and Steelhead Software as a Service (collectively, "Accused Products"). Realtime seeks a reasonable royalty for Riverbed's alleged infringement. Realtime seeks its costs, expenses, and attorneys' fees under 35 U.S.C. § 285, prejudgment and post-judgment interest, accounting, and any other relief the Court deems appropriate.

### B.      Riverbed's Statement Regarding Description of the Case.

Riverbed seeks a declaratory judgment that the Asserted Claims of the Patents-in-Suit are invalid and not infringed. Riverbed also seeks to recover its costs and reasonable attorneys' fees from Realtime as provided in 35 U.S.C. § 285 or as otherwise allowed by law, together with any other relief the Court deems appropriate.

Riverbed denies Realtime's claims of infringement, either literally or under the doctrine of equivalents. Riverbed denies that it has directly or indirectly infringed any of the Patents-in-Suit. Riverbed denies that it contributed to or induced any third party's alleged infringement of the Patents-in-Suit. Riverbed denies that Realtime is entitled to damages, other monetary relief, injunctive relief, or any other kind of relief. Riverbed denies that Realtime is entitled to an accounting. Riverbed denies that Realtime is entitled to pre-judgment or post-judgment interest. Riverbed denies that its alleged infringement was willful. Riverbed denies that this case is exceptional as to Riverbed's actions and denies that Realtime is entitled to recover any of its attorneys' fees from Riverbed.

## IV.    CONTENTIONS OF THE PARTIES

### A.      Realtime's Statement of Its Contentions.

This is a patent infringement case. Realtime is the owner of the Patents-in-Suit. As the owner, Realtime has the right to exclude others from using the inventions, and to enforce, sue and recover damages for past and future infringement of the patents. The Accused Products infringe the Patents-in-Suit, and Realtime is entitled to monetary compensation for this infringement.

The inventions at issue in the Patents-in-Suit relate to improved, particularized systems of digital-data compression to address problems specific to the compression of "digital data". Riverbed directly and/or indirectly infringes, either literally or under the Doctrine of Equivalents,

each of the Patents-in-Suit by making, using, offering for sale, and/or selling within the United States, importing into the United States, contributing to infringement, and/or inducing third parties to use Riverbed products or services that meet or are used to meet the limitations of the Asserted Claims of the Patents-in-Suit. Realtime contends that Riverbed is liable for willful infringement.  Realtime contends that Riverbed cannot show that any of the asserted claims are invalid, nor can Riverbed show that any of its affirmative defenses have any merit.[1]

Realtime seeks both pre-verdict and post-verdict damages and an accounting, if necessary, to compensate Realtime for Riverbed's infringement, but in no event less than a reasonable royalty. Realtime also seeks prejudgment and post-judgment interests and costs, including enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

**B.   Riverbed's Statement of Its Contentions.**

By providing these contentions, Riverbed does not concede that all of these issues are appropriate for trial, nor does it waive any of the issues presented or that will be presented in its motions for summary judgment, motions to strike, or motions *in limine*.

1.    Riverbed contends that Realtime will be unable to prove that Riverbed directly or indirectly infringed any of the Patents-in-Suit, either literally or under the doctrine of equivalents.

2.    Riverbed contends that it has not infringed, and does not infringe, directly or indirectly, any of the Patents-in-Suit, either literally or under the doctrine of equivalents, for at least the reasons set forth in the expert report of Dr. John Villasenor and the supplemental expert

---

[1] Realtime does not concede that issues Riverbed raises are appropriate for trial, nor does Realtime waive any of the issues presented in its motion to strike or motions *in limine*.

report of Dr. John Villasenor.

3.      Riverbed contends that it has not infringed, and does not infringe, directly or indirectly, any of the Patents-in-Suit, either literally or under the doctrine of equivalents, for at least the reasons set forth in Riverbed's Motion for Summary Judgment of Non-Infringement (Dkt. 436) and Riverbed's Motion for Partial Summary Judgment On Direct and Indirect Infringement (Dkt. 437).

4.      Riverbed contends that Realtime will be unable to prove that Riverbed's actions induced any third party's actions that allegedly directly infringed any of the Patents-in-Suit.

5.      Riverbed contends that Realtime will be unable to prove that Riverbed knew or should have known that any of its actions would induce actual infringement of any of the Patents-in-Suit.

6.      Riverbed contends that Realtime will be unable to prove that Riverbed had a specific intent to induce any third party to infringe any of the Patents-in-Suit.

7.      Riverbed contends that none of the asserted claims of the Patents-in-Suit require only the capability to perform a particular claim.

8.      Riverbed contends that Realtime will be unable to prove any specific act of infringement by Riverbed regarding any of the Patents-in-Suit.

