IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| REALTIME DATA, LLC, | § |
| | § |
| *Plaintiff,* | § |
| | § CIVIL ACTION NO. 6:15-CV-463 |
| | § RWS-JDL |
| V. | § |
| | § LEAD CASE |
| | § |
| ACTIAN CORPORATION ET AL., | § JURY TRIAL DEMANDED |
| | § |
| *Defendants.* | § |

**SEALED MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Realtime Data, LLC's ("Realtime") Motion to Exclude Certain Opinions of Defendant's Invalidity and Marking Expert Clifford Reader. (Doc. No. 433.) Defendant Riverbed Technology, Inc. ("Riverbed") has filed a Sealed Response (Doc. No. 450), Realtime has filed a Sealed Reply (Doc. No. 460), and Riverbed has filed a Sur-Reply (Doc. No. 472).

For the reasons stated herein, the Court **DENIES** Plaintiff's Motion. (Doc. No. 433.)

**I. BACKGROUND**

Realtime alleges that Riverbed infringes certain claims of three U.S. Patents. The Asserted Patents generally relate to different systems and methods of data compression. Specifically, Realtime alleges that certain SteelHead WAN optimization products infringe the Asserted Claims of the Asserted Patents.

Riverbed has designated Dr. Clifford Reader as a Technical Expert in this matter. Dr. Reader has submitted two expert reports: 1) an expert report regarding the invalidity of the Asserted Patents and 2) an expert report regarding marking of third party products sold by

1

Realtime licensees. (*See* Doc. No. 433, Ex. 1 ("Reader Invalidity Rep."); Doc. No. 433, Ex. 3 ("Reader Marking Rep.").) In his Expert Report regarding invalidity, Dr. Reader uses U.S. Patent No. 5,990,810 to Williams ("Williams Patent") as one of his primary prior art references. (*See* Reader Invalidity Rep., ¶¶254-61, 277-79, 293.) Dr. Reader specifically bases his Williams Patent invalidity opinions on Realtime's infringement theories. (*See, e.g.*, *id.* at ¶206 ("Blocks or subblocks may be represented by their data, by their identity, or by reference. I understand plaintiff contends this constitutes compression. . .").) In other words, Dr. Reader relies on Realtime's interpretation of the claims in conducting his analysis, despite stating that he does not necessarily agree with those interpretations. (*See id.* at ¶234 (identifying "several specific assumptions expressed in Realtime's infringement contentions on which I do not offer an opinion and do not necessarily agree.").)

In Dr. Reader's Expert Report regarding marking, Dr. Reader similarly relies on Realtime's interpretation of the claims in analyzing whether third party products are allegedly covered by the Asserted Patents. (Reader Marking Rep., ¶3 ("in my analysis in this report, I apply Realtime's apparent theories of infringement as described in its infringement contentions and the Mitzenmacher Reports. . .").) Dr. Reader also references the Court's constructions from a previous Realtime case, the *Packeteer* action, where Realtime had specifically alleged that these third party products infringed other Realtime patents. (*Id.* at ¶13.)

## II. LEGAL STANDARD

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed.R.Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993); *see also Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field."); *TQP Dev. LLC v. 1-800-Flowers.com, Inc.*, Case No. 2:11-cv-248-JRG, 2015 WL 6694116, at *4 (E.D. Tex. Nov. 3, 2015) ("Dr. Becker was entitled to rely upon Dr. Jager's technical analysis when constructing his damages model and presenting it to the jury.").

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire*

*Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)."The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

### III. DISCUSSION

Realtime seeks to exclude Dr. Reader's opinions with respect to the Williams Patent and marking of third party products because Dr. Reader "performed a claim analysis, not based on the Court's construction (as he was required to do), but expressly based on his 'interpretation' of Realtime's infringement theories against Defendants' products." (Doc. No. 433, at 1.) Realtime argues that such an approach is "legally erroneous, unreliable, and invit[es] jury confusion." (*Id.*)

Riverbed argues that "Realtime cannot have it both ways." (Doc. No. 450, at 1.) Riverbed argues that it is legally proper for an invalidity expert to apply a patentee's infringement theories in his or her analysis, provided that these theories rely on the court's claim construction. (Doc. No. 472, at 1-2.) Riverbed states: "Dr. Reader's testimony risks no prejudice to Realtime. If deduplication is compression, Realtime's infringement argument survives, Williams remains relevant prior art, and marking remains a relevant damages defense. If not, Riverbed's products do not infringe, Williams does not invalidate, and the marking defense is moot." (*Id.* at 1.)

