IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 6:15-CV-463 |
| | § | RWS-JDL |
| V. | § | |
| | § | LEAD CASE |
| | § | |
| ACTIAN CORPORATION ET AL., | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendants.* | § | |

## SEALED MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Riverbed Technology, Inc.'s ("Riverbed") Sealed Motion for Partial Summary Judgement Barring Pre-Suit Damages. (Doc. No. 438.) Plaintiff Realtime Data, LLC ("Realtime") has filed a Sealed Response (Doc. No. 453), Riverbed has filed a Reply (Doc. No. 465), and Realtime has filed a Sealed Sur-Reply (Doc. No. 475).[1]

For the reasons stated herein, the Court **DENIES** Riverbed's Motion. (Doc. No. 438.)

## I. BACKGROUND

Realtime alleges that Riverbed infringes certain claims of U.S. Patent No. 7,415,530 ("the '530 Patent"), U.S. Patent No. 9,116,908 ("the '908 Patent"), and U.S. Patent No. 8,643,513 ("the '513 Patent"). The Asserted Patents generally relate to different systems and methods of data compression. Specifically, Realtime alleges that certain SteelHead WAN optimization products infringe the Asserted Claims of the Asserted Patents.

---

[1] Riverbed's Motion originally raised arguments related to marking and laches. (*See* Doc. No. 438.) However, on March 21, 2017, Riverbed filed a Notice withdrawing its laches arguments in light of the Supreme Court's opinion in *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, No. 15-927, 2017 WL 1050978 (U.S. Mar. 21, 2017). (*See* Doc. No. 480.) Accordingly, the Court only addresses Riverbed's marking arguments in this Order.

The following facts are undisputed: In previous lawsuits, Realtime alleged that products owned by F5 Networks, Inc. ("F5") and Blue Coat Systems, Inc. ("Blue Coat") infringed certain other Realtime patents not asserted in the above-captioned litigation. Realtime settled its claims against F5 and Blue Coat by entering into settlement agreements whereby F5 and Blue Coat would pay license fees in exchange for licensing most of Realtime's patent portfolio, including the '530 and '513 Patents. (Doc. No. 444-3, Appx. No. 21, 695-707 ("F5 Agreement"), at 2; Doc. No. 444-3, Appx. No. 22, 709-724 ("Blue Coat Agreement"), at 2.) Both the F5 and Blue Coat Agreements state that "the issues in the Action are disputed." (F5 Agreement, at 2; Blue Coat Agreement, at 2.) Neither Agreement includes any explicit statements indicating that an F5 or Blue Coat product practices any specific claim of the licensed patents. (*See generally* F5 Agreement, Blue Coat Agreement.) F5 has continuously sold its WANJet and BIG-IP products and Blue Coat has continuously sold its ProxySG product since the time these parties entered into settlement agreements with Realtime in October 2009 and January 2010, respectively. Neither F5 nor Blue Coat have ever marked their products with Realtime's patent numbers.

Realtime filed the above-captioned lawsuit on May 8, 2015. In preparing its defenses, Riverbed employed Dr. Clifford Reader to opine regarding whether Realtime's Asserted Patents are invalid. Dr. Reader has also opined that Realtime failed to direct its licensees to mark products covered by the Asserted Patents. (Doc. No. 444-2, Appx. No. 7, 439-520 ("Reader Marking Rep.").) Specifically, Dr. Reader asserts that F5 and Blue Coat's products infringe the claims of the '530 and '513 Patents and should have been marked with the '530 and '513 Patent Numbers. (*See generally*, *id.*)

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must consider the evidence in the light most favorable to the non-moving party. *Thorson v. Epps*, 701 F.3d 444, 445 (5th Cir. 2012).

Under 35 U.S.C. § 287(a), "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented" by marking each patented article with the appropriate patent number. A failure to mark precludes a patentee from collecting damages for infringement prior to the date it gave the alleged infringer actual notice of infringement. *Id.*

## III. DISCUSSION

The Federal Circuit has "yet to resolve competing views as to which party bears the burden of establishing that there was a product that practiced the patent." *Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*, No. 0:14-cv-62369-BB, 2016 WL 3948052, at *6 (S.D. Fla. May 31, 2016) ("*Arctic Cat II*") (citing *Sealant Sys. Int'l, Inc. v. TEK Glob. S.R.L.*, No. 5:11-CV-00774-PSG, 2014 WL 1008183, at *31 (N.D. Cal. Mar. 7, 2014), *rev'd in part on other grounds*, 616 F. App'x 987 (Fed. Cir. 2015)); *see also Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*, No. 0:14-cv-62369-BB, Doc. No. 119, at *58-59 (S.D. Fla. May 2, 2016) ("*Arctic Cat I*") (denying defendant's motion for summary judgment seeking to bar

recovery of pre-suit damages for failure to mark); *Blitzsafe Texas, LLC v. Honda Motor Co., Ltd.*, No. 2:15-cv-01274-JRG-RSP, Doc. No. 403, at *3 (E.D. Tex. Jan. 26, 2017) (same). Although other courts in this district have stated that "[t]he patentee bears the burden of compliance with the marking statute," those courts did not specifically address the question of whether a particular product is a "patented article." *See PACT XPP Tech., AG v. Xilinx, Inc.*, No. 2:07-cv-563-RSP, 2012 WL 1029064, *2 (E.D. Tex. March 26, 2012) (denying patentee's motion for summary judgment on defendants' affirmative defense of failure to mark because question of fact existed as to whether any of patentee's activities involved offers for sale of patented products); *Soverain Software LLC v. Amazon.com, Inc.*, 383 F. Supp. 2d 904, 908 (E.D. Tex. 2005) (no dispute as to whether software sold by licensees constituted a patented product); *see also Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1112-13 (Fed. Cir. 1996); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). Having reviewed the case law, the Court concludes that "defendant bears the threshold burden of showing that an unmarked patented product exists." *Blitzsafe*, No. 2:15-cv-01274-JRG-RSP, Doc. No. 403, at *3; *see also Oracle Am., Inc. v. Google Inc.*, No. 3:10-cv-03561-WHA, 2011 WL 5576228, at *2 (N.D. Cal. Nov. 15, 2011); *Sealant Sys.*, 2014 WL 1008183, at *31; *Arctic Cat I*, No. 0:14-cv-62369-BB, Doc. No. 119, at *58-59; *accord Fortinet, Inc. v. Sophos, Inc.*, No. 13-cv-05831-EMC, 2015 WL 5971585, at *4-5 (N.D. Cal. Oct. 14, 2015); *MobileMedia Ideas, LLC v. Apple Inc.*, No. 10-258-SLR, 2016 WL 3958723, at *5 (D. Del. July 21, 2016; *but see Adrea, LLC v. Barnes & Noble, Inc.*, No. 13-cv-4137 (JSR), 2015 WL 4610465, at *2 (S.D.N.Y. July 24, 2015); *DR Sys., Inc. v. Eastman Kodak Co.*, No. 08-cv-0669 H(BLM), 2009 WL 2632685, *4 (S.D. Cal. August 24, 2009). Consistent with the usual burden of proof for affirmative defenses, *see Dixon v. U.S.*, 548 U.S. 1, 8 (2006), it is the defendant's responsibility to affirmatively identify and prove that a

product is a patented article, particularly when the product is manufactured by a third party under a settlement license agreement rather than a product manufactured by the plaintiff. "[O]therwise, a defendant's general allegations could easily instigate a fishing expedition for the patentee in order to stave off pursuit of damages for infringement." *Arctic Cat I*, No. 0:14-cv-62369-BB, Doc. No. 119, at *59.

Riverbed argues that "[r]egardless of the burden of proof, Riverbed has put forward evidence demonstrating that F5 and Blue Coat have made and sold licensed, unmarked products that practice the '530 and '513 Patents." (Doc. No. 438, at 11.) Riverbed specifically argues that Dr. Reader's Marking Expert Report demonstrates how, under Realtime's infringement theories in this case, F5 and Blue Coat products meet the limitations of the asserted system and device claims. (*Id.* at 10-11.) Realtime argues that Riverbed bears the burden of proving that the F5 and Blue Coat products are "patented articles" and Riverbed cannot meet this burden by reliance on the F5 and Blue Coat Agreements. (Doc. No. 453, at 6-7.) Realtime further argues that Dr. Reader's analysis leaves open fact questions as to whether the F5 and Blue Coat products are patented articles. (*Id.* at 3.) For example, Realtime argues that Dr. Reader fails to identify whether any of the products specifically includes a "descriptor" as required by the claims. (*Id.*)

Even though Riverbed has met its initial burden by identifying products that allegedly practice the Asserted Patents, the disputed record makes summary judgment unwarranted. *See Golden Bridge Tech. Inc v. Apple, Inc.*, No. 5:12-CV-04882-PSG, 2014 WL 1928977, at *12 (N.D. Cal. May 14, 2014); *Blitzsafe*, No. 2:15-cv-01274-JRG-RSP, Doc. No. 403, at *3. Realtime's prior lawsuits against F5 and Blue Coat involved different patents; Realtime has never alleged that F5 or Blue Coat infringe the '530 or '513 Patents. Even with respect to the patents Realtime asserted against F5 and Blue Coat, the Court never issued findings that F5 or

5

Blue Coat products practiced those patents-in-suit. Moreover, the F5 and Blue Coat Agreements both state that "the issues in the Action are disputed." (F5 Agreement, at 2; Blue Coat Agreement, at 2.)

Dr. Reader's expert opinions are likewise insufficient to establish as a matter of law that the F5 and Blue Coat products are patented articles. While Dr. Reader relies on Realtime's infringement theories in forming his marking opinions, he states that he does not necessarily agree with those theories. (Reader Marking Rep., ¶17.) The Court will not assume for purposes of this Motion that Realtime's infringement theories are correct, particularly when Riverbed intends to dispute those theories at trial and the fact-finder has not yet even heard all of the evidence related to those theories. *See Golden Bridge Tech. Inc v. Apple, Inc.*, 2014 WL 1928977, at *12. Realtime also challenges whether Dr. Reader's analysis actually shows that the F5 and Blue Coat products meet each and every limitation of the Asserted Claims. For example, Dr. Reader admitted during deposition that there was no explicit evidence that the F5 and Blue Coat products included a "descriptor" as required by the Asserted Claims. (Doc. No. 453, Ex. 3 ("Reader Dep."), at 310:24-311:21.) While Dr. Reader further testified that these products must have a descriptor in order to function, the lack of clarity in his testimony casts sufficient doubt on Defendant's grounds for summary judgment, "as it is Defendant's burden to demonstrate that summary judgment is warranted." *Arctic Cat I*, No. 0:14-cv-62369-BB, Doc. No. 119, at *61.

As Riverbed notes, embarking on a "full-fledged trial on infringement of non-party products" (Doc. No. 465, at 1) may distract from the main disputes in this case. However, it is not appropriate to grant summary judgment solely on this basis. Riverbed—not Realtime—bears the greatest risk of prejudice by presenting marking arguments to the jury in reliance on Realtime's infringement theories. Riverbed will have to decide whether these risks are worth the

possible reward. But the Court declines to hold as a matter of law that F5's and Blue Coat's products are "patented articles" implicating the marking statute as Riverbed proposes at this time, particularly given the parties' factual disputes regarding the scope of the Asserted Claims.

## IV. CONCLUSION

For the reasons stated herein, the Court **DENIES** Riverbed's Motion for Partial Summary Judgement Barring Pre-Suit Damages. (Doc. No. 438.)

Within seven (7) days of the issuance of this Order, the parties shall file a notice with the Court as to whether this Order can be unsealed, or request appropriate redaction.

**So ORDERED and SIGNED this 4th day of April, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE