IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 6:15-CV-463 |
| | § | RWS-JDL |
| v. | § | |
| | § | LEAD CASE |
| | § | |
| ACTIAN CORPORATION ET AL., | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Riverbed Technology, Inc.'s ("Riverbed") Motion to Strike Portions of the Supplemental Expert Report of Mr. Robert Mills Regarding Convoyed Sales. (Doc. No. 513.) Plaintiff Realtime Data, LLC ("Realtime") has filed a Response. (Doc. No. 519.)

In a previous Opinion, the Court struck portions of the expert report of Mr. Mills, Realtime's damages expert, relating to the inclusion of convoyed sales in his royalty base and rate calculations. (*See* Doc. No. 482, at 10.) The Court explained that "an expert who wishes to include convoyed sales in a royalty base must at least present a clear explanation of 1) why and how the purported convoyed sales are tied to the sales of the accused products and 2) what value of the royalty base is attributable to the accused products themselves versus the convoyed sales." (*Id.* at 6.) The Court granted Mr. Mills leave to supplement his Report, and noted, "if Mr. Mills chooses to amend his report to continue to include convoyed sales in his royalty base assessment, he will also need to determine the proper apportionment value attributable to the convoyed sales based on their connection to the patented features of the accused products." (*Id.* at 10.)

1

Riverbed's Motion specifically argues that Mr. Mills' supplemental report "provides no analysis or explanation for applying the same apportionment to services that he applies to the accused products." (Doc. No. 513 at 1.) On this basis, Riverbed argues that the Court should strike the inclusion of support services in the royalty base.[1] (*Id.*)

Mr. Mills' supplemental expert report explains his basis for considering certain Riverbed support services as convoyed sales. (*See* Doc. No. 509, Appx. No. 68 ("Mills Supp. Rep."), ¶¶34-43.) In a section entitled "Apportionment of Convoyed Sales," Mr. Mills then finds that "[g]iven the close relationship between the accused SteelHead products and support services specifically tied to those products, I conclude that the proper apportionment factor for support services is the same as that for the accused SteelHead products." (*Id.* at ¶44.)

Riverbed argues that Mr. Mills provides no "sound basis" for his conclusion and that he "spends the bulk of this paragraph restating why support-service revenue should be included in the royalty base." (Doc. No. 513, at 2.) Riverbed also challenges Mr. Mills' reliance on an interview with Realtime's apportionment expert, Dr. Keller, for the conclusion that "Riverbed provides patches, maintenance, and technical support directly in connection with SDR/LZ compression." (*Id.*) Riverbed further argues that apportionment of support services attributable to the accused functionality is "likely minimal, and certainly much lower than the 27% to 49% range Mr. Mills applies." (*Id.* at 3.)

Realtime responds that Mr. Mills properly discloses both his methodology and the probative facts supporting his determination of the economic value of convoyed sales attributable to the patented technology. (Doc. No. 519, at 1.) Specifically, Realtime argues that Mr. Mills apportioned "the support services based on the same evidence he uses to ascertain customer

---

[1] Riverbed notes that it "does not concede that including convoyed sales in the royalty base is appropriate." (Doc. No. 513, at 1 n.1.) Riverbed has separately filed objections to the Court's Order regarding inclusion of convoyed sales in the royalty base. (*See* Doc. No. 493.)

2

demand for the accused functionality relative to consumer demand for non-patented features." (*Id.* at 2.) Realtime argues that Mr. Mills found that the close relationship between the accused products and the support services led him to determine that the same apportionment value was appropriate. (*Id.* at 3.) Realtime argues that Mr. Mills was entitled to rely on his discussions with Dr. Keller because Federal Rule 703 allows an expert to base an opinion on "facts or data in the case that the expert has been made aware of or personally observed." (*Id.* at 4 (citation omitted).) With respect to Riverbed's argument that the apportionment value for support services should be much lower, Realtime argues that "[t]his is nothing more than a demand that plaintiff's expert use defendant's preferred methodology." (*Id.*)

Mr. Mills provides a lengthy explanation as to why he believes particular convoyed sales should be included in the royalty base. (*See* Mills Supp. Rep., ¶¶34-43.) His paragraph regarding apportionment of convoyed sales then states:

> ***As previously discussed***, (1) Riverbed considers support services "critical" to its ability to sell products, and nearly all of Riverbed customers purchase support when they purchase products, (2) the revenue Riverbed generates from the sale of support services is mechanically dependent upon the types and quantity of products purchased by its customers, and (3) there is a close functional relationship between the accused SteelHead products and support services.

(*Id.* at ¶44 (emphasis added).) In part based on these observations, Mr. Mills concludes that the same apportionment value is applicable to both the accused products and convoyed sales.

Riverbed's challenges do not justify exclusion, but rather go to the weight of Mr. Mills' opinions. Riverbed will be able to cross-examine Mr. Mills regarding his opinion about the close relationship between the accused products and support services. Riverbed will also be able to challenge Mr. Mills' decision not to rely on usage data in formulating his apportionment opinion with respect to convoyed sales.

Mr. Mills is also entitled to rely on his interview with Dr. Keller in forming his opinions, even if such discussions would be otherwise inadmissible. Pursuant to the Federal Rules, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed...." Fed. R. Evid. 703. To the extent Defendants are challenging the timing of this disclosure, the Court notes that Mr. Mills was granted leave to supplement his opinions pursuant to Court order. Further, Defendants were granted the opportunity to depose Mr. Mills regarding his supplemental report, which included the opportunity to question Mr. Mills regarding the basis for his new opinions. Of course, both Dr. Keller and Mr. Mills will be limited to testimony within the scope of their expert disclosures at trial. Because Dr. Keller did not disclose any opinions related to support services in either of his reports, he will not be permitted to opine regarding support services during trial.

Accordingly, the Court **DENIES** Riverbed's Motion to Strike Portions of the Supplemental Expert Report of Mr. Robert Mills Regarding Convoyed Sales. (Doc. No. 513.)

**So ORDERED and SIGNED this 27th day of April, 2017.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE