IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 6:15-CV-463 |
| | § | RWS-JDL |
| V. | § | |
| | § | LEAD CASE |
| | § | |
| ACTIAN CORPORATION ET AL., | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendants.* | § | |

## SEALED MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Riverbed Technology, Inc.'s ("Riverbed") Motion to Strike the Supplemental Expert Report of Dr. Arthur Keller and Mr. Robert Mills Based on Improper Apportionment. (Doc. No. 514.) Plaintiff Realtime Data, LLC ("Realtime") has filed a Sealed Response. (Doc. No. 524.)

The Court previously struck the opinions of two of Realtime's experts, Dr. Keller and Mr. Mills, related to calculating the value attributable to the allegedly patented features of the accused products. (Doc. No. 481, at 11.) The Court found that Dr. Keller's apportionment methodology failed to "adequately account for the benefit of the ***combination*** of the two compression elements of the accused products as they relate to the patent claims." (*Id.* at 8 (emphasis in original).) The Court further found that "Dr. Keller's opinions about the technical value of the infringing features may be an input into the damages expert's opinion about the proper apportionment value attributable to the infringing features, but may not be the final apportionment value itself. In turn, this means Mr. Mills cannot simply rely on the technical

1

value Dr. Keller ascribes to the infringing features of the accused products in determining a proper apportionment value." (*Id.* at 10-11.)

Riverbed raises three main arguments as to why it believes Mr. Mills' and Dr. Keller's supplemental opinions should be stricken. First, Riverbed argues that Mr. Mills improperly continues to rely entirely on Dr. Keller's apportionment analysis in arriving at his apportionment figure. (Doc. No. 514, at 2-5.) Second, Riverbed argues that Dr. Keller's apportionment analysis "improperly captures non-patented functionality." (*Id.* at 5-8.) Third, Riverbed argues that Dr. Keller's new opinions contradict his earlier analysis, making them unreliable. (*Id.* at 8-12.)

Realtime responds that both Dr. Keller and Mr. Mills have provided supplemental reports that are consistent with the Court's previous order. First, Realtime argues that Dr. Keller limits his analysis to the technical value of the accused technology and Mr. Mills correctly uses Dr. Keller's opinions as only one input in his apportionment determination. (Doc. No. 524, at 2-9.) Second, Realtime argues that Dr. Keller properly measured the incremental benefit of the "infringing dual compression configuration over a single form of compression." (*Id.* at 9-13.) Third, Realtime argues that Dr. Keller's original and supplemental reports are consistent, but to the extent they are inconsistent, that goes to the weight of the evidence, not its admissibility. (*Id.* at 14-15.)

The Federal Rules "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d

452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

The Court finds that Mr. Mills and Dr. Keller have set forth sufficiently reliable and relevant opinions regarding apportionment to survive a *Daubert* challenge. While Mr. Mills uses Dr. Keller's opinions as an input into his analysis, he also independently examines Riverbed documents to arrive at similar conclusions regarding those documents. (*See* Doc. No. 509, Appx. No. 68 ("Supp. Mills Rep."), ¶¶3-22.) Mr. Mills also provides opinions about the WAN optimization market and market competitors in reaching his determination. (*Id.* at ¶¶6-7, 22.) While Mr. Mills took a largely technical rather than economic approach to apportionment (by using "data reduction as the metric" to measure economic apportionment), the Court finds that Mr. Mills, through his independent review of the evidence, has provided sufficient basis for his final apportionment determination apart from Dr. Keller's conclusions. (*See id.* at ¶¶3-22.)

With respect to Dr. Keller's opinions, Dr. Keller has provided an analysis of the technical benefits of the accused technology without improperly opining regarding the ultimate apportionment value. Although Dr. Keller uses the word "value" in performing his analysis, in context, his analysis is properly limited to a technical review of the accused technology.

Dr. Keller's quantitative analysis of the accused technology (relying on a Riverbed document testing the combination of SDR deduplication and LZ compression compared to LZ compression alone) is also sufficient at this stage. He explains that Riverbed's testing focused on this comparison, and the only analysis Riverbed performed against SDR deduplication alone was performed in furtherance of litigation and thus unreliable. (*See* Doc. No. 509, Appx. No. 67

("Supp. Keller Rep."), ¶¶71, 74.) In addition, Dr. Keller also reviewed documents that analyzed the combination of SDR and LZ "over a single form of native NetApp network compression." (*Id.* at ¶¶75-76.) In other words, Dr. Keller reviewed other data beyond simply the comparison of SDR deduplication and LZ compression to LZ compression alone. Riverbed's factual arguments regarding the relevance of various pieces of evidence can be presented at trial and go to the weight of Dr. Keller's opinions rather than their admissibility. (*See* Doc. No. 514, at 6-8.)

Nor has Dr. Keller provided opinions in his supplemental report that are so contradictory compared to his original report as to warrant striking the entirety of his analysis. For instance, in his original report, Dr. Keller opined that "the patented technology relates to, and furthers, *at least one of the three main* functions or features of the accused systems [application streamlining, data streamlining, and transport streamlining]." ((Doc. No. 444-1, Appx No. 6, at 407-437 ("Keller Rep."), ¶46 (emphasis in original).) Dr. Keller's opinions in his supplemental report that the accused technology related to all three of the allegedly main functions or features of the accused systems build on this statement rather than contradict it. Similarly, Dr. Keller originally opined that "[t]he use of LZ with SDR assists in WAN optimization in that '[i]t can help reduce the number of bytes having to be sent across the network.'" (Keller Rep., ¶47 (quoting Van Os Dep., at 30:12-18).) Dr. Keller's supplemental report spends significantly more time emphasizing this aspect of the accused products, but he does not wholly contradict his earlier opinions about the various "main features" of the accused technology. While Dr. Keller's presentation of his opinions may indicate some inconsistencies, it does not warrant striking his opinions.

For the reasons stated herein, the Court **DENIES** Riverbed's Motion to Strike the Supplemental Expert Report of Dr. Arthur Keller and Mr. Robert Mills Based on Improper Apportionment. (Doc. No. 514.)

Within seven (7) days of the issuance of this Order, the parties shall file a notice with the Court as to whether this Order can be unsealed, or request appropriate redaction.

**So ORDERED and SIGNED this 1st day of May, 2017.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE