IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA LLC d/b/a IXO, | § § § | |
| Plaintiff, | § § | Civil Action No. 6:15-cv-463 |
| v. | § § | JURY TRIAL DEMANDED |
| ACTIAN CORP., et al., | § § | LEAD CONSOLIDATED CASE |
| Defendants. | § § § | |

## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant Riverbed, having moved orally for judgment as a matter of law at the close of Plaintiff's case-in-chief, files this Renewed Motion for Judgment as a Matter of Law at the close of the case and before the matters go to the jury. For the reasons stated in more detail below, Realtime has failed to meet its burden to prove infringement of claims 1 and 14 of the '530 Patent and claim 1 of the '513 Patent and judgment as a matter of law is warranted.

1.  **There is no substantial evidence of direct infringement of Claims 1 or 14 of the '530 Patent.**

To show direct infringement of the '530 Patent, Realtime has the burden to show by a preponderance of the evidence that Riverbed makes, uses, sells, or offers to sell a product that contains every single element of claim 1 or 14 of the '530 Patent. Realtime failed to satisfy this burden for numerous reasons. Further, it is

not enough to show that the SteelHead is reasonably capable of infringing.[1] Rather, Realtime must show that actual infringement of each and every element of a claim. Realtime has not met this burden.

First, it is undisputed that claims 1 and 14 both require two different forms of compression.[2] The parties agree that the SteelHead uses one form of compression, LZ compression. The dispute lies with whether the SteelHead performs a second form of compression. It does not. The Court construed "compression" to mean "the representation of data with fewer bits." Data, in turn, is "a representation of information." But the evidence presented shows that SteelHead's SDR process sends only a reference number to the receiving computer.[3] It does not send the data—that is, the information itself—either compressed or uncompressed. Although Realtime's witnesses argued that SDR's references are a "representation of data with fewer bits," Realtime never disputed that SDR references are merely a reference or call number and do not actually include the data they purport to "represent." Thus, the issue comes down to one of law, to wit, whether sending a reference that informs the receiving computer where to find its own stored data can "represent data with fewer bits." It cannot. There is no data. For this reason, Riverbed urges the Court to find that Realtime has failed to prove that Riverbed's Accused SteelHead products infringe each and every element of claims 1 and 14 of the '530 Patent and judgment on these claims is proper as a matter of law.

---

[1] *See Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 994 (Fed. Cir. 2009).
[2] Trial Tr., May 22, 2017 P.M., 143:13-15.
[3] Trial Tr., May 24, 2017 P.M., 87:13-18.

Second, Realtime failed to prove the "memory device" and "storage" requirements of claims 1 and 14 of the '530 Patent of storage. The accused memory device of the SteelHead does not store data. As Dr. Villasenor testified, there can be no storage because later retrieval is not possible.[4] Once again, Realtime disagrees with this conclusion but cites no evidence to support it. Accordingly, the Court should decide as a matter of law whether the fact that later retrieval is not possible defeats the "memory device" and "storage" requirements of claims 1 and 14.

Third, Realtime failed to show a data accelerator "coupled to" the memory device. For this element, Realtime claims the "data accelerator" is the sending SteelHead while the "memory" device is in a second SteelHead device. Dr. Mitzenmacher testified both on direct and again on rebuttal that "Riverbed does not sell its Steelheads connected to the network" and that the customer connects the Steelheads to the network.[5] Neither Dr. Mitzenmacher nor any other witness presented evidence that Riverbed sells networks or the other equipment necessary to connect the Steelheads to the network. Accordingly, Realtime cannot show that Riverbed sells an infringing product. Realtime also failed to show internal use by Riverbed. But even if it had, Realtime's damages model—based on Riverbed sales revenue—provides no damages tied to any internal SteelHead use by Riverbed.

Fourth, Realtime failed to provide substantial evidence that "a data stream is received" by the SteelHead. The evidence shows that SDR creates the data blocks— a required part of the data stream—and that the blocks have characteristics the

---

[4] Trial Tr., May 25, 2017 A.M. at 17:7-25.
[5] Trial Tr., May 23, 2017 A.M. at 126:20-127:4.

3

data encoder controls.. Because this conflicts with the Court's construction of this term, the SteelHead cannot meet this element.

Finally, Realtime failed to present substantial evidence that compression and storage occurs "faster than said data stream is able to be stored on said memory device in said received form." Even accepting that the buffer is a "memory device," Realtime presented no evidence of the time it takes to store and data on the buffer, whether in compressed or received form. Rather, as Ryan Damon testified, the evidence shows that the only tests performed assess the speed of the entire process, from the sending computer to the receiving computer.[6] None of the tests indicate when the data landed on the receiving Steelhead's buffer. More importantly, Realtime never addressed the second half of the element: it never showed the baseline against which to measure the compression and storage. It never showed the speed with which "said data stream is able to be stored in said received form." Rather, in the "bypass" tests, the data is never stored on the buffer. Accordingly, there is nothing in evidence to support Realtime's arguments on this element. The complete absence of evidence on this element supports judgment as a matter of law on Realtime's infringement claims relating to claims 1 and 14 of the '530 Patent.

The doctrine of equivalents does not cure this lack of evidence. Realtime failed to provide particularized testimony and linking argument as to the insubstantiality of the differences with respect to the function-way-result test as to any element of claim 1 or claim 14 of the '530 Patent. Although Dr. Mitzenmacher

---

[6] Trial Tr., May 24, 2017 A.M. at 101:1-9.

purported to address the doctrine of equivalents, he did no more than recite the standards along with conclusory assertions that they had been met.[7] This conclusory testimony does not rise to the level of substantial evidence.

Realtime did not remedy any of these evidentiary deficiencies on rebuttal. Although Dr. Mitzenmacher was called on rebuttal, he failed to present any new or additional evidence solving Realtime's shortcomings. Because Realtime has failed to prove that Riverbed's SteelHead satisfies each and every element of claims 1 and 14 of the '530 Patent, Riverbed moves for judgment as a matter of law on those claims.

**2.  There is no substantial evidence of infringement of the '513 Patent.**

To show direct infringement of the '513 Patent, Realtime has the burden to show by a preponderance of the evidence that Riverbed makes, uses, sells, or offers to sell a product that contains every single element of claim 1 of the '513 Patent. Realtime failed to satisfy this burden for a litany of reasons. Further, it is not enough to show that the SteelHead is reasonably capable of infringing.[8] Rather, Realtime must show that actual infringement of each and every element of a claim. Realtime has not met this burden.

First, it is undisputed that claim 1 of the '513 Patent requires two different forms of compression.[9] The parties agree that the SteelHead uses one form of compression, LZ compression. The dispute lies with whether the SteelHead performs a second form of compression. It does not. The Court construed

---

[7] Trial Tr., May 23, 2017 A.M. at 52:1-53:11, 78:6-80:6.
[8] *See Ball Aerosol*, 555 F.3d at 994.
[9] Trial Tr., May 22, 2017 P.M. at 153:13-154:10.

"compression" to mean "the representation of <u>data</u> with fewer bits." Data, in turn, is "a representation of information." But the evidence presented shows that SteelHead's SDR process sends only a reference number to the receiving computer.[10] It does not send the data—that is, the information itself—either compressed or uncompressed. Although Realtime's witnesses argued that SDR's references are a "representation of data with fewer bits," Realtime never disputed that SDR references are merely a reference or call number and do not actually include the data they purport to "represent." Thus, the issue comes down to one of law, to wit, whether sending a reference that informs the receiving computer where to find its own stored data can "represent data with fewer bits." It cannot. There is no data. For this reason, Riverbed urges the Court to find that Realtime has failed to prove that Riverbed's Accused SteelHead products infringe each and every element of claims 1 of the '513 Patent and judgment on this claim is proper as a matter of law.

Second, there is no substantial evidence that the Steelhead practices content-dependent compression under the Court's construction of that term. First, SDR is not compression for the reasons stated above. Second, although Realtime argues that SDR is content-dependent, the only testimony of how SDR actually operates indicates that it treats all data the same, regardless of content.[11] Because Realtime failed to present substantial evidence that SDR is content-dependent compression it cannot satisfy all the elements of claim 1 of the '513 Patent.

---

[10] Trial Tr., May 24, 2017 P.M., 87:13-18.
[11] Trial Tr., May 24, 2017 P.M. at 85:2-8.

Third, there is no substantial evidence that the Steelhead practices content-independent compression under the Court's construction. Specifically, Realtime argues that LZ compression is content-independent, but it failed to meet its burden to prove this element. Once again, the facts are undisputed as to how SDR and LZ work. It is only the conclusion of how that functionality fits with the claim terms.

Fourth, claim 1 of the '513 Patent calls for two separate steps of analyzing. Realtime failed to show these two steps. Indeed, on rebuttal, Dr. Mitzenmacher's best explanation (which he failed to even raise until rebuttal) was that the two analyzing steps can be performed by the same step of an accused product. But this is wrong as a matter of law. While it is true that sometimes one aspect of an accused product can satisfy more than one element of a patent claim, this general rule does not allow a method patent that specifically calls for two separate analyzing steps being performed in a sequence. Here, because each analyzing step requires a different analysis and because of the implied order of the analyzing steps—you must first analyze the plurality and compress and then analyze a block—there are two separate and distinct steps. It is conceded that SteelHead does not do two analyzing steps and Realtime has no substantial evidence of infringement of claim 1 of the '513 Patent.

The doctrine of equivalents does not cure this lack of evidence. Realtime failed to provide particularized testimony and linking argument as to the insubstantiality of the differences with respect to the function-way-result test as to any element of claim 1 or claim 14 of the '513 Patent. Although Dr. Mitzenmacher

7

purported to address the doctrine of equivalents, he did no more than recite the standards along with conclusory assertions that they had been met.[12] This conclusory testimony does not rise to the level of substantial evidence.

Because Realtime has failed to prove that Riverbed's Steelhead products satisfy each and every element of claim 1 of the '513 Patent, judgment as a matter of law is appropriate.

**3.     There is no substantial evidence to support inducement.**

To show active inducement of infringement, Realtime must prove by a preponderance of the evidence that Riverbed's customers (or anyone else) directly infringed the Asserted Claims or that Riverbed has actively and knowingly aided and abetted that direct infringement. To show active inducement, Realtime must show by a preponderance of the evidence that (1) Riverbed has taken action during the time the patent is in force which encourages acts by someone else; (2) the encouraged acts constitute direct infringement of that claim; (3) Riverbed was aware of the patent, and knew that the encouraged acts constitute infringement of the patent or was willfully blind to the infringement of the patent; (4) Riverbed had the intent to encourage infringement by someone else; and (5) the encouraged acts are actually carried out by someone else.[13]

Realtime presented no testimony or evidence that Riverbed had any reason to believe their products infringed. This is especially true in light of the testimony that

---

[12] Trial Tr., May 23, 2017 A.M. at 52:1-53:11, 78:6-80:6.
[13] *See, e.g.*, *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, (2011) ("Accordingly, we now hold that induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement.").

Realtime's patents relate to data storage while Riverbed's SteelHead products are aimed primarily at resolving latency. Thus, there is no evidence that Riverbed knew or was willfully blind to Realtime's patents.

With respect to claim 1 of the '513 Patent, which is a method claim, Realtime must show that a customer used the SteelHead in an infringing manner. There is no substantial evidence that Riverbed encouraged acts of infringement by a customer that directly infringed the patents. Nor is there substantial evidence that any customer actually carried out any infringing act. In any event, Realtime failed to show any specific acts of infringement by customers or the number of any such specific acts. By presenting evidence of damages only on overall revenue, this failure leaves Realtime with no reasonable damages model for any induced infringement.

### 4. There is no evidence of a reasonable royalty.

Realtime bears the burden to prove its damages. It is Realtime's burden in the first instance to mark its products (or cause its licensees to mark) and to show that such marking has occurred. Having failed to present any evidence that it has marked the licensed products, Realtime cannot show a right to recover damages before the date suit was filed.

Riverbed has objected to the use of convoyed sales as a basis for determining the royalty base. But even if inclusion of convoyed sales were appropriate, to be included in the royalty base, such sales must be functionally related to the infringing aspects of the accused product. Further, Realtime must demonstrate that the convoyed sales would not have occurred but for the infringing aspects of the

device. Realtime has failed to provide substantial evidence of convoyed sales functionally tied to the alleged infringement and should not, therefore, be entitled to recover any damages related to convoyed sales.

A reasonable royalty award must also be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented feature.[14] Under this standard, Realtime has failed to properly apportion the value of the SteelHead products.

Realtime also failed to provide substantial evidence of a hypothetical negotiation reflecting what a willing licensee would pay a willing licensor for the allegedly infringing aspects of the Steelhead. Realtime's reasonable royalty evidence is speculative and improperly based on non-comparable license agreements. Based on this failure, Riverbed moves for judgment as a matter of law that Realtime has failed to adequately prove any damages.

---

[14] *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

Dated: May 26, 2017

Respectfully submitted,

/s/ *Matthew P. Chiarizio*
John R. Emerson
Texas Bar No. 24002053
russ.emerson@haynesboone.com
Debra J. McComas
Texas Bar No. 00794261
debbie.mccomas@haynesboone.com
Charles M. Jones II
Texas Bar No. 24054941
charlie.jones@haynesboone.com
Stephanie N. Sivinski
Texas Bar No. 24075080
stephanie.sivinski@haynesboone.com
Matthew P. Chiarizio
Texas Bar No. 24087294
matthew.chiarizio@haynesboone.com

HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000 (telephone)
(214) 200-0615 (fax)

**ATTORNEYS FOR DEFENDANT RIVERBED TECHNOLOGY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's ECF system on all counsel of record who have consented to electronic service according to the Federal Rules of Civil Procedure on May 26, 2017.

/s/ *Matthew P. Chiarizio*