**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO,<br><br>            Plaintiff,<br>      v.<br><br>ACTIAN CORPORATION and<br>PERVASIVE SOFTWARE, INC.,<br><br>            Defendants. | **Civil Action No. 6:15-cv-00463**<br>**JURY TRIAL DEMANDED**<br>**LEAD CONSOLIDATED CASE** |
| REALTIME DATA LLC d/b/a IXO,<br>            Plaintiff,<br>      v.<br><br>RIVERBED TECHNOLOGY, INC.,<br>            Defendant. | **Case No. 6:15-cv-468-RWS-JDL** |

**Realtime's Opposition to Riverbed's Renewed
Motion for Judgment as a Matter of Law**

## TABLE OF CONTENTS

I. SUBSTANTIAL EVIDENCE SUPPORTS INFRINGEMENT ............................................ 1

    A. Substantial evidence demonstrates that Riverbed's customers all have used the Accused Products in an infringing manner. .................................................................... 2

    B. SDR deduplication is a form of compression. ............................................................ 3

    C. SDR deduplication is a content dependent compression algorithm. ........................... 5

    D. LZ compression is a content independent compression algorithm. ............................ 6

    E. Steelheads meet the "analyzing" limitations. ............................................................. 6

    F. Substantial evidence supports infringement under the doctrine of equivalents. .......... 7

II. SUBSTANTIAL EVIDENCE SUPPORTS INDUCEMENT ................................................ 8

III. SUBSTANTIAL EVIDENCE SUPPORTS DAMAGES ................................................... 10

IV. CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Ball Aerosol and Specialty v. Limited Brands,*
  555 F.3d 984 (2009). ................................................................................................. 2

*Commil USA, LLC v. Cisco Systems, Inc.,*
  135 S.Ct. 1920 (2015). ............................................................................................... 9

*EON Corp. IP Holdings, LLC v. Landis+Gyr Inc., et al.,*
  Case 6:11-cv-00317-JDL, Dkt. No. 666 (E.D. Tex. Nov. 14, 2014) ......................... 1

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.,*
  778 F.3d 1365 (Fed. Cir. 2015). ............................................................................ 8, 9

Plaintiff Realtime Data LLC ("Realtime") opposes Defendant Riverbed Technology, Inc.'s ("Riverbed") renewed motion for judgment as a matter of law (Dkt. No. 602). Riverbed's motion repeats many of the same flawed arguments that Riverbed raised in pre-trial briefing. Magistrate Judge Love rejected each of these arguments, as did Judge Schroeder.[1] Now, after a week-long trial and extensive testimony from Realtime's experts, it is even more apparent that Riverbed's arguments regarding infringement, inducement, and damages are meritless. Indeed, Realtime and its experts have provided substantial evidence that: (1) Riverbed directly infringes claim 1 of U.S. Patent No. 8,643,513 ("'513 patent"); (2) Riverbed induces customers to infringe claim 1 of the '513 patent; and (3) Realtime is entitled to damages no less than a reasonable royalty. Riverbed's motion should be denied.[2]

## I. SUBSTANTIAL EVIDENCE SUPPORTS INFRINGEMENT

Riverbed raises four arguments on direct infringement of the '513 patent. *See* Mot. at 5–8. All fail. As an initial matter, Riverbed advances an incorrect statement of the law as to the extent of Realtime's burden of proving infringement. And as discussed in further detail below, substantial evidence supports the jury's findings that: (1) SDR deduplication is a form of compression, (2) SDR deduplication is a content dependent compression algorithm, (3) LZ compression is a content-independent compression algorithm, and (4) Steelheads meet the "analyzing" limitations in '513 patent claim 1. Further, substantial evidence supports infringement under the doctrine of equivalents.

---

[1] *See, e.g.,* Dkt Nos. 499 (R&R denying Riverbed's MSJ of non-infringement for the '513 patent); 570 (Order adopting Dkt No. 499 and overruling Riverbed's objections); 512 (R&R denying Riverbed's MSJ on direct and indirect infringement for the '513 patent); 596 (Order adopting Dkt. No. 512 and overruling Riverbed's objections); 482 (Order denying Riverbed's MTS based on convoyed sales and royalty rate); 567 (Order overruling Riverbed's objections to Dkt No. 482); 538 (Order denying Riverbed's MTS based on apportionment).

[2] The portions of Riverbed's motion relating to U.S. Patent No. 7,415,530 ("'530 patent"). should be denied as moot because the jury found that Riverbed does not infringe that patent. *See, e.g., EON Corp. IP Holdings, LLC v. Landis+Gyr Inc., et al.,* Case 6:11-cv-00317-JDL, Dkt. No. 666 at 4 (E.D. Tex. Nov. 14, 2014) (denying as moot a renewed motion for JMOL where the party prevailed on the issue at trial).

### A. Substantial evidence demonstrates that Riverbed's customers all have used the Accused Products in an infringing manner.

Realtime provided substantial evidence that Riverbed directly and indirectly infringes claim 1 of the '513 patent because Riverbed and its customers practice the claimed method through use of the accused SteelHead products in their default configuration. SteelHeads use the accused functionality, SDR deduplication with LZ compression, in the manner alleged to infringe in the SteelHeads' default, out-of-the-box configuration. 5/23/17 AM Trial Tr. 36:5-19. Riverbed's corporate witness confirmed that since the products' release in 2004, the accused functionality of SDR deduplication and LZ compression has always been turned on as the default, out-of-the-box configuration. 5/23/17 PM Trial Tr. 50:14-51:6, 52:16-53:3. Riverbed also admitted that its customers use SDR deduplication with LZ compression and that it instructs its customers to use the accused functionality. 5/23/17 PM Trial Tr. at 47:13-21, 47:22-48:4. In addition, Riverbed expressly instructs its customers to turn off any compression not supplied by Riverbed and instead to activate the infringing combination of data deduplication and compression. 5/23/17 AM Trial Tr. 81:11-25. Riverbed itself practices the claimed method. *Id.* at 71:15-20. The evidence also showed that at any given time, at least 90 percent of customer network traffic on the SteelHead has passed through the infringing combination of SDR deduplication and LZ. *Id.* at 53:13-54:1. Steelheads are not only capable of infringing the '513 patent claim 1, but are configured to infringe by default.

Riverbed cites the *Ball Aerosol* case for the proposition that Realtime has not met its burden of proof because Claim 1 of the '513 Patent requires proof of more than a "reasonable capability" of infringing. *Ball Aerosol*, 555 F.3d at 994. In other words, Riverbed argues that the existence of non-infringing modes prevents Realtime from meeting its burden of proof. First, Riverbed's contention that the *Ball Aerosol* case applies to a method claim is incorrect. Under the relevant standard, the evidence is more than substantial that all Riverbed customers use the claimed method and that the accused products are of a class that directly infringes by default. Second, Riverbed has conceded that the "reasonable capability" language is a correct statement

2

of the law. 5/25/17 PM Trial Tr. at 157. And this Court overruled Riverbed's objections to this language by including it in the instructions read to the jury. Third, as set forth above, Realtime has provided substantial evidence both that the Accused Products necessarily infringe in their default, out-of-the-box configuration and that all customers practice the claimed method as soon as the accused products are turned on.

### B.     SDR deduplication is a form of compression.

All of the asserted claims require "compression," construed as a "representation of data with fewer bits." Realtime's infringement expert, Professor Michael Mitzenmacher, testified that Riverbed's data deduplication produces a reference that represents the data that was compressed with data deduplication in fewer bits. 5/23/17 AM Trial Tr. 11:9–17. This reference of 16 bytes represents a longer segment of data. 0/23/17 AM Trial Tr. 11:18–22. According to Prof. Mitzenmacher, Plaintiff's Exhibit 111 at 16—a document written by Riverbed's technical engineering staff to describe data deduplication—expressly describes data deduplication using the Court's construction for "compression." Riverbed's document states that "RiOS data references can represent a very large amount of data." 5/23/17 AM Trial Tr. 11:5-12:6. Describing another Riverbed technical document, Plaintiff's Exhibit 36 at 13, Prof. Mitzenmacher testified that through data deduplication, duplicate data is replaced with a reference that represents the data in fewer bits. *Id.* at 29:8–30:9. Professor Mitzenmacher's opinion that Riverbed's SDR deduplication is a form of compression applies for all of the asserted claims, including Claim 1 of the '513 Patent. *Id.* at 75:6-13.

Apart from Prof. Mitzenmacher's testimony, substantial evidence from Riverbed itself confirms that data deduplication is a form of compression. For example, Riverbed's CEO and co-founder, Jerry Kennelly, admitted to a prior statement to Forbes magazine that data deduplication is a form of super compression. 5/24/17 AM Trial Tr. 50:18-24. Riverbed's engineers describe deduplication as "1000:1 compression." 5/23/17 AM Trial Tr. 50:2-18 (discussing Plaintiff's Exhibit 197 at 3). Using the Court's construction, Riverbed's Form 10-K provides that "data deduplication is where the existing segments are **represented** by references." 5/24/17 AM Trial

3

Tr. 36:4-12 (emphasis added) (regarding Defendant's Exhibit 145). And Riverbed's non-infringement expert, Dr. Villasenor, admitted that at least three authoritative IEEE publications characterize data deduplication as a form of compression. *See, e.g.,* 5/25/17 AM Trial Tr. at 43:10-44:16.

Riverbed's motion raises a new argument, that SDR deduplication does not meet the Court's construction of compression because there is allegedly "no data." Mot. at 6. Riverbed contends that references produced by data deduplication cannot represent data in fewer bits because the references "do not actually include the data they purport to 'represent.'" Mot. at 2. Riverbed's argument is conclusory and unsupported. And to the extent it is even understandable, Riverbed misapprehends compression and data itself. Data is a sequence of bits that represents information. Data only "includes" information in the sense that it represents the information in binary. Compressed data is a representation of the same information in fewer bits. This is achieved because in compressed form, the fewer bits operate as instructions that allow the decoder to output the original data. 5/23/17 AM Trial Tr. 17:2–7, 17:23–18:25. Compressed data never "includes" the original data—if a compressed data sequence included the original data sequence, then it would not and could not represent the underlying information in *fewer* bits.

Riverbed's argument is also contradicted because it is undisputed that Lempel-Ziv (LZ) is a form of compression. 5/25/17 AM Trial Tr. 5:17-19. Riverbed presented no evidence to question Prof. Mitzenmacher's testimony that LZ compression produces a string of fewer bits comprising a set of instructions that represents the original data. 5/23/17 AM Trial Tr. 29:1-7. LZ-compressed data does not include anything other than the instructions necessary to allow the decoder to output the original sequence of bits. But now, Riverbed incorrectly argues that the Court's construction of compression requires that compressed forms of data "include" the original data. The Court's construction requires only that compressed data "represent" the original data in fewer bits. Like the strings of bits produced with LZ compression, references represent duplicate data in fewer bits by allowing the decoder in the receiving SteelHead to output the original data. 5/23/17 AM Trial Tr. 44:12-15. This further confirms that data

4

deduplication, like LZ, is a form of compression.

Finally, Prof. Mitzenmacher testified that under the doctrine of equivalents, data deduplication is a form of compression. 5/23/17 AM Trial Tr. 52:1-53:11. Although Riverbed's expert, Dr. Villasenor, may disagree, Prof. Mitzenmacher provided substantial evidence under the doctrine of equivalents for claim 1 of the '513 patent.

### C. SDR deduplication is a content dependent compression algorithm.

Riverbed's motion ignores the distinction between "SDR" and the accused content dependent compression algorithm, data deduplication. On cross-examination by Riverbed's counsel, Prof. Mitzenmacher explained that "SDR" may refer to the accused content dependent algorithm, deduplication, or it may also refer to the entire scope of the code that analyzes data blocks and determines whether to apply LZ or data deduplication depending on whether the data block is a new segment or a duplicate segment. 5/23/17 AM Trial Tr. 121:2 – 122:6. Regarding the accused data deduplication algorithm, Prof. Mitzenmacher was perfectly clear that it only applies to duplicate data.

The Court's construction requires that the content dependent compression algorithm be applied based on the encoder's ability to effectively encode the data content. Data deduplication only applies to duplicate segments of data. 5/25/17 PM Trial Tr. 110:15–111:10. The algorithm is content dependent because it only applies when the system identifies that a data block has the attribute of being a duplicate, i.e., it has been seen before. 5/23/17 AM Trial Tr. 73:5-14. Because deduplication is only effective at encoding duplicate data, only duplicate segments will be discarded by deduplication and replaced with a reference. *Id.*

The Court's construction also requires that the content dependent compression algorithm be applied to input data that is not compressed with the content independent algorithm, LZ compression. Riverbed's documents explain that deduplication only applies to segments of data that have been seen before. 5/25/17 PM Trial Tr. at 111:11-112:5. Deduplication does not apply to new data. *Id.* It only applies to duplicate data that is not compressed with Lempel-Ziv. *Id.* Thus, Realtime and Dr. Mitzenmacher have provided substantial evidence that data

5

deduplication is the content dependent compression algorithm.

### D.   LZ compression is a content independent compression algorithm.

The Court's construction of content independent compression requires that the content independent compression algorithm, LZ compression, be applied without regard to the encoder's ability to effectively encode the data content. Prof. testified that the LZ algorithm meets this requirement because it doesn't "matter if it's going to be effective or not effective, everything that's left over is just sent on to the Lempel-Ziv compressor." 5/23/17 AM Trial Tr. 73:15-74:5. Riverbed's witness, Mr. Van Os, agreed that everything not identified as a duplicate will undergo LZ compression. *Id.* at 74:8-18.

The Court's construction also requires that the content independent compression algorithm be applied to input data that is not compressed with the content dependent algorithm, deduplication. Riverbed's documents explain that Lempel-Ziv only applies to segments of data that have *not* been seen before. 5/23/17 AM Trial Tr. 28:6-29:7 (regarding Plaintiff's Exhibit 36 at 13). LZ does not apply to duplicate data. *Id.* It only applies to new data that is not compressed with deduplication. 5/25/17 AM Trial Tr. 62:2-23 (Riverbed's expert, Dr. Villasenor, confirming that LZ is applied to uncompressed data). Thus, substantial evidence therefore shows that LZ is the content independent compression algorithm.

### E.   Steelheads meet the "analyzing" limitations.

Prof. Mitzenmacher testified that claim 1 is infringed by Riverbed's system of analyzing the plurality of data blocks to recognize when to apply LZ and analyzing a data block from another portion of the plurality to recognize when to apply data deduplication. 5/23/17 Trial Tr. 74:19-78:5. He testified that Riverbed's product infringes the first "analyzing" limitation because it will analyze a plurality of data blocks and determine that one portion of the data stream is comprised of new data that will be compressed with LZ. *Id.* He also testified that Riverbed's system then will analyze a data block from another portion of the plurality and determine whether the block is a duplicate and, if so, to compress it with data deduplication. *Id.* Prof. Mitzenmacher showed that any time the SteelHead processes a plurality of data blocks

6

comprising new and duplicate data, it will analyze the plurality and apply content independent compression to the new data and content dependent compression to the duplicate data. *Id.*

Riverbed argues that it is conceded that SteelHead does not "do two analyzing steps." Mot. at 7. This assertion is false. As explained above, Professor Mitzenmacher opined that the claim language only requires that the accused product analyze two different types of data blocks: one type to which content dependent compression will apply, and a different type to which content independent compression will apply. 5/23/17 AM Trial Tr. 76:6-77:1. He further explained that analysis of a plurality need not occur at the same instant for infringement to be found. *Id.* at 115:3-16. Rather, citing the patent specification itself, Professor Mitzenmacher explained that infringement of the analysis limitations occurs whether the analysis of the data blocks is in sequence or in parallel. *Id.* at 115:13-116:6.

On rebuttal, Prof. Mitzenmacher further explained that the same "analysis" *functionality* could perform both the analysis elements of this method claim because the system will practice the analysis on both required types of data blocks. 5/25/17 PM Trial Tr. 109:5-18. The jury also heard Riverbed's argument that the "analyzing" limitations are not met because the accused system analyzes each data block to determine whether to apply content dependent or content independent compression. 5/25/17 AM Trial Tr. 11:3-24. Substantial evidence supports the jury's application of the claim language to the operation of the Steelheads to the analysis limitations in claim 1 of the '513 patent. The jury correctly found that the analysis limitations are met by the accused products.

    **F.    Substantial evidence supports infringement under the doctrine of equivalents.**

Prof. Mitzenmacher testified that under the doctrine of equivalents, Riverbed's accused data deduplication meets the Court's construction for content dependent compression. 5/23/17 AM Trial Tr. 78:6-79:5. He also testified that under the doctrine of equivalents, SteelHeads meet the limitations of claim 1 of the '513 patent reciting "recognition of any characteristic, attribute, or parameter that is indicative of an appropriate content dependent algorithm." *Id.* at 79:6-80:6.

7

This testimony constitutes substantial evidence that Riverbed directly infringes claim 1 of the '513 patent under the doctrine of equivalents.

## II.  SUBSTANTIAL EVIDENCE SUPPORTS INDUCEMENT

Substantial evidence shows that Riverbed has acted to encourage its customers to perform acts constituting infringement, and its customers have performed these acts. In the out-of-the-box, default configuration, SteelHeads will apply the accused Lempel-Ziv and deduplication algorithms. 5/23/17 AM Trial Tr. 36:5-14. This is evidence that every single customer practices the method of Claim 1 of the '513 Patent as soon as they turn on the accused products. The evidence shows that Riverbed provides instructions to users on how to use the accused functionality, including data deduplication and data compression. 5/23/17 PM Trial Tr. at 47:13-21. It also shows that Riverbed's customers actually use the accused functionality, including data deduplication and data compression. *Id.* at 47:22-48:4. In fact, Riverbed expressly instructs its customers to turn off any compression not supplied by Riverbed and instead to activate the infringing combination of data deduplication and compression. 5/23/17 AM Trial Tr. 81:11-25.

Substantial evidence also shows that Riverbed has possessed the requisite level of intent necessary for a finding of inducement. Substantial evidence establishes that a "particular class of products directly infringes," namely, all the accused products, which infringe upon activation in their out-of-the-box setting. Dkt. No. 604 (Jury Instructions) at 20; 5/23/17 PM Trial Tr. 52:22-53:3. Substantial evidence also shows that Riverbed knew of the '513 Patent and Realtime's infringement allegations as to Claim 1 and continues to instruct its customers on how to perform the claimed method in an infringing manner. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1373 (Fed. Cir. 2015), vacated, 136 S. Ct. 893 (2016), adhered to in relevant part, 824 F.3d 1344, 1351 (Fed. Cir. 2016) (substantial evidence supported jury verdict of inducing infringement of method claim where accused infringer knew of the patent and instructed doctors on how to perform the method in an infringing manner).

Here, Riverbed had knowledge of Realtime's infringement allegations as of the filing of the complaint, and Realtime only seeks damages for infringement of the '513 Patent starting

from that date. 5/23/17 PM Trial Tr. 48:19-49:5. Riverbed also admitted that its customers use SDR deduplication with LZ compression and that it instructs its customers to use the accused functionality. 5/23/17 PM Trial Tr. at 47:13-21, 47:22-48:4. This evidence alone supports a finding of inducement.

Additional substantial evidence shows that Riverbed intended to cause its customers to infringe the '513 Patent because it had knowledge the acts were infringing. *Commil USA, LLC v. Cisco Systems, Inc.,* 135 S.Ct. 1920, 1928. According to its general counsel, Ryan Damon, Riverbed understood that it allegedly infringes the patent because its customers use the combination of SDR deduplication and LZ compression. 5/24/17 AM Trial Tr. 142:6-10. Riverbed further understood that "if we turned off LZ," Riverbed would not infringe. *Id.* at 142:24-143:23. Yet Mr. Damon testified that even though it would cost $12,000 to disable LZ completely in all its products, Riverbed has never done so. *Id.* Instead, Riverbed continued to encourage its customers to use the infringing combination of SDR deduplication and LZ compression. 5/23/17 AM Trial Tr. 81:11-25 (regarding Plaintiff's Exhibit 42).

Further, as of 10 days before trial, Riverbed's CEO and co-founder, Jerry Kennelly, had not even bothered to determine what products were accused or which or how many patents were asserted. 5/24/17 AM Trial Tr. 46:19-47:11. Because Riverbed specifically taught its customers to use the accused products in the infringing manner, *i.e.* to activate the infringing combination of SDR deduplication and LZ compression and disable any other forms of compression, the evidence regarding Plaintiff's Exhibit 42 alone is substantial evidence that Riverbed possessed the requisite level of intent for a finding of inducement. *Warsaw*, 778 F.3d at 1373 (affirming denial of JMOL of no infringement because the defendant "specifically taught doctors to use the product during the surgical procedures in an infringing manner"). That Riverbed admitted at trial that it has not changed its products since the filing of the lawsuit – with full knowledge that doing so could avoid infringement – is further evidence from which the jury rightly may find intent to induce.

Because the evidence shows that Riverbed's customers practice the claimed method

9

(5/23/17 PM Trial Tr. at 47:22-48:4) and that all of Riverbed's customers practice the method in Claim 1 of the '513 Patent by using the accused products' out-of-the-box configuration per Riverbed's instructions (*Id.* at 47:13-21), Realtime introduced evidence of a reasonable royalty based upon overall revenue figures. Dkt. No. 604 (Final Jury Instructions) at 20 (amount of damages may be calculated by evidence of specific individual acts of direct infringement or by showing that a particular class of products directly infringes). The evidence that all Riverbed customers practice the claimed method is abundant. *See* 5/23/17 PM Trial Tr. at 47:22-48:4, 47:13-21, 50:14-51:6, 52:16-53:3, 53:13-54:1; 5/23/17 AM Trial Tr. 71:15-20, 81:11-25.

The reasonableness of this approach is also confirmed by the fact that Riverbed's damages expert, Mr. Carter, also introduced evidence of a reasonable royalty based solely on revenue figures without regard to estimates that only a portion of Riverbed's customers practice the claimed method. *See* 5/25/17 AM Trial Tr. 95:1-25. Both parties thus recognize that the law allows a damages model based upon overall revenue even as to a method claim, particularly where, as here, all of the evidence shows that all customers practice the claimed method. All of this evidence, alone and in combination, constitutes substantial evidence of inducement and damages for the '513 Patent.

### III. SUBSTANTIAL EVIDENCE SUPPORTS DAMAGES

Mr. Mills presented testimony establishing a reasonable royalty of $8.3 million to $15 million in the event that the jury finds that only the '513 Patent is valid and infringed. 5/25/17 PM Trial Tr. 131:1-15. He also presented testimony establishing a reasonable royalty of between $14.6 million to $26.6 million in the event the jury finds either the '530 Patent is valid and infringed or that both the '530 and '513 Patents are valid and infringed. *Id.* at 131:16-132:1. On rebuttal, Mr. Mills further testified that a reasonable royalty calculation based upon the license agreements that Riverbed's damages expert concluded were comparable. *Id.* at 132:20-137:9.

All of Riverbed's remaining arguments have already been rejected by Court order. The Court has ordered that Riverbed bears the initial burden of production at trial for identifying products it alleges should have been marked. Dkt. No. 571 at 3. At trial, Riverbed failed to

10

provide any evidence whatsoever about marking or patented articles.

The Court has also ordered that convoyed sales may properly be considered in the royalty base. Dkt. 567. Realtime introduced evidence that substantially all customers of the accused products purchase related support services that are functionally only useful to enable the accused products to work properly, and that customers would only ever buy support services because they bought the infringing products themselves. 5/23/17 PM Trial Tr. 113:8-115:8. Riverbed failed to rebut this evidence. Further, Riverbed's own damages expert admitted that even he included support services revenues in the royalty base when calculating the imputed royalty rates from allegedly comparable licenses. 5/25/17 AM Trial Tr. 117:6-17.

Realtime also introduced substantial evidence related to apportionment, including testimony by a technical expert on the performance benefits attributable to the combination of accused compression algorithms (5/23/17 PM Trial Tr. pp. 63 – 87) and by its damages expert on the economic apportionment he applied to the royalty base and royalty rate (*Id.* at 115:17 – 123:13). Finally, the Court has already ordered that Realtime may introduce evidence regarding the Actian and Vembu Agreements as to their technical and economic comparability (Dkt. 567), and Mr. Mills provided extensive testimony accounting for the similarities and differences between the Actian/Vembu Agreements and the hypothetical negotiation. 5/23/17 PM Trial Tr. 124:18 – 130:25 (detailed discussion of "how the circumstances around the Actian and Vembu licenses were similar or different from those in the hypothetical negotiation"). Further, Realtime also introduced damages evidence based upon the F5, Blue Coat, and Citrix agreements that Riverbed contends are comparable. Thus, the jury was allowed to rely on any of these five agreements, or even only those that Riverbed contends are comparable, in making its royalty rate determination.

## IV. CONCLUSION

For the reasons set forth above, Riverbed's motion should be denied in its entirety.

Dated: June 5, 2017

Respectfully submitted,

By: /s/ *Reza Mirzaie*
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Marc A. Fenster (CA SBN 181067)
Email: mfenster@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com
Jeffrey Z.Y. Liao (CA SBN 288994)
Email: jliao@raklaw.com
Christian Conkle (CA SB No. 306374)
Email: cconkle@raklaw.com
Philip X. Wang (CA SBN 262239)
Email: pwang@raklaw.com
James Pickens (CA SBN 307474)
Email: jpickens@raklaw.com
Paul A. Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile 310/826-6991

T. John Ward, Jr. (TX SBN 00794818)
E-mail: jw@wsfirm.com
Claire Abernathy Henry (TX SBN 24053063)
E-mail: claire@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Tele: 903/757-6400
Facsimile 903/757-2323

**Attorneys for Plaintiff
REALTIME DATA LLC d/b/a IXO**

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on June 5, 2017, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ *Reza Mirzaie*
Reza Mirzaie