IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA LLC d/b/a IXO, | § § § | |
| Plaintiff, | § § | Civil Action No. 6:15-cv-463 |
| v. | § § | JURY TRIAL DEMANDED |
| ACTIAN CORP., et al., | § § | LEAD CONSOLIDATED CASE |
| Defendants. | § § § | |

**REPLY IN SUPPORT OF RIVERBED TECHNOLOGY, INC.'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Riverbed moved for Renewed Judgment as a Matter of Law at the close of evidence and prior to submission to the jury. Realtime responded after the jury returned a verdict of non-infringement and invalidity of the '530 Patent, leaving infringement of the '513 Patent as the sole remaining issue. The parties have agreed to post-trial briefing that will address the verdict as delivered. Riverbed will more fully address the legal and factual deficiencies in the jury's verdict in the post-trial briefing. Riverbed replies here to highlight certain concessions in Realtime's response reinforcing that judgment of non-infringement as a matter of law on claim 1 of the '513 Patent is proper now.

## I.    There is no substantial evidence of infringement of the '513 Patent.

Claim 1 of the '513 Patent is a method claim. To show direct infringement by Riverbed of a method claim, Realtime had to show not only that Riverbed's accused SteelHeads were capable of performing each and every step of the claimed method, but that *Riverbed* actually practiced each and every step.[1] As noted in the opening brief, there are many reasons why the SteelHead does not practice each step of claim 1. But, importantly, the only "evidence" Realtime cites concerning actual use by *Riverbed* is Realtime's expert's testimony that "Riverbed uses its own products"—a conclusory and unsupported opinion by an expert on a topic outside his expertise.[2] There being no substantial evidence to support that Riverbed directly infringed claim 1 of the '513 Patent, judgment as a matter of law on this claim is

---

[1] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009); *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1358 (Fed. Cir. 2012); *TechRadium, Inc. v. Edulink Sys., Inc.*, No. H–10–1887, 2013 WL 1855859, at *6 (S.D. Tex. May 1, 2013).
[2] *See* Opp. at 2 (citing 5/23/17 A.M. Trial Tr. 71:15-20).

warranted.

## II. There is no substantial evidence to support induced infringement of claim 1 of the '513 Patent.

To show active inducement of infringement, Realtime must prove by a preponderance of the evidence that Riverbed's customers have actually directly infringed claim 1 and that Riverbed has actively and knowingly aided and abetted that direct infringement.[3] And while circumstantial evidence may be used, such circumstantial evidence must be tied to actual use of each step of the claimed method by a single customer.[4] References to manuals, reviews, or surveys suggesting the product can be used a certain way "are by themselves insufficient to show the predicate acts necessary for inducement of infringement."[5]

Here, Realtime had to show acts of infringement by Riverbed's customers. It did not. Indeed, the testimony Realtime relied on in its opposition focuses on the SteelHead's capacity to practice each step of claim 1 and the fact that instruction manuals addressed how to do it.[6] But the issue is not whether customers ***can***

---

[3] *See, e.g., Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1033 (Fed. Cir. 2002).

[4] *Largan Precision Co., Ltd. v. Genius Elec. Optical Co., Ltd.*, 646 F. App'x. 946, 948 (Fed. Cir. 2016) (granting summary judgment of no induced infringement where evidence failed to show actual acts of infringement of method claim by defendant's customers); *see Alloc, Inc. v. Int'l Trade Comm'n,* 342 F.3d 1361, 1374 (Fed.Cir.2003) (evidence of direct infringement is a prerequisite to indirect infringement); *see also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1312 (Fed.Cir.2005) (to succeed on a claim of inducement, the patentee must show first that there has been direct infringement); *Lucent,* 580 F.3d at 1320-1322.

[5] *Mirror Worlds*, 692 F.3d at 1360.

[6] *See* Opp. at 2 (citing testimony from Realtime's expert regarding the SteelHead's default settings). This same evidence is repeated in the Opp. at 8 addressing inducement. Notably, Realtime cites 5/23/17 A.M. Trial Tr. at 53:13-54:1 for the proposition that "at least 90 percent of customer network traffic on the SteelHead has passed through the infringing combination of SDR deduplication and LZ." But the cited reference says nothing of the sort.

2

infringe the claimed method by using the SteelHead; the issue is whether they actually ***did*** (and for purposes of damages, how frequently).[7]

The Federal Circuit's reasoning in *Mirror Worlds* applies here: "It is not disputed that the Apple products *could* infringe. However, such testimony alone is not sufficient to find inducement of infringement of a method patent. Evidence of actual use of each limitation is required."[8] Here, it is undisputed that the SteelHead can be and, in fact, has been operated in a non-infringing manner.[9] The fact that it may also be used in an infringing manner and that manuals explain how to do so does not create a presumption that all use is infringing. Because Realtime did not point to any specific acts of infringement by Riverbed customers, Riverbed is entitled to judgment of non-infringement as a matter of law on claim 1 of the '513 Patent.

### III. There is no evidence of a reasonable royalty related to direct or indirect infringement of the '513 Patent.

Realtime's failure to prove specific instances of infringement—either by Riverbed itself or by its customers—also taints the $4.3 million damage award. Indeed, while the statute provides for no less than a reasonable royalty as damages

---

[7] *Mirror Worlds*, 692 F.3d at 1361.

[8] *Id.*

[9] 5/23/17 Trial Tr. P.M. 3:1-4:18; 53:7-12 ("Q. Does Riverbed have any knowledge as to whether any of its customers have ever turned off LZ with SDR? A. People can turn off, and there are some use cases where we actually advise people to turn off SDR."); 5/24/17 Trial Tr. P.M. 87:21-24 ("Q. Josh, is this an example of how Riverbed distinguishes between SDR and compression? A. Yeah. You can see that you can configure the appliance to turn on or off the SDR aspect or the LZ aspect or both."); *see also* Ex. A (DX-014) at 63 (internal page 49) & 5/24/17 Trial Tr. P.M. at 86:13-88:17.

3

for infringement, Realtime still bears the burden to prove that reasonable royalty.[10] Evidence of a reasonable royalty must take into account both the value of the infringing method to the product as a whole and "the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use."[11] The damage award must correlate "to the extent the infringing method is used by consumers" because "this is what the parties to the hypothetical negotiation would have considered."[12]

Realtime's case focused on the reasonable royalty for the '530 Patent. Its only evidence of the reasonable royalty related to the '513 Patent came in rebuttal, and that testimony was far from substantial. Rather, the testimony consisted of discounting the analysis specific to the '530 Patent to account for the '513 Patent.[13] But despite arguing now for direct infringement based solely on Riverbed's internal use of the product, Realtime provided no evidence of how Riverbed's internal use of the SteelHead supported any reasonable-royalty number. And while even a small amount of internal use may technically constitute infringement, Realtime did not try its case upon a theory of internal use, and it certainly provided no evidence to support the more than $4.3 million royalty damages awarded by the jury based on such incidental internal use.

---

[10] *Lucent,* 580 F.3d at 1324.
[11] *Lucent,* 580 F.3d at 1332-33 (applying *Georgia–Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y.1970)).
[12] *Id.* at 1334.
[13] 5/25/17 Trial Tr. P.M. at 131:1-15.

With respect to induced infringement, Realtime failed to point to any instances of actual infringement of the '513 Patent and failed to address how such use supported a reasonable-royalty rate solely for infringement of the method described in claim 1 of the '513 Patent. Counsel for Realtime admitted this deficiency at the informal charge conference, explaining "We think that both parties' experts have presented the same theory in a global sense that you look at the unit sales revenue that's the accused products and you make adjustments and this [instruction on damages for method claims] is not consistent with the – either the presentation of evidence by either party."[14] Under these circumstances, the jury's $4.3 million damages award is not supported by substantial evidence. Realtime "had the burden to prove that the extent to which the infringing method has been used supports the lump-sum damages award."[15] Realtime failed to carry that burden.

IV. **Conclusion.**

Realtime failed to present substantial evidence of any actual direct infringement of claim 1 of the '513 Patent, either by Riverbed or its customers. Thus, the Court should grant judgment as a matter of law that Riverbed does not infringe, either directly or indirectly, claim 1 of the '513 Patent.

---

[14] 5/25/17 Trial Tr. P.M. at 174:22-175:1. Counsel for Realtime went on to argue that Riverbed somehow waived its position by failing to present its own damage evidence under the proper model. But, as explained to the Court during charge conference, Realtime alone bears the burden to prove its damages. By simply rebutting Realtime's analysis, Riverbed has ***not***, as Realtime urges, "recognize(d) that the law allows a damages model based upon overall revenue even as to a method claim." *See* Opp. at 10; 5/25/17 Trial Tr. P.M. 175:15-21.

[15] *Lucent*, 580 F.3d at 1335.

Dated: June 13, 2017                                    Respectfully submitted,

/s/ *Matthew P. Chiarizio*
John R. Emerson
Texas Bar No. 24002053
russ.emerson@haynesboone.com
Debra J. McComas
Texas Bar No. 00794261
debbie.mccomas@haynesboone.com
Charles M. Jones II
Texas Bar No. 24054941
charlie.jones@haynesboone.com
Stephanie N. Sivinski
Texas Bar No. 24075080
stephanie.sivinski@haynesboone.com
Matthew P. Chiarizio
Texas Bar No. 24087294
matthew.chiarizio@haynesboone.com

HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000 (telephone)
(214) 200-0615 (fax)

**ATTORNEYS FOR DEFENDANT RIVERBED TECHNOLOGY, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's ECF system on all counsel of record who have consented to electronic service according to the Federal Rules of Civil Procedure on June 13, 2017.

/s/ *Matthew P. Chiarizio*