9.      Riverbed contends that Realtime will be unable to prove that any of the Accused Products necessarily infringe any of the Patents-in-Suit.

10.     Riverbed contends Realtime will be unable to prove any specific act of infringement by any third party regarding any of the Patents-in-Suit.

11.     Riverbed contends that making, offering to sell, or selling the Accused Products could not infringe any asserted method claim of the Patents-in-Suit.

12.      Riverbed contends it is entitled to a declaratory judgment that the asserted claims of the Patents-in-Suit are invalid under one or more of 35 U.S.C. §§ 102 and 103.[2]

13.      Riverbed contends that the asserted claims of the '513 Patent are invalid because they are anticipated under 35 U.S.C. § 102 for at least the reasons stated in Riverbed's Invalidity Contentions and the expert report of Dr. Clifford Reader regarding invalidity.

14.      Riverbed contends that the asserted claims of the Patents-in-Suit are invalid because they are obvious under 35 U.S.C. § 103 for at least the reasons stated in Riverbed's Invalidity Contentions and the expert report of Dr. Clifford Reader regarding invalidity.

15.      Riverbed contends that the '513 Patent is not entitled to December 11, 1998, as a priority date.

16.      Riverbed contends that the '513 Patent is entitled to a priority date no earlier than October 29, 2001, for at least the reasons stated in Riverbed's Invalidity Contentions and the expert report of Dr. Clifford Reader regarding invalidity.

17.      Riverbed contends that Realtime should receive nothing by way of its Complaint, as amended, and the Court should award Riverbed its reasonable attorneys' fees and costs as provided in 35 U.S.C. § 285 or as otherwise provided by law.

18.      Riverbed contends that Realtime's claims for damages and equitable relief are barred by the doctrine of equitable estoppel.

19.      Riverbed contends that Realtime, through misleading conduct or silence, led Riverbed to reasonably infer that Realtime did not intent to enforce the Patents-in-Suit against Riverbed.

_____

[2] While Riverbed does not intend to present the issues to the jury, Riverbed contends, and reserves the right to argue on appeal or otherwise, that the Patents-in-Suit are also invalid under 35 U.S.C. §§ 101 and 112.

20.     Riverbed contends that it relied on Riverbed's misleading conduct or silence that led Riverbed to reasonably infer that Realtime did not intent to enforce the Patents-in-Suit against Riverbed.

21.     Riverbed contends that it would be materially prejudiced if Realtime is allowed to proceed with its claims against Riverbed.

22.     Riverbed contends that Realtime's claims for pre-suit damages are barred by 35 U.S.C. § 287(a) for at least the reasons stated in the expert report of Dr. Clifford Reader related to marking of third-party products.

23.     Riverbed contends that Realtime cannot meet its burden of proving that it complied with 35 U.S.C. § 287(a).

24.     Riverbed contends that Realtime did not provide actual notice of its infringement claims to Riverbed with respect to the '530 Patent or the '513 Patent prior to suing Riverbed on May 8, 2015.

25.     Riverbed contends that Realtime had a duty to make reasonable efforts to ensure that its licensees to the '530 and '513 Patents complied with the marking requirements of 35 U.S.C. § 287(a).

26.     Riverbed contends that, under a license from Realtime, third party F5 has sold unmarked products before May 8, 2015, that, under Realtime's infringement theories in this case, practice the '530 and '513 Patents.

27.     Riverbed contends that, under a license from Realtime, third party Blue Coat sold unmarked products before May 8, 2015, that, under Realtime's infringement theories in this case, practice the '530 and '513 Patents.

28.     Riverbed contends that Riverbed's alleged conduct did not damage Realtime and

that Realtime is not entitled to damages (including any pre-judgment or post-judgment interest).

29.     Riverbed contends that Realtime is not entitled to any supplemental damages, any accounting for damages, or attorneys' fees, experts' fees, expenses, or costs.

30.     Riverbed contends that, even if the jury finds infringement of any asserted claim of the Patents-in-Suit, Realtime's proposed and claimed damages award is excessive and unsupportable.

31.     Riverbed contends that Realtime is not entitled to any form of injunctive relief, even if the jury finds infringement of any asserted claim of the Patents-in-Suit.

32.     Riverbed contends that Realtime's claims for equitable relief are barred by the equitable doctrine of laches.[3]

33.     Riverbed contends that the Court should not condition the denial of injunctive relief for Realtime on Riverbed's payment of reasonable royalties for future infringement.

34.     Riverbed contends that Realtime cannot show it would be irreparably harmed by any continued use of the Accused Products.

35.     Riverbed contends that Realtime cannot show that there is no remedy at law that would be adequate to compensate Realtime for continued use of the Accused Products.

36.     Riverbed contends that Realtime cannot show that, considering the balance of hardships between Riverbed and Realtime, a remedy in equity is warranted.

37.     Riverbed contends that Realtime cannot show that the public interest would be served by a permanent injunction.

---

[3] Riverbed also asserted the equitable theory of laches as a bar to Realtime's recovery of damages but withdrew that theory as a bar to damages after the Supreme Court's recent decision in *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods, LLC*, Case No. 15-927 (March 21, 2017). Thus, Riverbed has withdrawn that claim as to damages and does not seek to submit that issue to the jury here as a bar to damages. Riverbed nonetheless reserves the claim of laches with respect to any injunctive relief Realtime may seek.

38.     Riverbed contends that if a jury awards a lump sum royalty to Realtime covering the life of the Patents-in-Suit, Realtime would be precluded from obtaining ongoing royalties from Riverbed or a permanent injunction.

39.     Riverbed contends that Realtime did not plead that Riverbed willfully infringed the '513 Patent or the '908 Patent and, therefore, Realtime is estopped from presenting any such theory at trial.

40.     Riverbed contends that Realtime will be unable to prove that any alleged infringement by Riverbed was willful.

41.     Riverbed contends that Realtime will be unable to prove that Riverbed intentionally or knowingly infringed any asserted claim of any of the Patents-in-Suit.

42.     Riverbed contends that Realtime will be unable to prove that Riverbed engaged in allegedly infringing conduct that was willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

43.     Riverbed contends that this is an exceptional case entitling Riverbed to an award of its reasonable attorneys' fees incurred in connection with this action as provided in 35 U.S.C. § 285.

## V.     STIPULATIONS AND UNCONTESTED FACTS

### A.     Realtime's and Riverbed's Statement of Uncontested Facts

**Parties:**

1.     Realtime Data, LLC d/b/a IXO is a New York limited liability company.

2.     Riverbed Technology, Inc. is a Delaware corporation with its primary office in San Francisco, California.

**Patents-in-Suit:**

3.     Realtime is the owner of the Patents-in-Suit by assignment.

4.      The U.S. patent application that led to the '513 Patent was filed June 6, 2011, and the patent issued on February 4, 2014.

5.      The '513 Patent is entitled "Data compression systems and methods."

6.      Claims 1, 2, 6, and 12 of the '513 Patent are at issue and asserted in this action.

7.      The named inventor of the '513 Patent is James J. Fallon.

8.      The '513 Patent expires on November 2, 2019.

9.      The '530 Patent has a priority date of March 11, 1999.

10.     The U.S. patent application that led to the '530 patent was filed October 26, 2006, and the patent issued on August 19, 2008.

11.     The '530 Patent is entitled "System and methods for accelerated data storage and retrieval."

12.     Claims 1, 2, 14, and 19 of the '530 Patent are at issue and asserted in this action.

13.     The named inventor of the '530 Patent is James J. Fallon.

14.     The '530 Patent expires on March 11, 2019.

15.     The '908 Patent has a priority date of March 11, 1999.

16.     The U.S. patent application that led to the '908 Patent was filed June 12, 2014, and the patent issued on August 25, 2015.

17.     The '908 Patent is entitled "System and methods for accelerated data storage and retrieval."

18.     Claims 1, 2, 9, and 21 of the '908 Patent are at issue and asserted in this action.

19.     The named inventor of the '908 Patent is James J. Fallon.

20.     The '908 Patent expires on March 11, 2019.

21.     In or around March 2012, Realtime first provided information to Riverbed about its patent portfolio, which at that time included the '530 Patent, but not the '513 or '908 Patents.

**Person of Ordinary Skill in the Art:**

22.     A person of ordinary skill at the respective times of the alleged inventions of the Patents-in-Suit would have had at least an undergraduate degree in electrical engineering, computer science, or a related field, and two years of experience in information processing, including compression and storage. Alternatively, a person of ordinary skill with less than the amount of educational training noted above could have had a correspondingly greater amount of experience in the relevant technologies.

**Accused Products:**

23.     Realtime accuses the following products of infringing the asserted claims of the asserted patents:  SteelHead models 520, 1020, 2020, 1520, 3020, 3520, 5520, 6020, 1050, 2050, 250, 550, 5050, 6050, 7050, CX555, 755, 1555, EX560, 760, 1160, 1260, CX5055, 7055, C255, EX1360, VCX255, VCX555, CX555, CX570, CX770, EX1360, CX3070, 5070, 7070, Steelhead Mobile, and Steelhead Software as a Service.

## VI.     CONTESTED ISSUES OF FACT AND LAW

The parties identify the following issues that remain to be litigated. To the extent any issues of law discussed below is deemed to be an issue of fact, or any issue of fact deemed to be an issue of law, it is incorporated into the appropriate section. The parties reserve the right to identify additional factual or legal issues that may arise, including those issues raised in any motions *in limine*.

**A.     Realtime's Statement of Contested Issues of Fact and Law.**

**Infringement:**

1.     Whether Realtime has shown by a preponderance of the evidence that Riverbed has directly or indirectly infringed and is directly or indirectly infringing any of the Asserted Claims of the Patents-in-Suit, literally, or under the doctrine of equivalents.

2.     Whether Realtime has shown that Riverbed's infringement is willful.

**Invalidity:**

3.     Whether Riverbed has shown by clear and convincing evidence that the asserted prior art reference or references invalidate any of the Asserted Claims.

**Patent Damages/Remedies:**

4.     Whether Realtime is entitled to a "reasonable royalty" under 35 U.S.C. section 284 for Riverbed's infringement of the Patents-in-Suit if proven, and the total amount of such royalty.

5.     Whether and how much damages, costs, expenses, prejudgment and post-judgment interest, trebling of damages under 35 U.S.C. § 284, accounting, supplemental damages, attorneys' fees under 35 U.S.C. § 285, and any other relief to award to Realtime.

**B.     Riverbed's Statement of Contested Issues of Fact and Law.**

By providing this statement, Riverbed does not concede that all of these issues are appropriate for trial. Further, Riverbed does not waive any of its pending motions or motions to be filed, nor does Riverbed concede any issues previously decided adversely to Riverbed during summary-judgment proceedings or otherwise.[4]

1.     Whether Riverbed is entitled to judgment that the asserted claims of the '530

---

[4] While Riverbed does not intend to present the issues to the jury, Riverbed contends, and reserves the right to argue on appeal or otherwise, that contested issues of law and fact remain on the following: (1) whether the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 101 because they fail to claim patentable subject matter; and (2) whether the Patents-in-Suit are invalid under 35 U.S.C. § 112 for at least the reasons stated in Riverbed's Invalidity Contentions.

Patent are invalid.

2.      Whether the asserted claims of the '530 Patent are invalid because they are obvious for at least the reasons stated in Riverbed's Invalidity Contentions and the export report of Dr. Clifford Reader regarding invalidity.

3.      Whether Riverbed is entitled to judgment that the asserted claims of the '513 Patent are invalid.

4.      Whether the asserted claims of the '513 Patent are invalid because they are anticipated for at least the reasons stated in Riverbed's Invalidity Contentions and the expert report of Dr. Clifford Reader regarding invalidity.

5.      Whether the asserted claims of the '513 Patent are invalid because they are obvious for at least the reasons stated in Riverbed's Invalidity Contentions and the export report of Dr. Clifford Reader regarding invalidity.

6.      Whether Riverbed is entitled to judgment that the asserted claims of the '908 Patent are invalid.

7.      Whether the asserted claims of the '908 Patent are invalid because they are obvious for at least the reasons stated in Riverbed's Invalidity Contentions and the export report of Dr. Clifford Reader regarding invalidity.

8.      Whether Realtime is entitled to rely on its claimed priority date for the '513 Patent.

9.      Whether the correct priority date for the '513 Patent is on or after October 29, 2001.

10.     Whether Realtime has proved by a preponderance of the evidence that Riverbed directly infringed any of the asserted claims of the Patents-in-Suit.

11.     Whether Realtime has proved by a preponderance of the evidence that any third party directly infringed any asserted claim of the Patents-in-Suit by using an Accused Product.

12.     Whether Realtime has proved by a preponderance of the evidence that Riverbed induced any third-party to directly infringe any asserted claim of any of the Patents-in-Suit.

13.     Whether Riverbed is entitled to judgment that the Accused Products do not infringe the '530 Patent.

14.     Whether Realtime's allegations of infringement of the '530 Patent should be dismissed with prejudice.

15.     Whether Riverbed is entitled to judgment that the Accused Products do not infringe the '513 Patent.

16.     Whether Realtime's allegations of infringement of the '513 Patent should be dismissed with prejudice.

17.     Whether Riverbed is entitled to judgment that the Accused Products do not infringe the '908 Patent.

18.     Whether Realtime's allegations of infringement of the '908 Patent should be dismissed with prejudice.

19.     Whether Realtime's licensees marked products that practice the '530 Patent in accordance with 35 U.S.C. 287(a).

20.     Whether Realtime's licensees marked products that practice the '513 Patent in accordance with 35 U.S.C. 287(a).

21.     Whether Realtime made reasonable efforts to ensure that its licensees to the '530 and '513 Patents complied with the marking requirements of 35 U.S.C. § 287(a).

22.     Whether Realtime's claims are barred by equitable estoppel.[5]

23.     Whether Realtime's claims for equitable relief are barred by laches.[6]

24.     What amount of monetary damages, if any, Realtime is entitled to if (1) any of the asserted claims of the '530 Patent are found to be valid and (2) Realtime proves infringement of those claims by a preponderance of the evidence.

25.     What amount of monetary damages, if any, Realtime is entitled to if (1) any of the asserted claims of the '513 Patent are found to be valid and (2) Realtime proves infringement of those claims by a preponderance of the evidence.

26.     What amount of monetary damages, if any, Realtime is entitled to if (1) any of the asserted claims of the '908 Patent are found to be valid and (2) Realtime proves infringement of those claims by a preponderance of the evidence.

27.     Whether, if (1) any of the asserted claims of the Patents-in-Suit are found to be valid, and (2) Realtime has proved infringement of those claims by a preponderance of the evidence, Realtime is entitled to an injunction.

28.     If Realtime is entitled to an injunction, the scope and duration of such an injunction.

29.     Whether, if (1) any of the asserted claims of the Patents-in-Suit are found to be valid, and (2) Realtime has proved infringement of those claims by a preponderance of the

---

[5] Although equitable estoppel is ultimately an equitable defense for the Court to decide, Riverbed urges the Court to submit the question of equitable estoppel to the jury for an advisory determination. *Infra*, Part VII.B.

[6] Riverbed also asserted the equitable theory of laches as a bar to Realtime's recovery of damages but withdrew that theory as a bar to damages after the Supreme Court's recent decision in *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods, LLC*, Case No. 15-927 (March 21, 2017). Thus, Riverbed has withdrawn that claim as to damages and does not seek to submit that issue to the jury here as a bar to damages. Riverbed nonetheless reserves the claim of laches with respect to any injunctive relief Realtime may seek.

evidence, Riverbed's infringement was willful.

30.     What amount of monetary damages Realtime is entitled to if (1) any of the asserted claims of the Patents-in-Suit are found to be valid, (2) Realtime proves willful infringement of those claims by a preponderance of the evidence.

31.     Whether Riverbed is entitled to recover its costs from Realtime and, if so, in what amount.

32.     Whether this case is an exceptional case pursuant to 35 U.S.C. § 285 and whether Riverbed is entitled to an award of attorneys' fees against Realtime.

33.     Whether the following facts have been established:[7]

   a.   Realtime granted F5 Networks, Inc. ("F5") a license, effective October 19, 2009, that includes the '530 and '513 Patents (the "F5 License").

   b.   Realtime granted Blue Coat Systems, Inc. ("Blue Coat") a license, effective October 19, 2009, that includes the '530 and '513 Patents (the "Blue Coat License").

   c.   F5 made and sold BIG-IP products continuously from at least 2008 through the filing of the complaint in this case.

   d.   F5 made and sold WANJet products after the effective date of the F5 License.

   e.   Blue Coat made and sold ProxySG products continuously from at least 2008 through the filing of the complaint in this case.

---

[7] Realtime failed to challenge any of the facts in paragraphs 35(a)-(l) of this section when Riverbed presented them as Undisputed Material Facts in its Motion For Partial Summary Judgment Barring Pre-Suit Damages (Dkt. 438 at 2-4), as required by L.R. CV-56(b).  Thus, Riverbed's position is that Realtime has admitted these facts are true, and they should be included in the Stipulations and Uncontested Facts section of this Order.

f.   Since at least October 2009, F5 has not marked any product it made or sold with the number of any of the Patents-in-Suit.

g.   Since at least January 2010, Blue Coat has not marked any product it made or sold with the number of any of the Patents-in-Suit.

h.   The F5 License does not require F5 to mark any of its products with the number of any of the Patents-in-Suit.

i.   The Blue Coat License does not require Blue Coat to mark any of its products with the number of any of the Patents-in-Suit.

j.   Since at least October 2009, Realtime has never requested that F5 mark any of F5's products with the number of any of the Patents-in-Suit, including the '530 and '513 Patents.

k.   Since at least October 2009, Realtime has never requested that Blue Coat mark any of Blue Coat's products with the number of any of the Patents-in-Suit, including the '530 and '513 Patents.

l.   Realtime did not provide actual notice to Riverbed of Riverbed's alleged infringement of either of the '530 Patent or the '513 Patent before Realtime filed its complaint in this case.

## VII.   STATEMENTS CONCERNING BIFURCATION

### A.   Realtime's Statement.

As an initial matter, Realtime disagrees that equitable estoppel should be tried at all because Riverbed did not disclose any contentions regarding its equitable estoppel during discovery in this case. For instance, Riverbed never even mentioned equitable estoppel in its response to Realtime's Common Interrogatory No. 4 seeking identification and explanation for

Riverbed's equitable defenses. *See, e.g.,* Riverbed's 2d Supp. Resp. (dated Sept. 30, 2016) to Rog. No. 4.

Realtime contends that, if Riverbed is allowed to present its equitable defense, such as equitable estoppel, the Court should bifurcate Riverbed's equitable defenses, which should be tried to the Court, at the Court's convenience, at a date after the conclusion of the jury trial. Fed. R. Civ. Pro. 42(b) allows a court, "[f]or convenience, to avoid prejudice, or to expedite and economize, [to] order a separate trial of one or more separate issues, claims, crossclaims, counterclaims…" so long as this does not violate a litigant's right to a jury trial. Fed. R. Civ. Pro. 42(b); *see also, e.g., Frank's Casing Crew & Rental Tools, Inc. v. Tesco Corp.*, Case No. 07-cv-015 (TJW) (E.D. Tex. Feb. 3, 2009) ("The court bifurcates the equitable defenses from the jury trial on infringement and invalidity."). Riverbed's equitable defense, such as equitable estoppel, is to be decided by the Court and involve evidence not relevant to Realtime's patent infringement claim. Moreover, allowing Riverbed to argue and present its equitable defenses to the jury would prejudice Realtime, confuse the jury and waste time. There is little, if any, overlap in evidence between equitable estoppel and the issues to be decided by the jury. For example, equitable estoppel requires misleading communication, Riverbed's reliance on that communication, and Riverbed's material harm. None of these elements are issues that jury should hear or decide, and presentation of such issues to jury would prejudice Realtime. Riverbed's equitable defense would do nothing but confuse the jury as to the issues it actually must decide. *See, e.g., eTool Dev., Inc. v. Nat'l Semiconductor Corp.*, Case No. 2:08-cv-196-WCB, Dkt. No. 335 (E.D. Tex. Dec. 12, 2011) (J. Bryson sitting by designation) (Bifurcating equitable issues, holding "presentation of evidence bearing on non-jury issues … could result in confusion of the jury or, at minimum, some risk of prejudicing the jury's consideration of issues properly before it by

exposing it to evidence bearing on other, unrelated issues," "would likely extend the jury trial portion of the proceeding, imposing an unnecessary additional burden on the jurors," "duplicative presentation of evidence should not be necessary … [b]ecause the Court will be presiding over the jury trial and conducting the bench trial," and "bifurcation provides the flexibility to schedule the bench trial portion of the case at a later date").

### B. Riverbed's Statement.

Although equitable estoppel is ultimately a question of equity for the Court to decide, it is common to submit the issue to the jury for an advisory verdict. *E.g.*, *Tex. Advanced Optoelectronic Sols., Inc. v. Intersil Corp.*, No. 4:08-cv-451, Dkt. 506 at 30-32 and Jury Verdict Form at 7 (E.D. Tex. Mar. 4, 2015); *see, e.g., Forest Labs., Inc. v. Abbott Labs*, 339 F.3d 1324, 1327 (Fed. Cir. 2003) (summarizing jury's verdict, including advisory verdict on equitable estoppel defense); *Wang Labs, Inc. v. Mitsubishi Electronics Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997) (summarizing jury's advisory verdict on equitable estoppel); *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp.2d 561, 581 (E.D. Tex. 2007) (explaining that question of equitable estoppel submitted to the jury for advisory verdict by agreement of the parties); *see also American Calcar, Inc. v. American Honda Motor Co., Inc.*, 651 F.3d 1318, 1333-34 (Fed. Cir. 2011) (discussing impact of advisory jury verdict on inequitable conduct); Fed. R. Civ. P. 39(c)(1). While it is also possible to find cases where the court chose not to submit an equitable theory to the jury in the first instance, here, the factual issues governing the equitable estoppel theory are relevant to other issues in the case, such as Riverbed's subjective intent for both Realtime's willful infringement and inducement claims. Because the factual issues governing equitable estoppel will be part of the trial before the jury in any event, judicial economy favors that these issues be tried at the same time rather than twice, once in response to Realtime's affirmative claims and a second time in a bifurcated trial addressing the specific defense of

equitable estoppel. *See, e.g., Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998) ("When claims involving both legal and equitable rights are properly joined in a single case, the Seventh Amendment requires that factual issues common to these claims be submitted to a jury for decision on the legal claims before final court determination of the equitable claims)(citing *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 221 (5th Cir. 1984)).

## VIII.   PROBABLE LENGTH OF TRIAL

### A.     Realtime's Position Regarding Length of Trial.

Each side is allotted 9 hours for trial, excluding opening and closing. Realtime requests 30 minutes per side for voir dire, 45 minutes per side for an opening statement, and one hour per side for closing argument.

### B.     Riverbed's Position Regarding Length of Trial.

Riverbed believes the trial should take five days. Riverbed requests 12.5 hours per side for direct, cross, and rebuttal examination. Riverbed further request 30 minutes per side for voir dire, 30 minutes per side for an opening statement, and one hour per side for closing argument.

## IX.    TRIAL MANAGEMENT PROCEDURES

### A.     Stipulation for Trial Management Procedures.

1.      When the case is assigned a trial start date certain, the following notice procedures in paragraphs 2-12 of this section will apply, subject to any changes agreed to by both parties.

2.      With respect to opening statements, by no later than 9:00 a.m. Central Time on the day before the opening statements, the parties shall exchange by email lists of (a) any non-pre-admitted exhibits for which there are pending objections remaining and (b) copies of any demonstrative exhibits that they intend to use in their respective opening statements. By no later than 3:00 p.m. Central Time that same day, the party receiving the exhibit list shall inform the

party identifying the exhibits of any objections to such exhibits. By no later than 5:00 p.m. Central Time that same day, the parties shall meet and confer to resolve any objections.

      3.      A party need not do deposition designations for a witness who is designated as a "will call" witness in the opposing party's trial witness list. If a party decides not to call a witness live who had been previously designated as a "will call" witness, then the opposing party will have the opportunity to do deposition designations. In such a scenario, rebuttal designations, objections to deposition designations, and objection to rebuttal deposition designations would be allowed.

      4.      The following procedures shall apply to the identification of witnesses, exhibits, and demonstrative exhibits for a party's direct examination prior to the witness's testimony and/or use of exhibits:

      a.      Each party shall provide notice via electronic mail no later than 7:00 p.m. Central Time each day of all witnesses intended to be presented live or by deposition two calendar days later at trial. In other words, if a witness will testify live or by deposition on a Monday, the witness must be identified by 7:00 p.m. on the previous Saturday. Such notice shall indicate the intended order of call and whether the witness will be presented live or by deposition.

      b.      By no later than 7:00 p.m. Central Time the day before a witness is expected to first testify, the offering party will provide to the other party via electronic mail a list of any exhibits to be used with each witnesses specified in paragraph 3(a) of this section (excluding exhibits used solely for the purpose of impeachment or cross examination) and final hard and electronic copies of all demonstrative exhibits to be used with such witnesses (subject only to addressing evidentiary

objections or rulings) and, if the witness will testify by deposition, the portions

of the deposition the offering party intends to play (by page and line number).

    c.   By no later than 8:30 p.m. Central Time the day before a witness is expected to

first testify, the party receiving the exhibits, including demonstrative exhibits,

shall inform the offering party of any objections and, if a witness is to be called

by deposition, the receiving party's deposition counter-designations (by page

and line number);

    d.   By no later than 9:30 p.m. Central Time on the day the disclosures in

paragraphs 2(a)-(c) of this section are received (or such later time as agreed

upon by the parties), the parties shall meet and confer to resolve any

objections;

    e.   The parties shall then raise any continuing disputes as to exhibits to be used

with witnesses or the witnesses themselves with the Court as appropriate

before each trial day commences, or at the Court's direction or convenience;

and

    f.   The parties will exchange demonstrative exhibits for use in closing arguments

that were not previously exchanged among the parties and used at trial at least

one hour prior to any party's closing arguments.

     5.    The notice provisions of the immediately preceding paragraphs 4(a)-(f) shall not

apply to illustrative exhibits created in the courtroom during testimony or to the enlargement,

highlighting, ballooning, excerption, etc. of trial exhibits, demonstrative exhibits, illustrative

exhibits, or testimony, provided that such enlargement, highlighting, ballooning, excerption, etc.

is performed in the courtroom, so long as the underlying exhibit is pre-admitted or the party has

identified its intention to use the exhibit according to paragraph 3 of this section. This exception shall only be used for the purpose of emphasis and callouts may not contain witness or attorney comments or annotations in the exhibit or callout.

6.     The parties shall make good-faith efforts to resolve all objections over the use of identified witnesses, testimony, exhibits, and demonstrative exhibits prior to the trial day of their intended use/testimony by participating in a meet and confer following the identification of and objections to witnesses, testimony, exhibits, and demonstrative exhibits each day. Materials to be used solely for impeachment of a witness called by the other party need not be identified in advance.

7.     For allocating time between the parties for witnesses presented by deposition, witnesses presented by video will be divided by the actual time for designations and counter-designations by each party. For witnesses presented by read deposition testimony, the allocation of trial time will be determined by the ratio of deposition testimony lines designated by each party to the total number of lines read by that witness.

8.     If a party presents a witness by deposition at trial during its direct examination, the party offering the testimony will play or read both the designated portion of the testimony and the opposing party's counter-designations, omitting (as agreed upon in advance by the parties) objections or colloquy where appropriate. The time for such designations shall be allocated to each party accordingly (time for counter-designations charged to the opposing party).

9.     The listing of a deposition designation or discovery response does not constitute an admission as to the admissibility of the testimony or discovery response nor is it a waiver of any applicable objection.

10.     Legible copies of United States and foreign patents, patent applications, and

publications thereof, and the contents of associated file histories, are presumed authentic and may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections that might be made to the admissibility of certified copies.

11.     Realtime and Riverbed each reserve the right to offer into evidence and introduce any exhibit designated by any other party, even if not offered into evidence or introduced by the designating party. All objections to such exhibits are preserved. That an exhibit appears on a party's exhibit list is not an admission that the exhibit is admissible if introduced by any other party. Any exhibit, once admitted into evidence, may be used equally by any party subject to any limitations as to its admission into evidence and subject to the Court's rulings on motions *in limine* that may limit the purpose for which an exhibit may be used.

## X.     LIST OF WITNESSES

### A.     Realtime's Witness List.

Realtime's witness list is attached as Exhibit A.

### B.     Riverbed's Witness List.

Riverbed's witness list is attached as Exhibit B.

## XI.     DEPOSITION DESIGNATIONS

Pursuant to the Court's Amended Docket Control Order (Dkt. No. 462), the parties will exchange deposition designations on March 30, 2017. Rebuttal designations and objections to the deposition designations will be exchanged on April 10, 2017. Objections to the rebuttal designations will be exchanged on April 14, 2017.

The parties will meet and confer regarding their respective objections to strive to resolve all disputes and issues prior to presenting them to the Court.

## XII.   LIST OF EXHIBITS

Pursuant to the Court's Amended Docket Control Order (Dkt. No. 462), the parties will exchange exhibit lists on March 30, 2017.

The parties will meet and confer regarding their respective objections in order to strive to resolve all objections and issues prior to presenting them to the Court.

## XIII.   PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS

Attached as Exhibit C is a copy of the parties' proposed preliminary jury instructions. Attached as Exhibit D is a copy of the parties' proposed verdict form. These exhibits identify where the parties' proposals differ and are subject to the parties' objections noted within.

## XIV.   LIST OF PENDING MOTIONS

The following motions are currently pending before the Court.

| Docket Number | Motion |
|:---:|:---:|
| 433 | MOTION to Exclude Opinions of Defendants' Invalidity and Marking Expert Dr. Clifford Reader by Realtime Data LLC |
| 436 | MOTION for Summary Judgment of Non-Infringement by Riverbed Technology, Inc. |
| 437 | MOTION for Partial Summary Judgment On Direct and Indirect Infringement by Riverbed Technology, Inc. |
| 438 | SEALED PATENT MOTION for Partial Summary Judgment Barring Pre-Suit Damages by Riverbed Technology, Inc. |
| 440 | MOTION to Strike New Infringement Theories and Irrelevant Testing from the Expert Report of Dr. Mitzenmacher by Riverbed Technology, Inc. |

## XV.   CERTIFICATIONS

The undersigned counsel for each of the parties to this action does hereby certify and acknowledge the following:

Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with.

Except as otherwise agreed or ordered, counsel for each party will provide the following certification when their respective exhibit list is filed. Each exhibit in the List of Exhibits: (a) is in existence, (b) will be numbered, and (c) has been disclosed and shown to opposing counsel.


Dated:                                               Respectfully Submitted,

By: /s/ C. Jay Chung
Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Paul Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com
Philip X. Wang (CA SBN 262239)
Email: pwang@raklaw.com
Jeffrey Z.Y. Liao (CA SBN 288994)
Email: jliao@raklaw.com
Christian Conkle (CA SB No. 306374)
Email: cconkle@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile 310/826-6991

T. John Ward, Jr. (TX SBN 00794818)
E-mail: jw@wsfirm.com
Claire Abernathy Henry (TX SBN 24053063)
E-mail: claire@wsfirm.com
WARD, SMITH & HILL, PLLC
P. O. Box 1231

Longview, Texas 75606
Tele: 903/757-6400
Facsimile 903/757-2323

**Attorneys for Plaintiff**
**REALTIME DATA LLC d/b/a IXO**


*/s/ John R. Emerson*
John R. Emerson
Texas Bar No. 24002053
russ.emerson@haynesboone.com
Debra J. McComas
Texas Bar No. 00794261
debbie.mccomas@haynesboone.com
Charles M. Jones II
Texas Bar No. 24054941
charlie.jones@haynesboone.com
Matthew P. Chiarizio
Texas Bar No. 24087294
matthew.chiarizio@haynesboone.com

Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000 (telephone)
(214) 200-0615 (fax)

**ATTORNEYS FOR DEFENDANT**
**RIVERBED TECHNOLOGY, INC.**