4

Dr. Reader's invalidity and marking analyses applied the Court's claim constructions. (Reader Invalidity Rep., ¶10; Reader Marking Rep., ¶12.) Dr. Reader was further entitled to conduct his analyses in reliance on Realtime's infringement contention theories. Realtime's cited cases to the contrary are unpersuasive. *See TiVo, Inc. v. EchoStar Comm'ns Corp.*, 516 F.3d 1290 (Fed. Cir. 2008); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*, No. 2:14-cv-911-JRG-RSP, 2016 WL 4718963 (E.D. Tex. July 12, 2016), *report and rec. adopted*, 2016 WL 4719791 (E.D. Tex. Sept. 8, 2016). In *TiVo*, the Federal Circuit upheld a district court's decision to limit an expert from testifying about how another expert's "infringement analysis would affect the issue of invalidity." *TiVo, Inc.*, 516 F.3d at 1311-12 (Fed. Cir. 2008). The Federal Circuit's, however, analyzed the district court's determination solely for abuse of discretion. *Id.* Indeed, in another Federal Circuit decision, the Federal Circuit panel noted without negative comment that the defendant's expert had "mapped each element of the asserted claims to the functionality of the [accused product] in a manner that mirrored [plaintiff's] infringement theory." *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1335 (Fed. Cir. 2011). Together, these cases leave the question open-ended as to whether it is inappropriate for defendant's expert to conduct an invalidity analysis based on plaintiff's interpretation of the claims (assuming that interpretation is guided by the court's claim construction).

In *Core Wireless*, citing *TiVo*, the Court ruled on a Motion in Limine, finding that defendant could not "affirmatively prove invalidity by arguing [plaintiff's] infringement theories read on or encompass the prior art." *Core Wireless*, 2016 WL 4718963, at *3. The Court made this determination based on concerns of 1) jury confusion and 2) Defendant "endorsing an opinion he or she considers unreliable." *Id.* Here, there is no risk of jury confusion causing prejudice to Realtime. Dr. Reader is clear that his analysis relies on Realtime's infringement

5

theories, which the jurors will have already heard through the course of Realtime's direct testimony. Further, while Dr. Reader may disagree with Realtime's infringement theories, he has not indicated that he believes these theories are unreliable.

Accordingly, the Court agrees with other district courts that Dr. Reader is allowed to assume for purposes of his analysis that Realtime's understanding of the construed claims is correct and demonstrate how, in his opinion, each element of the claims is found in the prior art under that interpretation. *See Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-CV-244-RWS, 2015 WL 11089488, at *3 (E.D. Tex. July 16, 2015) ("[Defendant's expert] is permitted to analyze the 2004 prior art systems in accordance with the claim interpretations put forth by [Plaintiff], subject to the claim constructions adopted by this Court."); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 943 (N.D. Cal. 2015) ("[Defendant's expert] does not argue that the [asserted patent] is invalid because the prior art is identical to an infringing product . . . Rather, he assumes that [Plaintiff's] understanding of the construed claims is correct, and then proceeds to demonstrate how, in his opinion, each element of the claims is found in the prior art."); *HSM Portfolio LLC v. Elpida Memory Inc.*, 160 F. Supp. 3d 708, 725-26 (D. Del. 2016) ("The case does not preclude parties from arguing that if a claim limitation must be interpreted in a certain fashion to read on the accused products, then—if interpreted that same way—the claim reads on the prior art."). This is permitted with respect to both Dr. Reader's Williams Patent invalidity opinions and third party product marking opinions. Such an approach allows Riverbed set forth relevant, alternative invalidity and marking arguments for the jury to consider in the event it ultimately finds that Realtime's interpretation of the claims is correct.

Realtime raises the further argument that Dr. Reader improperly relies on the court's claim constructions from the *Packeteer* action in understanding the claims of the Asserted

6

Patents with respect to his marking opinions. (Doc. No. 433, at 9-10.) Riverbed counters that Dr. Reader relies on the *Packeteer* claim constructions solely to aid in his understanding of the third party products, which Realtime accused of infringement in the *Packeteer* case. (Doc. No. 450, at 12-13.) Riverbed further argues that none of the four *Packeteer* claim terms that Dr. Reader identifies even appear in the Asserted Claims in this matter. (*Id.* at 13.) It is improper for Dr. Reader to rely on the *Packeteer* constructions in understanding the Asserted Claims. To the extent Dr. Reader relies on these constructions to inform his understanding of the third party products, he is entitled to do so under Federal Rule of Evidence 703. However, the Court finds that introducing these constructions to the jury would lead to jury confusion and prejudice to Realtime. Therefore, the Court finds that Riverbed may not refer to the *Packeteer* constructions during trial and **STRIKES** paragraph 13 of Dr. Reader's Marking Expert Report and the accompanying table containing four *Packeteer* constructions.

## IV. CONCLUSION

For the reasons stated herein, the Court **DENIES** Realtime's Motion to Exclude Certain Opinions of Defendants' Invalidity and Marking Expert Clifford Reader. (Doc. No. 433.) The Court **STRIKES** paragraph 13 of Dr. Reader's Marking Expert Report and the accompanying table.

Within seven (7) days of the issuance of this Order, the parties shall file a notice with the Court as to whether this Order can be unsealed, or request appropriate redaction.

**So ORDERED and SIGNED this 3rd day of April, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE